UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

GRISELDA BIELINSKI and MARIO PARDO,        07 Civ. 11636 (SS, JCF)

            Plaintiffs,                AFFIDAVIT IN SUPPORT
                                      OF DEFENDANT'S MOTION FOR
                                      SUMMARY JUDGMENT

        -against-

HOTEL PIERRE,

            Defendant.

_____x

      **YVONNE MANCINI**, being duly sworn, deposes and says:

1.  I am the Director of Human Resources for IHMS, LLC d/b/a The Pierre (the "Hotel") and I

submit this affidavit in support of the Hotel's Motion for Summary Judgment.

## BACKGROUND INFORMATION

2.  The Hotel is a luxury transient hotel and cooperative apartment building located at 2 East 61st

Street in New York, New York.

3.  The Hotel is bound by the terms of a collective bargaining agreement, known as

the Industry-Wide Agreement (the "IWA"), between the Hotel Association of New York City,

Inc. and the New York Hotel & Motel Trades Council AFL-CIO (the "Union") which governs

the terms and conditions of employees who are members of the Union.

## PROCEDURAL HISTORY

4.  Plaintiffs commenced this action by filing a Complaint on or about December 28, 2007,

alleging that they were denied a promotion to Banquet Captain at the Hotel on the basis of their

age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623, New

York Executive Law, (the "New York State Human Rights Law" or "NYSHRL"), §296(i) et.

seq., and the New York City Human Rights Law ("NYCHRL"), §8-107(i).  Plaintiff Bielinski

#291752.2

also alleges that she was denied the promotion because of her gender, in violation of Title VII of

the Civil Rights Act, 42 U.S.C., 2000e-2(a), the NYSHRL and the NYCHRL. A copy of the

Complaint is annexed hereto as Ex. A. The Hotel served and filed an Answer to the Complaint

on or about January 24, 2008. A copy of the Answer is annexed hereto as Ex. B.

## SELECTION OF BANQUET CAPTAIN

5.  The Hotel's Banquet Department caters and services banquet functions in the Hotel's

Ballroom, Cotillion Room and various meeting rooms.

6.  Banquet Captains, A List Banquet Servers (steady, full-time servers) and B List Banquet

Servers (steady extra servers) are all members of the Union and the terms and conditions of their

employment are governed by the IWA. Banquet Captains assist the Banquet Headwaiter in

directing and coordinating the work of the Servers before, during and after the banquet function.

Captains also serve as a liaison between the service staff and the guest, responding to complaints,

special requests and other matters that may arise during the function.

7.  While a Banquet Captain must have extensive experience and knowledge of banquet service,

he or she must also have substantial leadership, organizational and problem-solving skills, must

be articulate and poised in responding to guest requests and complaints and must understand and

be proficient in Union rules and with all the protocols of banquet service, including payroll,

scheduling and service standards. Banquet Captains are not selected on the basis of their

seniority as Banquet Servers.

8.  Although they direct the work of the Banquet Servers on the Banquet floor, Captains are not

management employees and do not have the authority to hire, fire, discipline or alter any of the

terms and conditions of the Banquet Servers' employment.

9. At the end of 2006, Nick Koutsakos, one of the individuals who had been working as a Banquet Captain, retired from his employment. Twelve (12) current A List Banquet Servers applied for Mr. Koutsakos' position. Copies of the applications of these twelve (2) Banquet Servers, including attachments submitted by the applicants, are annexed hereto as Ex. C. Among the applicants were plaintiffs Bielinski (hereinafter "Bielinski") and Pardo (hereinafter "Pardo") and Jay Laut.

10. Bielinski is currently 61 years old and has worked as an A List Banquet Server at the Pierre since 1985. Pardo is currently 59 years old and has worked at the Hotel since 1969, first as a Room Service Busser, then Room Service Server and, since 1986, as an A List Server. Mr. Laut is currently 45 years old and was hired by the Hotel in 1998 as a B List Server and promoted to the A List in 2005. In addition to working at the Hotel, Mr. Laut worked for five (5) years as a Banquet Server/Captain at the Regent Wall Street, five (5) years as a Banquet Server/A La Carte Server at the Rihga Royal Hotel and seven (7) years as a Captain and Assistant Manager at Au Mandarin Restaurant. See resumes attached to applications at Ex. C

11. On or about February 21, 2007, I received a letter from Bielinski in which she expressed concerns about the selection process and her belief that "an individual who is working with us for 3 years; also is a member of the Board of Director at our Union" had already been chosen for the Captain's position, "creating a conflict of interest."[1] I understood she was referring to Mr. Laut. A copy of the letter received in my office on February 21, 2007 is annexed hereto as Ex. D.

12. The Hotel developed a three stage interview procedure for the Banquet Captain positions. At the first stage of the process, Christopher Edmonds, Banquet Headwaiter (a management employee), interviewed all twelve (12) applicants. I provided Mr. Edmonds with a Functional Competencies Interview Form which involves a number of pre-established questions designed to

---

[1] Mr. Laut is a member of the Union's Delegate Assembly, equivalent to its Board of Directors.

elicit information about how the candidate handled specific situations in the past, since a candidate's past performance is frequently the best predictor of future performance. General, vague and unspecific answers in this interview tend to indicate that the candidate has not been thoughtful about his/her past experiences and will not apply the lessons learned in the future. Mr. Edmonds rates six (6) of the applicants, including both plaintiffs and Mr. Laut as "Satisfactory" or better.

13.    Mr. Edmonds rated both plaintiffs as "Satisfactory." On Bielinski's Interview Guide, he noted that she talked about the "division of sexes" and that her answers were "not too detailed." On plaintiff Pardo's Interview Guide, he noted "Not enough. Didn't fully answer questions. No specific examples."

14.    Mr. Edmonds rated Mr. Laut as "Strength." On Mr. Laut's Interview Guide, Mr. Edmonds noted "Gave detailed answers." Annexed hereto as Ex. E are copies of the completed Functional Competencies/Interview Guides for Bielinski and Pardo and for Mr. Laut. See also transcript of deposition of Mr. Edmonds, pp. 55-60, annexed hereto as Ex. F.[2]

15.    William Spinner, Director of Catering, then interviewed each of the six (6) candidates who had passed the first stage. Mr. Spinner asked each candidate the same three sets of questions related to the candidate's work history and experience, the candidate's knowledge of the position of Banquet Captain and the candidate's suggestions for ways in which the Banquet Captain can improve service and the guests' experience.

16.    At the end of his interviews, Mr. Spinner recommended only three (3) of the candidates – both of the plaintiffs and Mr. Laut  - for further interview with the General Manager or Hotel Manager.

---

[2] References to transcripts of depositions will be denoted throughout as "(Name of Deponent) Tr., p.__."

17.   Mr. Spinner's summary of his interview with Bielinski noted that she was very experienced and knowledgeable as a server and well spoken, but that she had had little interaction with management/Union issues, never served as a delegate and did not suggest any ways in which she would be able to improve service as a Captain.

18.   Mr. Spinner's summary of his interview with Pardo indicated that he was also very experienced and knowledgeable as a server, that he was familiar with management/Union issues and had served as a delegate, but that he did not suggest any ways in which he would be able to improve service as a Captain.

19.   Mr. Spinner's summary of his interview with Mr. Laut indicated that he was very experienced and knowledgeable as a server, well spoken, had thorough knowledge of management/Union issues and had served as a delegate.  In addition, Mr. Spinner noted that Mr. Laut "[m]ade constructive suggestions as to new ways a Captain can contribute to the improvement of service; [d]iscussed specific ways we could schedule staff to increase service at cocktail receptions."  Copies of Mr. Spinner's interview summaries for Bielinski, Pardo and Laut are annexed hereto as Ex. G.  See also Spinner Tr., pp. 22 -26, 29-30, annexed hereto as Ex. H.

20.   Christian Hommerich, Hotel Manager, interviewed both plaintiffs.  His notes of his interview with Bielinski indicated that she answered his questions thoroughly and that she was very knowledgeable about banquet service.  His notes of his interview with Pardo indicate that when Mr. Hommerich asked him why he wanted to move to a Captain's position, Pardo responded that he was getting old and that in the Captain's position he would no longer have to carry heavy weights and would be better able to take care of his family financially.  Copies of Mr. Hommerich's notes of his interviews of Bielinski and Pardo are annexed hereto as Ex. I.  See also Hommerich Tr., pp. 14 -20, annexed hereto as Ex. J.

21.    Mr. Kuenstle interviewed Mr. Laut. His notes indicate that Mr. Laut gave specific

examples of his leadership ability in a clear and concise manner and gave various suggestions on

how to improve service, concluding: "Strong candidate; provided specifics; strong

qualifications." A copy of Mr. Kuenstle's notes of his interview with Mr. Laut are annexed to

the Kuenstle Aff. as Ex. A.

22.    After all of the interviews were concluded, there were a number of discussions among Mr.

Spinner, Mr. Kuenstle, Mr. Hommerich, Mr. Edmonds and myself about who was the best

candidate for the Banquet Captain position. See Affidavit of Heiko Kuenstle annexed to the

moving papers for details of those discussions. Ultimately, it was concluded that Mr. Laut was

the most qualified applicant and his promotion was officially announced on April 17, 2007. The

Banquet Captains had no role at all in the selection process.

### LAUT'S ANNOUNCEMENT

23.    On Saturday, March 17, 2007 – St. Patrick's Day – Mr. Laut announced to the assembled

Banquet Servers that he was resigning his position as Union delegate and that he had been

selected as Banquet Captain. I was not at work at the time and neither were any of the Banquet

managers.

24.    On Monday, March 19, 2007, several of the applicants, including both of the plaintiffs,

came to my office and told me what had occurred over the weekend. I assured them that Mr.

Laut had not been selected and that the interview process had not been completed and I promised

that I would look into the situation and find out what happened.

25.    I met with Mr. Laut on March 21, 2008, the first day he was at work after St. Patrick's Day.

I told him that he had not, in fact, been selected as Captain and asked him how he came to

believe he had been.  Mr. Laut said that he had been told by Mr. Edmonds that he had been selected.

26.    I spoke to Mr. Edmonds as soon as he returned from a two-week leave of absence.  Mr. Edmonds denied that he had told Mr. Laut that he had been selected for the Captain position.  He said that he had specifically told Mr. Laut that the interview process had not been completed.  However, he acknowledged telling Mr. Laut that he was impressed with his interview and that he was a strong candidate.

27.    Sometime during the week of March 19, 2007, I received copies of two (2) letters plaintiff Bielinski had written to Peter Ward, President of the Union, complaining about the perceived unfairness of the selection process, claiming that the Union was not a "remote or removed bystander in the process" and complaining about comments allegedly made to her by one of the Captains regarding her chances of being selected as Banquet Captain.  Copies of those letters dated March 16 and March 17, 2007, are annexed hereto as Ex. K.  Plaintiff Bielinski had never mentioned these alleged comments to me or anyone else in Hotel management.

## PLAINTIFF'S CLAIMS

28.    Plaintiffs' principal claim in their Complaint is that they are both more qualified than Mr. Laut and should have been selected for the position instead of him (See Ex. A, ¶14).

29.    Bielinski testified that she believes she is more qualified than Mr. Laut because she has worked as a Banquet Server in the Hotel for 22 years and that Mr. Laut had been an A List Banquet Server for only three (3) years.  She also testified that she believes she is more qualified because of "the way I take care of guests" and because she is a woman, since "the hotel needs a woman as captain."  Ex. L, Bielinski Tr., pp. 80-85.  She also testified that she does not believe that  experience as a delegate is relevant.  Ex. L, Bielinski Tr., p. 65.

30.    She conceded, however, that she does not know Mr. Laut's skills, only her own.  When asked if she believed that Laut had knowledge of the Captain's position, she responded: "I didn't test him, I don't know.... I know my qualifications."  Ex. L, Bielinski Tr., pp. 106-107 (emphasis added).

31.    On further questioning, Bielinski acknowledged that Mr. Laut knows how to handle the Captain's job and that he is qualified for the position, but that she believes she "would do a little better in general."  Ex. L, Bielinski Tr., pp. 98-99.  She does not know how Mr. Laut had answered questions during his interviews for the Banquet Captain position.  Ex. L, Bielinski Tr., p. 99.

32.    Pardo also claimed he was more qualified than Mr. Laut because his own knowledge and his relationship with long-term guests.  Ex. M, Pardo Tr., pp. 57-58.  Pardo pointed out that he had served as a Union delegate and that he believes service as a delegate is a criterion for selection as Banquet Captain "[b]ecause you know how to handle problems between management and union members.  Because you have experience if there is a conflict, you have to resolve it right there."  Ex. M, Pardo Tr., pp. 58–59.

33.    Pardo testified that he believes length of service should be the most important criterion in selecting a Banquet Captain and that based on his length of employment, he should have been selected as Banquet Captain before Bielinski.   Ex. M, Pardo Tr., pp. 66 -67.

34.    Pardo agreed that Mr. Laut has knowledge of banquet service and that he does not know how Mr. Laut answered questions during the interview process.  Ex. M, Pardo Tr., pp. 67-68.

Gender Discrimination

35.    Bielinski admits that no one in management at the Hotel ever made any negative comments about her gender.  Ex. L, Bielinski Tr., pp. 53, 56-57, 60-61.

36.    When asked for the basis of her belief that she was denied the promotion because of her

gender, Bielinski referred to negative comments allegedly made by one of the Banquet Captains,

Jack Racic (see Ex. K), who she believes does not liking to work with women. When asked for

the basis of her belief, Bielinski responded: "Because it is the truth." Ex. L, Bielinski Tr.,

pp.40-41. However, Bielinski admitted that <u>none of the other Captains</u> have a problem working

with women and that several of the other Captains <u>encouraged</u> her to apply for the position. Ex.

L, Bielinski Tr., p. 45-49.

37.    Bielinski also testified that she believes she was discriminated against on the basis of

gender because she is a woman and Mr. Laut is not. Ex. L, Bielinski Tr., pp. 96-97. Finally,

when asked whether she believed she was denied the job because of her gender, Bielinski

responded: "No idea why they denied me without an explanation." Ex. L, Bielinski Tr., p. 95.

Age Discrimination

38.    Both plaintiffs acknowledge that no one in Hotel management ever said anything about her

or his age. Ex. L, Bielinski Tr., pp. 53, 60-61; Ex. M, Pardo Tr., pp. 43-44.

39.    When asked the basis of her claim that she was denied the position because of her age,

Bielinski points to comments she alleges were made by Mr. Racic (who is currently 65 years

old), including an alleged statement that she is too old to be a Captain. Ex. L, Bielinski Tr. pp.

37-39. In fact, Bielinski testified that Mr. Racic was the only person who made any negative

comments and his comments are the <u>only</u> reason she believes she was discriminated against on

the basis of age. Ex. L, Bielinski Tr., p. 45-47, 97.

40.    When asked if any of the Captains made any comments about his age, Pardo replied only

that the Captains told him he had many more years to carry a tray. Ex. M, Pardo Tr., pp. 44-45.

Pardo also admitted that he responded to Mr. Hommerich's inquiry about why he wanted the

Banquet Captain position by saying that he was getting old and that as a Banquet Captain he would not have to carry so much weight and that he would be able to better take care of his family by making more money. Ex. M, Pardo Tr., pp. 42-43. When asked if he thought that was the best answer to give in an interview, he said: "No. I was sincere...." Ex. M, Pardo Tr., p. 42.

41. When asked why he believed that his age was a factor in the decision not to select him for the Banquet Captain position, Pardo answered:

A: Well, I feel like I'm 58 – I'm going on 58. The person that they choose was 38 years old.[3]
So they prefer a younger person, the other waiters that have applied.
Q: But nobody said anything to you that would lead you to believe that age was a factor, did they?
A: No. It was just my feeling, my personal feeling.

Ex. M, Pardo Tr., p. 65.

42. In her deposition, Bielinski asserted that the Banquet Captains allegedly preferred Mr. Laut because Mr. Laut is a delegate and he is on the board of the Union. Ex. L, Bielinski Tr., p. 64.

43. In his deposition, Pardo speculated that the Union itself had somehow influenced the decision to select Mr. Laut because Mr. Laut was a delegate and that every Captain that has been selected has been a delegate. Pardo acknowledged, however, that since he had been a delegate, this would have benefited him as well. Ex. M, Pardo Tr., pp. 63-64.

44. For all of the foregoing reasons, the Hotel submits that it is entitled to summary judgment dismissing plaintiffs' claims in their entirety and granting the Hotel such other and further relief as the Court may deem just, proper and equitable.

Yvonne Mancini

Sworn to before me
this 16th day of July, 2008

NOTARY PUBLIC

JUDITH A. STOLL
NOTARY PUBLIC, State of New York
No. 01ST4655884
Qualified in New York County
Commission Expires Dec. 31, 19— 2009

---

[3] At the time of his selection for Banquet Captain, Mr. Laut was 44 years old, not 38.

#291752.2

AO 440 (Rev. 8/01) Summons in a Civil Action

JUDGE SCHEINDLIN

# UNITED STATES DISTRICT COURT

RECEIVED

Southern District of New York

07 DEC 21  PM 5: 09

U.S. DISTRICT COURT
S.D.N.Y.

GRISELDA BIELINSKI and MARIO PARDO

## SUMMONS IN A CIVIL ACTION

HOTEL PIERRE

CASE NUMBER:

## 07 CV 11636

TO: (Name and address of Defendant)

*Hotel Pierre*
*2 5 East 61st Street*
*N, N.*

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Arthur Z. Schwartz
Schwartz, Lichten & Bright, P.C.
275 Seventh Avenue, 17th Floor
New York, New York 10001

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

DEC 28 2007

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

DATE

07 CV 11636

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

RECEIVED

07 DEC 21  PM 5: 09

U.S. DISTRICT COURT
S.D.N.Y.

BRISELDA BIELINSKI and MARIO PARDO,

                                        Plaintiffs,

                    - against -

HOTEL PIERRE,

                                        Defendant.

------------------------------------------------------------------ x

COMPLAINT AND
DEMAND FOR
JURY TRIAL

Plaintiffs, by their undersigned attorneys, as and for his complaint, alleges as follows:

## INTRODUCTION

1.    This is an action brought by two employees of defendant Hotel Pierre alleging
employment discrimination in violation of the Age Discrimination in Employment Act and, in
the case of one plaintiff, in violation of Title VII of the Civil Rights Act of 1964, as amended.
Plaintiffs allege that they were denied a promotion to the position of Banquet Captain in favor of
a much younger, much less experienced male employee.

## JURISDICTION

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), 29
U.S.C. §§ 216(b) and 626(c)(1), and 42 U.S.C. § 200e-5(f)(1).  Plaintiffs filed a complaint with
the United States Equal Employment Opportunity Commission on or about May 10, 2007, and
subsequently received a Notice of Right to Sue.  This Court's pendent jurisdiction is
also involved.

PARTIES

3.    Plaintiffs are employees of the Hotel Pierre. Pardo has been employed by the Pierre since 1970, and Bielinski since 1985. At all times since 1985, plaintiffs have worked as banquet waiters. Pardo was born in 1951, is male, and resides at 47-08 21st Avenue, in Astoria, Queens; Bielinski was born on February 21, 1047, is female, and resides at 60 West 57th Street, New York, New York.

4.    Defendant Hotel Pierre is a hotel and an employer, as that term is defined at 29 U.S.C. § 630(b), and at 42 U.S.C. § 2000e-(b). It is located at 60 West 57th Street, New York, New York 10003.

FACTS RELEVANT TO ALL CLAIMS

5.    The position of Banquet Captain is the only promotional position available to waiters at the Pierre. The Pierre has 28 full-time waiters (also known as "A List Waiters") and 14 are part time (also known as "B List"). There are five full-time Banquet Captains and one part-time Banquet Captain.

6.    The last time there was an opening for the position of Banquet Captain was in 1993. The one before that occurred in 1989.

7.    The four full-time Banquet Captains working prior to the posting of an opening on February 13, 2007 were all male, and they are all over 60 years of age. The part-time Banquet Captain is also more than 60 years of age.

8.    On February 13, 2007, the Pierre posted notice of an opening for a Banquet Captain position. Approximately 12 waiters applied, including plaintiffs. Initially, only a small

2

number were interviewed (including plaintiffs), but after a complaint was made to their union,

Local 6, Hotel and Restaurant Employees Union, all applicants were interviewed.

9.      On March 17, 2007, Jay Laut, a 39-year-old waiter who had been an A-list waiter

for only 2½ years and a B-list waiter for 5 years, announced that he had gotten the position.

10.     On March 19, 2007, Terry Rungoo (another waiter with a lot of seniority) and

plaintiffs Fardo and Bielinski went to see Yvonne Manzini, the Hotel's Human Resources

Manager, to complain about the discriminatory treatment of those with seniority.  Manzini

denied knowing anything about a decision being made in favor of Laut.  On March 21, 2007,

Laut returned to being a waiter.

11.     Over the next few weeks, plaintiffs were again interviewed, this time by the

Catering Manager, and then by the Hotel's Manager.

12.     While these interviews were underway, Laut was out on a three-week leave of

absence.

13.     On April 16, 2007, Yvonne Manzini, the Human Resources Manager, posted a

notice, on behalf of management, announcing that Jay Laut had gotten the promotion.

14.     Plaintiffs were far more qualified for the position than Laut.  Plaintiffs did not get

the promotion because of their age, and in Bielinski's case, because of her sex.

15.     Plaintiffs incorporate by reference each and every allegation set forth in

paragraphs 1-14 above into the causes of action set forth below.

3

AS AND FOR A
## FIRST CAUSE OF ACTION

16.    By engaging in the aforedescribed actions, the Hotel Pierre has discriminated against plaintiffs because of their age, in violation of 29 U.S.C. § 623.

AS AND FOR A
## SECOND CAUSE OF ACTION

17.    By the actions aforedescribed, defendant violated plaintiff Bielinski's rights under 42 U.S.C. 2000e-2(a) to be free from sex discrimination.

AS AND FOR A
## THIRD CAUSE OF ACTION

18.    By its aforedescribed actions, defendant violated plaintiffs' rights under NYSHRL §296(1) *et seq.*

AS AND FOR A
## FOURTH CAUSE OF ACTION

19.    By its aforedescribed actions, defendant violated plaintiff's rights under NYCHRL §8-107(1) *et seq.*

## DAMAGES

20.    By its aforedescribed actions, defendant has caused plaintiffs to lose pay and benefits and has caused them severe emotional distress to their damage in a sum in excess of $500,000.

21.    Defendant's aforedescribed actions were taken in willful and/or reckless disregard of plaintiff's rights.

4

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs pray that this Court will enter Judgment:

1.    Directing defendant to place plaintiffs into the position of Banquet Captain.

2.    Awarding plaintiff:

   a.    lost wages and benefits;

   b.    emotional distress damages in the sum of $500,000;

   c.    punitive damages in the sum of $500,000; and

   d.    attorneys' fees and litigation expenses.

<u>JURY DEMAND</u>

Plaintiff demands a jury trial.

Dated: December 21, 2007

SCHWARTZ, LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff

By:_____
   Arthur Z. Schwartz
   275 Seventh Avenue, Room 1760
   New York, New York 10001
   (212) 228-6320

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

GRISELDA BIELINSKI and MARIO PARDO,

                    Plaintiffs,                        **07 Civ. 11636 (SS)**

        -against-                          **ANSWER**

HOTEL PIERRE,

                    Defendants.

_____x

Defendant IHMS, LLC d/b/a The Pierre (the "Hotel"), incorrectly named herein as Hotel Pierre, by its attorneys, Kane Kessler, P.C., answers the Complaint as follows:

### INTRODUCTION

1. Denies the allegations of paragraph 1 of the Complaint to the extent it alleges that the Hotel violated the Age Discrimination in Employment Act and/or Title VII of the Civil Rights Act of 1964, as amended.

### JURISDICTION

2. Admits the allegations of paragraph 2 that plaintiffs filed a complaint with the United States Equal Employment Opportunity Commission on or about May 10, 2007 and subsequently received a Notice of Right to Sue dated September 18, 2007.

### PARTIES

3. Admits the allegations of paragraph 3 of the Complaint.

4. Denies the allegation of paragraph 4 of the Complaint that the Hotel is located at 60 West 57th Street, New York, N.Y. 10003.

#281848.1

## FACTS RELEVANT TO ALL CLAIMS

5. Admits the allegations of paragraph 5 of the Complaint.

6. Admits the allegations of paragraph 6 of the Complaint.

7. Admits the allegations of paragraph 7 of the Complaint.

8. Denies the allegations of paragraph 8 of the Complaint, except admits that the Hotel posted an opening for a Banquet Captain position on or about February 13, 2007, that approximately 12 waiters applied and all the applicants were interviewed.

9. Admits the allegations of paragraph 9 of the Complaint.

10. Admits the allegations of paragraph 10 of the Complaint, except affirmatively notes that the name of the Hotel's Director of Human Resources is Yvonne Mancini.

11. Admits the allegations of paragraph 11 of the Complaint.

12. Admits the allegations of paragraph 12 of the Complaint.

13. Admits the allegations of paragraph 13 of the Complaint, except affirmatively notes that the name of the Hotel's Director of Human Resources is Yvonne Mancini.

14. Denies the allegations of paragraph 14 of the Complaint.

15. Defendant repeats and reiterates the answers set forth in paragraphs 1 -14 above into the answers set forth below.

## AS AND FOR A FIRST CAUSE OF ACTION

16. Denies the allegations of paragraph 16 of the Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION

17. Denies the allegations of paragraph 17 of the Complaint.

## AS AND FOR A THIRD CAUSE OF ACTION

18. Denies the allegations of paragraph 18 of the Complaint.

#281848.1

## AS AND FOR A FOURTH CAUSE OF ACTION

19. Denies the allegations of paragraph 19 of the Complaint..

## DAMAGES

20. Denies the allegations of paragraph 20 of the Complaint.

21. Denies the allegations of paragraph 21 of the Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

22. The Complaint fails to state a claim pursuant to the Age Discrimination in Employment

Act, as amended.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

23. The Complaint fails to state a claim pursuant to the Civil Rights Act of 1964, as

amended.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

24. The Complaint fails to state a claim pursuant to the Age Discrimination in Employment

Act, as amended.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

25. The Complaint fails to state a claim pursuant to the New York State Human Rights

Law.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

26. The Complaint fails to state a claim pursuant to the New York City Human Rights Law.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

27. Plaintiffs were not selected for the position of Banquet Captain for legitimate,

nondiscriminatory business reasons.

#281848.1

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

28. The Hotel made the selection for the Banquet Captain position using objective criteria unrelated to age and/or gender.

### AS AND FOR AN EIGHTH AFFIRMTIVE DEFENSE

29. All applicants for the position of Banquet Captain were evaluated on their responses to identical questions during a series of three (3) interviews with three (3) different Hotel managers.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

30. The Hotel selected the most qualified applicant for the position of Banquet Captain.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

31. Plaintiffs have failed to exhaust their remedies pursuant to a collective bargaining agreement between the New York Hotel Trades Council, AFL-CIO and the Hotel Association of New York City, Inc.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

32. The Complaint is barred in whole or in part by the doctrine of laches.

   **WHEREFORE,** the Hotel submits that the Complaint should be dismissed in its entirety and the Hotel should be granted such other, further and different relief as to the Court may seem just and proper.

#281848.1

Dated:  New York, N.Y.
         January 24,  2008

                                    KANE KESSLER, P.C.
                                    **Attorneys for Defendant**
                                    **IHMS, LLC, d/b/a The Pierre**

                                    By: _(signature)_
                                       Judith A. Stoll (JS-9896)
                                    1350 Avenue of the Americas
                                    New York, N.Y. 10019
                                    T. (212)519=5165
                                    F. (212)541-9799
                                    jstoll@kanekessler.com

TO:    **SCHWARTZ, LICHTEN & BRIGHT**
        Attn:  Arthur Z. Schwartz, Esq.
        **Attorneys for Plaintiffs**
        **275 Seventh Avenue**
        **New York, N.Y. 10001**
        Tel:     (212)228-6320
        Fax:     (212) 358-1353

#281848.1

## AFFIDAVIT OF SERVICE BY REGULAR MAIL

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

        I, Cara M. Brownell, being duly sworn, say:

        I am not a party to the within action, am over 18 years of age, and reside in Brooklyn, New York.

        On January 24, 2008,  I served the within:

### ANSWER

by delivering a true copy thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following:

      **TO:**   **SCHWARTZ, LICHTEN & BRIGHT**
               **Attn:  Arthur Z. Schwartz, Esq.**
               **275 Seventh Avenue**
               **New York, N.Y. 10001**

                             **CARA M. BROWNELL**

Sworn to before me this
24th day of January, 2008

Notary Public

JUDITH A. STOLL
NOTARY PUBLIC, State of New York
No. 01ST4655884
Qualified in New York County
Commission Expires Dec. 31, ~~~~ 2009

#281848.1

**Internal Transfer Request**

| I. | To be completed by EMPLOYEE |
| --- | --- |

Name: _GRISELDA BIELINSKI_

Today's Date: _2/21/07_    (must be employed in hotel minimum of 1 year)

Hotel Hire Date: _9/11/85_    (must be in current position minimum of 6 months)

Amount of time in Current Position: _21 YEARS_

Current Department & Position: _BANQUET DPT. - BANQUET WAITRESS_

Department & Position Applied for: _BANQUET - BANQUET CAPTAIN_

What qualifies you for this position? *(please provide specific information)* _EVER SINCE I BEGAN WORKING AS A WAITRESS IN BANQUET 21 YEARS AGO, I HAVE BEEN CAREFULLY TRAINING MYSELF TO BECAME A BANQUET CAPTAIN, I DID IT BY WORKING SIDE BY SIDE WITH THE CAPTAIN HELPING THEM AT EVERY POSSIBLE OPPORTUNITY IN THE PER-FORMANCE OF THEIR WORK OF DUTIES._

EMPLOYEE SIGNATURE: _Griselda Bielinski_    DATE: _2/21/07_

| II. | To be completed by CURRENT DEPARTMENT HEAD |
| --- | --- |

Has the employee been employed at The Pierre for at least one (1) year?    Yes ✓ No____

Has the employee been in his/her position for a minimum of six (6) months?    Yes ✓ No____

Has the employee received a disciplinary action in the last three (3) months?    Yes____ No ✓

Do you consider the employee eligible for a transfer based on their current performance?    Yes ✓ No____

*(If employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview:    Yes ✓ No____

Comments: *(please provide specific information)* _____

_____

CURRENT DEPT. HEAD APPROVAL: Yes ✓ No__ SIGNATURE: _C. Palmer_ DATE: _2/21/07_

CURRENT DIV. HEAD APPROVAL:  Yes__ No__ SIGNATURE: _____ DATE: _____

| III. | To be completed by HUMAN RESOURCES |
| --- | --- |

Comments: _21 years 3 months  no disciplinaries / discply 6/06_

RECEIVED  FEB 2 1 2007  Human Resources Department

HR APPROVAL: Yes__ No__ SIGNATURE: _A. Noland_    DATE: _2/23/07_

| IV. | To be completed by RECEIVING DEPARTMENT HEAD |
| --- | --- |

Comments: *(please provide specific information)* _____

_____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

| V. | Final Approvals |
| --- | --- |

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

Offered Position: Yes_____ No_____

(If **YES**) Date Offered: _____ By Whom: _____ Start Date: _____

(If **NO**) Decision explained to candidate: Date: _____ By Whom: _____

What planned goals were discussed with employee? _____

_____

_____

*Current as of 11/29/2006*

D0141

Pierre Hotel
Human Resources Department
Attn: Ms.    Mancini
Director of the Human Resources Dept.
New York, NY  10021

2/13/07

Dear Ms. Mancini,

For the last 21 years, I have been and presently still am working as a waitress in the Banquet Department at the Pierre Hotel.

In the past three instances or occasions when openings were made available for the position of Captain in my Banquet Department, I have addressed myself to your department in writing, asking to please be taken into consideration for this position, which in fact is a promotion.

Unfortunately for me, I was not promoted in any of the three times that I had petitioned for this superior position.

I have never received an explanation for not having been chosen, nor for the criteria used in this matter in which I resulted unsuccessful.

I ask of you to please excuse me, but I am not being immodest when I say that my qualifications for the position of captain are excellent. To substantiate this, I am herewith enclosing a photocopy of a letter addressed to me from Mr. Didier Le Calvez, former General Manager of the Pierre Hotel.

Also, in reference to my person, from "The Pierre Employee Development Review," the following:

> "Has dependable attendance."
> "Organizes own work efficiently."
> "Works with minimal supervision."
> "Follows up on details."
> "Does things right the first time."

This paper has been issued by the Reviewing Manager and the Division Head.

As you very well know, my work performance throughout these last twenty-one years has been outstanding.  I put my heart in the performance of my duties.  I do my work with the love and dedication that a responsible proprietor should have for his business.  I can also communicate with people in Italian and French, which is a plus.

I am looking forward to continue working at the Pierre Hotel with the same diligence, dedication, and enthusiasm that I have done and shown for these last twenty-one years.

Two new openings for the position of Captain are going to be filled at any moment, due to recent vacancies. I am hereby applying to you for one of these positions.

I beg of you to please have the kindness of making your decision taking into account the contents of this letter, it's enclosures, plus the numerous letters of gratitude you have received from clients of the Pierre, where they thank you for the outstanding service or work performed by me.

Should you decide in my favor, that will result in you appointing for the first time a woman for the position of Banquet Captain in the long and glorious existence of the Pierre.

Respectfully yours,

Griselda Bielinski

Encl: DLC

Griselda Bielinski
60 West 57th Street
New York, NY 10019



**The Pierre**
*New York*
A FOUR SEASONS · REGENT HOTEL

FIFTH AVENUE AT 61ST STREET    NEW YORK    10021-8402
212-838-8000    TELEX 127426    FAX: 212-826-0319

DIDIER LE CALVEZ
General Manager

July 18, 1996

Ms. Griselda Bielinski
Banquet Headwaiter's Office

Dear Griselda:

Please find enclosed a very nice letter which I received from Ms. Annette Reifer at Donaldson, Lufkin & Jenrette.

As you can see, Ms. Reifer was very pleased with the fine service and attention which was extended to her group and mentions you in particular as being most impressed with. I would like to personally thank you for maintaining the high levels of service and professionalism that we at The Pierre constantly strive to achieve...as a result, leaving Ms. Reifer and her colleagues at Donaldson, Lufkin & Jenrette with a very favorable impression of The Pierre.

Thank you for a job well done.  Keep up the good work!!!

Sincerely,

DLC:ll
enc.

cc:  Herb Rose, Director of Catering
     Tony Ruscitto, Asst. Director of Human Resources

D0145

## Internal Transfer Request

### I.    To be completed by EMPLOYEE

Name: *MARIO PARDO*

Today's Date: *2-16-'07*

Hotel Hire Date: *4-11-69*    (must be employed in hotel minimum of 1 year)

Amount of time in Current Position: *20 YEARS*    (must be in current position minimum of 6 months)

Current Department & Position: *"A" LIST BANQUET SERVER*

Department & Position Applied for: *BANQUET CAPTAIN*

What qualifies you for this position? *(please provide specific information)* *EXPERIENCE, LEADERSHIP.*
*UNION KNOWLEGE. ( RESUME ATTACHED)*

EMPLOYEE SIGNATURE: *Mario Pardo*    DATE: *2-16-07*

### II.    To be completed by CURRENT DEPARTMENT HEAD

Has the employee been employed at The Pierre for at least one (1) year?   Yes ✓  No___

Has the employee been in his/her position for a minimum of six (6) months?   Yes ✓  No___

Has the employee received a disciplinary action in the last three (3) months?   Yes___  No ✓

Do you consider the employee eligible for a transfer based on their current performance?   Yes ✓  No___
*(if employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview?   Yes ✓  No___

Comments: *(please provide specific information)* _____

CURRENT DEPT. HEAD APPROVAL: Yes ✓ No__  SIGNATURE: *C. Edwards*  DATE: *2/20/07*

CURRENT DIV. HEAD APPROVAL:  Yes__ No__  SIGNATURE: _____  DATE: _____

### III.    To be completed by HUMAN RESOURCES

Comments: *37 years 10 months, disc on 2/05, nominated in Sept 06 for EOM*

FEB 2 1 2007

HR APPROVAL: Yes ✓ No__  SIGNATURE: *A Mohamed*  DATE: *2/22/07*
Human Resources Department

### IV.    To be completed by RECEIVING DEPARTMENT HEAD

Comments: *(please provide specific information)* _____

RECEIVING DEPT. HEAD APPROVAL: Yes__  No__  SIGNATURE: _____  DATE: _____

### V.    Final Approvals

RECEIVING DIV. HEAD APPROVAL: Yes__ No__  SIGNATURE: _____  DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__  SIGNATURE: _____  DATE: _____

Offered Position: Yes_____ No_____

(If **YES**) Date Offered: _____  By Whom: _____  Start Date: _____

(If **NO**)  Decision explained to candidate:  Date: _____  By Whom: _____

What planned goals were discussed with employee? _____
_____

*Current as of 11/29/2006*

D0155

# MARIO PARDO

47-08 21st AVENUE ♦ ASTORIA, NEW YORK 11105
PHONE (917) 749-4754 ♦ E-MAIL maal2628@aol.com

## PERSONAL PROFILE:

I have thirty-seven years of experience encompassing banquet serving, banquet staff booking, payroll, diagrams, and room service.  I am a very conscientious and dedicated worker who is detail oriented and professional among clients and salespeople.

## RELATED EXPERIENCE
### THE PIERRE HOTEL

New York, NY
1986-Present

*A-list Banquet Server*
♦ Presented and executed the serving of banquets and hospitalities
♦ Assistant booking secretary
♦ Assistant union delegate
♦ Oversee payroll miscalculations
♦ Integral capacity of banquet waiter schedule

New York, NY
1974-1986

*Room Service Waiter*
♦ Catered to high level cliental
♦ Assisted in order taking process

New York, NY
1969-1974

*Room Service Bus-Boy*
♦ Assisted waiters setting up tables
♦ Replenish condiments
♦ Finalized presentation of clientele order

## EDUCATION

**Brandies High School**

New York, NY
1966-1969

**Hotels and Restaurants Trade School**

New York, NY
1978-1983

## ACCOMPLISHMENTS
♦ Banquet Server Certified
♦ Dining Room Service Procedure Certified
♦ Nomination for employee of the month (summer 2006)

## LANGUAGES
♦ Fluent in Spanish
♦ Conversational in Portuguese

D0157

**Internal Transfer Request**

### I.     To be completed by EMPLOYEE

Name: JAY AMAN LAUT
Today's Date: FEB 13, 2007
Hotel Hire Date: SEPT 11, 1998                    *(must be employed in hotel minimum of 1 year)*
Amount of time in Current Position: SINCE 1998                    *(must be in current position minimum of 6 months)*
Current Department & Position: BANQUET WAITER
Department & Position Applied for: BANQUET CAPTAIN
What qualifies you for this position? *(please provide specific information)* Have excellent F&B knowledge & Fine
dining experience. Have demonstrated good leadership, great communication skills, possess
excellent interpersonal and organization skills. Proficient with union guidelines & work great
EMPLOYEE SIGNATURE: _____                    DATE: 2/13/2007     under
                                                                                                          pressure

### II.     To be completed by CURRENT DEPARTMENT HEAD

Has the employee been employed at The Pierre for at least one (1) year?          Yes ✓   No___
Has the employee been in his/her position for a minimum of six (6) months?      Yes ✓   No___  ✓
Has the employee received a disciplinary action in the last three (3) months?    Yes ✓   No ✓
Do you consider the employee eligible for a transfer based on their current performance?  Yes ✓  No___
*(If employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*
                                                                                                           Yes ✓   No___
Recommended for an interview:
Comments: *(please provide specific information)* - VERY THOROUGH, INCISIVE & KNOWLEDGABLE

CURRENT DEPT. HEAD APPROVAL: Yes ✓ No__ SIGNATURE: C. Edm___ DATE: 2/13/07
CURRENT DIV. HEAD APPROVAL:  Yes__ No__ SIGNATURE: _____ DATE: _____

### III.     To be completed by HUMAN RESOURCES

Comments: _____ Meets requirements     8 years 5 months
                              Called Jay on 2/26   AHC

HR APPROVAL: Yes ✓ No___ SIGNATURE: _____    DATE: 2/15/07

### IV.     To be completed by RECEIVING DEPARTMENT HEAD

Comments: *(please provide specific information)* _____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

### V.     Final Approvals

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____
HOTEL MANAGER/GM APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: 5/3/7
Offered Position: Yes_____ No___
Stephanie (If YES) Date Offered: 4/15/07 By Whom: YHC Start Date: 4/16/07
              (If NO) Decision explained to candidate: Date: _____ By Whom: _____
                            What planned goals were discussed with employee? _____

*Current as of 11/29/2006*

**D0165**

**Jay Aman Laut**
60-10, 83rd Street
Middle Village. NY 11379
718-505-2020
j.tjia@verizon.net

**Summary:**   To Contribute through my education and experience related to food service of fine dining restaurant and luxury hotel by offering my motivational and communication skills along with my energy, enthusiasm, and reputation as a dependable and knowledgeable professional.

**Experience:**   THE PIERRE HOTEL                         New York, NY
**Banquet Waiter**                         Sept 1998 to Present

REGENT WALL STREET HOTEL          New York, NY
**Banquet Server/Captain**                Dec 1999 to Jan 2004
* in charge of servicing banquets which included setting up and preparing for large groups and ensuring fast, efficient service.
* involved in daily basis in training, cost control, floor management and scheduling.
* Coordinate activities between servers and rest of staff.
* Demonstrate clear and professional manner with staff, management, and guests.
* Arrange for and supervise staff, crews, volunteers to ensure work as scheduled.

RIHGA ROYAL HOTEL                        New York, NY
**Dining Room & Banquet Server**          Jan 1992 to Dec 1999
* Ensure guests receive friendly courteous service during their stay.
* Fully knowledgeable with menu and service techniques.
* Communicate to fellow staff needs of guest and assist the team.
* Build loyal customer base anticipating customer needs and creating rapport with wide range of personalties.

Au Mandarin Restaurant   2∞ ᴠ̶ᴇ̶ᴀ̶ᴄ̶ᴇ̶ᴇ̶ᴇ̶    New York, NY
**Captain/Assistant Manager**             Jun 1985 to Jan 1992
* in charge of creating and updating food and wine menu.
* Arranged, planning and supervised catering functions.
* Successfully organized all aspects of sales drive.
* Supervised wait and bus staff, bartend and experdite as needed.

**Education:**   American Sommelier Association          New York, NY
**Wine Captain Course**                   December 1991

New York University                       New York, NY
**Computer Science/Business**             June 1984

**References:**   References excellent and available upon request.

D0173



Frank Arthur Banks, C.H.A.
General Manager

August 26, 1998

To Whom It May Concern:

This will certify that Jay Laut, social security #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, has been employed at the RIHGA Royal Hotel as food and beverage server since May 6th, 1992 to present.

Jay is well versed in all aspects of fine dining and wine service. He has always conducted himself in a most professional manner, has an excellent attendance record, and is fluent in four languages.

In addition to Jay's regular responsibilities in our Halcyon restaurant, he also works in our Catering department as a banquet server when needed.

It is our understanding that Jay is exploring new opportunities with which we wish him well and have no reservations in recommending him to a prospective employer.

Sincerely,

*Frank Banks*

RIHGA ROYAL HOTEL
151 WEST 54TH STREET, NEW YORK, NEW YORK 10019
(212) 307-5000   TELEFAX (212) 765-6581   (800) 937-5454   TELEX (212) 245-0170



# RIHGA ROYAL HOTEL
## NEW YORK

September 29, 1997

TO WHOM IT MAY CONCERN,

Throughout Jay Aman Laut  five years of employ  at Rihga Royal Hotel  he had demonstrated only the finest qualities. In many years in this industry  I have never experienced such professionalism and dedication. Jay is incredibly patient and accommodating, two essential qualities that are often taken for granted yet so scarce in this business today.

Jay exudes leadership qualities beyond adequacy and also remarkably accomplishes just that without engendering employee resentment. He is always looked up to and very well respected by his staff as well as his peers and superiors. Despite his endless knowledge and expertise in his profession he never dictates or appears condescending to his subordinates. Being a self motivator he helps those around him rise to any challenge.

Jay has an insurmountable passing for food and wine. He has a incredible ability to translate the intricacies of wines and fine dining without seeming patronizing. Very often customers come away with a new appreciation for the two. Many diners claim that it was he who made their visit so pleasant that they had to return.

Jay is always a gracious host while being a dedicated leader. In dealing with customers he uses his innate abilities to comfort them in an attempt to create a dining experience that is catered to the individual. I simply cannot say enough positive things about an employee who shared with me so much about the restaurant business and made the time we worked together enriching as well as pleasant.

Jay  would make an excellent addition to any establishment that requires leadership, direction and that little something extra.

Mary Regueiro
( Restaurant Manager )

151 WEST 54TH STREET, NEW YORK, NEW YORK 10019
(212) 307-5000  FAX (212) 765-6530  RESERVATIONS (800) 937-5454  TELEX (023) 210512 RIHGAR UR

D0175



# RIHGA ROYAL HOTEL
## NEW YORK

**SEPTEMBER 29, 1997**

To whom it may concern:

Re:  Jay Aman Laut

This letter is to certify that Jay Aman Laut, ss # 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, had been employed by Rihga Royal Hotel since May 4, 1992.

Jay served in the capacities of Banquet ' B ' List  waiter and dining room food server in two of our operations - Rihga Royal Hotel banquet department and Halcyon Restaurant.

He is, indeed, an extremely capable employee - enthusiastic, energetic, professional, responsible, and above all honest. It goes without saying that he would be an asset to any quality house. We enjoyed having Jay in our employ and recommend him to others.

Please feel free to contact me if any additional information is needed.

**Bryan Kalman**
**( Director of Catering )**

151 WEST 54TH STREET, NEW YORK, NEW YORK 10019
(212) 307-5000  FAX (212) 765-6530  RESERVATIONS (800) 937-5454  TELEX (023) 210512 RIHGAR UR

D0176



# RIHGA ROYAL HOTEL
## NEW YORK

SEPTEMBER 30, 1997

TO WHOM IT MAY CONCERN:

IT IS WITH GREAT PLEASURE THAT WE RECOMMEND JAY LAUT ( SOCIAL SECURITY # 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 ) TO ANY FOOD-LIQUOR OPERATION. HE IS EXTREMELY CONSCIENTIOUS, RESPONSIBLE, PLEASANT AND PUNCTUAL. HIS APPEARANCE AND DEMEANOR ARE IMPECCABLE. JAY IS KNOWLEDGEABLE AND ARTICULATE ABOUT HAUTE CUISINE AND WINE (EUROPEAN AND CALIFORNIAN) AND WELL INFORMED ABOUT THE BAR (COCKTAILS, LIQUEURS, COGNACS, ETC. ). WE HAVE ALWAYS FOUND HIM TO BE DIPLOMATIC AND GRACIOUS TO GUESTS AND STAFF ALIKE. MOST VALUABLE OF ALL, HE IS GENEROUS WITH HIS KNOWLEDGE AND AN EXCELLENT TRAINER OF NEW EMPLOYEES.

RIHGA ROYAL HAS A VERY SUCCESSFUL BANQUET DEPARTMENT AND JAY HAS BEEN A HEAD WAITER AMONG OUR BANQUET ' B' LIST STAFF. WE PRIDE OURSELVES ON THE QUALITY OF OUR FOOD AND SERVICE, AND JAY WAS A MOST DEFINITE ASSET, WHO MADE A SERIOUS CONTRIBUTION TO OUR SUCCESS. OUR LOSS IS YOUR GAIN.

PLEASE FEEL FREE TO CALL FOR VERIFICATION.

YOURS SINCERELY,

RICHARD RAMANO
( BANQUET MANAGER )

D0177



October 1, 1997

To whom it may concern,

Please allow this letter to serve as a recommendation on behalf of Jay Laut . Jay has been employed at the restaurant since May 1992.

As maitre d' of the restaurant, I relied heavily on Jay to keep the entire wait staff in line as his skills are excellent in all the necessary areas. He is also extremely well versed with regard to wines both imported and domestic.

Jay will be an asset to any establishment he chooses to work with.

Yours sincerely,

Sanda Josipovic

Sanda Josipovic
( Restaurant Maitre D )

151 West 54th Street, New York, NY  10019     (212) +68-8888   fax (212) +68-8816

**D0178**

September 30, 1997

TO  WHOM IT MAY CONCERN :

Re: Jay Aman Laut — ss # 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

This letter is to acknowledge that  Jay  Laut  is an employee of  Rihga Royal Hotel
and it is a great pleasure that I recommend Jay to any food-liquor operation. He is
pleasure to work with and a constant source of fresh ideas. He is a resourceful
self-starter, adept at long term and immediate problem solving. His ability to take
on challenge in an expedient and efficient manner is unmatched by any person I
ever worked with. In addition, Jay Laut is conscientious and very responsible
person. I just cannot stress enough his pleasant manner and often captivating
personality. ---I HIGHLY RECOMMEND HIM TO ANY ESTABLISHMENT ---

Please feel free to call for verification.

John Santiago
(Executive sous-chef )

151 West 54th Street, New York, NY  10019 · (212) 468-8888  fax (212) 468-8816

D0179



# RIHGA ROYAL HOTEL
## NEW YORK

Frank Arthur Banks. C.H.A.
General Manager

January 5, 1998

Mr. Jay Laut
Halcyon

Dear Jay,

Congratulations on having achieved Perfect Attendance during 1997.

It is because of individuals, such as you, that the RIHGA Royal Hotel has been able to accomplished great guest satisfaction.

To acknowledge your achievement, please present this letter to your Department Head for an additional Day Off (with pay - subject to business needs) during 1998 as a Thank You from the Executive Committee.

Keep up the good work!

Sincerely,

*Frank Banks*

151 WEST 54TH STREET, NEW YORK, NEW YORK 10019
(212) 307-5000 FAX (212) 765-6530  RESERVATIONS (800) 937-5454  TELEX (023) 210512 RIHGAR UR

D0180



# RIHGA ROYAL HOTEL
## NEW YORK

August 31, 1998

To Whom It May Concern,

This is to verify that Mr. Aman Jay Laut, Social Security number 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, has been employed by the RIHGA Royal Hotel as a "B" List Banquet Server since May 6, 1992 to the present.

The RIHGA Royal is a 500 suite hotel with very high standards, and as a member of our staff, Jay has proven himself to be valued employee who is both dependable and reliable.

If there is a need for any other information, please feel free to call my office at (212) 956-7584.

Thank you.

Sincerely,

Lisa Lichtenstein
Asst. Director of Personnel

LL:cw

151 WEST 54TH STREET, NEW YORK, NEW YORK 10019
(212) 307-5000 FAX (212) 765-6530 RESERVATIONS (800) 937-5454 TELEX (023) 210512 RIHGAR UR

**D0181**



## Internal Transfer Request

| I. | To be completed by EMPLOYEE |
| --- | --- |

Name: _ANTONIO IOAN COJITA_

Today's Date: _03·23·2007_

Hotel Hire Date: _02·05·2001_ (must be employed in hotel minimum of 1 year)

Amount of time in Current Position: _18 months_ (must be in current position minimum of 6 months)

Current Department & Position: _Banquets Waiter_

Department & Position Applied for: _Banquets Captain_

What qualifies you for this position? *(please provide specific information)* _Strong determination to excell,_
_high work ethic standards, previous experience as captain, love and_
_ability of working with people._

EMPLOYEE SIGNATURE: _Anton Coin_                 DATE: _____

| II. | To be completed by CURRENT DEPARTMENT HEAD |
| --- | --- |

Has the employee been employed at The Pierre for at least one (1) year?      Yes ✓  No ____

Has the employee been in his/her position for a minimum of six (6) months?   Yes ✓  No ____

Has the employee received a disciplinary action in the last three (3) months? Yes ____ No ✓

Do you consider the employee eligible for a transfer based on their current performance? Yes ✓  No ____

*(If employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview?                                                 Yes ✓  No ____

Comments: *(please provide specific information)* _____

CURRENT DEPT. HEAD APPROVAL: Yes__ No__  SIGNATURE: _____ DATE: _3/23/07_

CURRENT DIV. HEAD APPROVAL:  Yes__ No__  SIGNATURE: _____ DATE: _4/3/07_

| III. | To be completed by HUMAN RESOURCES |
| --- | --- |

Comments: _____

HR APPROVAL: Yes ✓ No __  SIGNATURE: _____  DATE: _3/23/07_

| IV. | To be completed by RECEIVING DEPARTMENT HEAD |
| --- | --- |

Comments: *(please provide specific information)* _____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__  SIGNATURE: _____  DATE: _____

| V. | Final Approvals |
| --- | --- |

RECEIVING DIV. HEAD APPROVAL: Yes__ No__  SIGNATURE:_____  DATE:_____

HOTEL MANAGER/GM APPROVAL:  Yes__ No__  SIGNATURE:_____  DATE:_____

Offered Position: Yes_____ No_____

    (If YES) Date Offered:_____ By Whom:_____ Start Date:_____

    (If NO)  Decision explained to candidate:  Date:_____ By Whom:_____

             What planned goals were discussed with employee? _____
             _____
             _____

*Current as of 2/21/2007*

D0183

## Internal Transfer Request

**I.    To be completed by EMPLOYEE**

Name: _JOSE M. HERNANDEZ_

Today's Date: _12/27/07_

Hotel Hire Date: _3/3/1990_    (must be employed in hotel minimum of 1 year)

Amount of time in Current Position: _16 YEARS +_    (must be in current position minimum of 6 months)

Current Department & Position: _BANQ. WAITER_

Department & Position Applied for: _CAPTAIN BANQ. DEPARMENT_

What qualifies you for this position? *(please provide specific information)* _HIGH PRIORITY TAKE CARE OF_
_GUE#T(S) WITH COURTESY AND SERVICE, I COMMUNICATE WELL_
_WITH MANAGEMENT, I AM A TEAM PLAYER;_

EMPLOYEE SIGNATURE: _Jose M. Hernandez_    DATE: _2/27/07_

**II.    To be completed by CURRENT DEPARTMENT HEAD**

| | |
|---|---|
| Has the employee been employed at The Pierre for at least one (1) year? | Yes ✓ / No |
| Has the employee been in his/her position for a minimum of six (6) months? | Yes ✓ No |
| Has the employee received a disciplinary action in the last three (3) months? | Yes___ / No ✓ |
| Do you consider the employee eligible for a transfer based on their current performance? | Yes ✓ No |

*(if employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview?    Yes___ No___

Comments: *(please provide specific information)* _____

_____

CURRENT DEPT. HEAD APPROVAL: Yes ✓ No___ SIGNATURE: _C. Edwards_ DATE: _2/27/07_

CURRENT DIV. HEAD APPROVAL:  Yes___ No___ SIGNATURE: _____ DATE: _____

**III.    To be completed by HUMAN RESOURCES**

Comments: _____ _17 years_ _____

_____

HR APPROVAL: Yes ✓ No___ SIGNATURE: _Attached_    DATE: _3/5/07_

**IV.    To be completed by RECEIVING DEPARTMENT HEAD**

Comments: *(please provide specific information)* _____

_____

RECEIVING DEPT. HEAD APPROVAL: Yes___ No___ SIGNATURE: _____ DATE: _____

**V.    Final Approvals**

RECEIVING DIV. HEAD APPROVAL: Yes___ No___ SIGNATURE: _____ DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes___ No___ SIGNATURE: _____ DATE: _____

Offered Position: Yes_____ No_____

(If YES) Date Offered: _____ By Whom: _____ Start Date: _____

(If NO) Decision explained to candidate: Date: _____ By Whom: _____

What planned goals were discussed with employee? _____

_____

*Current as of 2/21/2007*

D0189

## Internal Transfer Request

**I.       To be completed by EMPLOYEE**

Name: _Joseph Mario Fernandez_

Today's Date: _2-16-07_

Hotel Hire Date: _9 1992_ (must be employed in hotel minimum of 1 year)

Amount of time in Current Position: _15 years_ (must be in current position minimum of 6 months)

Current Department & Position: _Banquet Waiter_

Department & Position Applied for: _Banquet - Captain Position_

What qualifies you for this position? (please provide specific information) _Responsiveness to Customers_
_Good Service Skills, Abilities, Attitude, etc._

EMPLOYEE SIGNATURE: _____  DATE: _2-16-07_

**II.      To be completed by CURRENT DEPARTMENT HEAD**

| | |
|---|---|
| Has the employee been employed at The Pierre for at least one (1) year? | Yes ✓  No____ |
| Has the employee been in his/her position for a minimum of six (6) months? | Yes ✓  No____ |
| Has the employee received a disciplinary action in the last three (3) months? | Yes____  No ✓ |
| Do you consider the employee eligible for a transfer based on their current performance? | Yes ✓  No____ |

(If employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)

Recommended for an interview:                                    Yes ✓  No____

Comments: (please provide specific information) _____

CURRENT DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _C. Palmore_ DATE: _2/20/07_

CURRENT DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

**III.     To be completed by HUMAN RESOURCES**

Comments: _14 years 5 months_

~~R~~  FEB 2 1 2007

HR APPROVAL: Yes ✓ No___ SIGNATURE: _Stephen C_ DATE: _2/23/07_

Human Resources Department

**IV.     To be completed by RECEIVING DEPARTMENT HEAD**

Comments: (please provide specific information) _____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

**V.      Final Approvals**

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

Offered Position: Yes_____ No_____

    (If **YES**) Date Offered:_____ By Whom:_____ Start Date:_____

    (If **NO**) Decision explained to candidate: Date:_____ By Whom:_____

        What planned goals were discussed with employee? _____
        _____

*Current as of 11/29/2006*

**D0199**

**Internal Transfer Request**

## I.    To be completed by EMPLOYEE

Name: _LUKOSE KOSHY_

Today's Date: _01-03-07_

Hotel Hire Date: _10-17-1987_    *(must be employed in hotel minimum of 1 year)*

Amount of time in Current Position: _19 YRS + 2 MONTHS_    *(must be in current position minimum of 6 months)*

Current Department & Position: _SAME AS ABOVE_

Department & Position Applied for: _BANQUET CAPTAIN_

What qualifies you for this position? *(please provide specific information)* _3 YRS AT THE CLARIDGES HOTEL IN_
_INDIA AS AN ASST CAPTAIN, 15 YRS AT THE WALDORF ASTORIA HOTEL, 19 YRS + 2 MON_
_AT THE PIERRE. WE NEED TO IMPROVE THE CAPTAIN JOBS. AS I SHARED_

EMPLOYEE SIGNATURE: _Luk Koshy_    DATE: _01-3-07_    _WITH THE DEPT HEA_

## II.    To be completed by CURRENT DEPARTMENT HEAD

Has the employee been employed at The Pierre for at least one (1) year?    Yes ✓  No____

Has the employee been in his/her position for a minimum of six (6) months?    Yes ✓  No____

Has the employee received a disciplinary action in the last three (3) months?    Yes____  No ✓

Do you consider the employee eligible for a transfer based on their current performance?    Yes ✓  No____

*(if employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview:    Yes ✓  No____

Comments: *(please provide specific information)* _____

_____

CURRENT DEPT. HEAD APPROVAL: Yes ✓ No__  SIGNATURE: _C. Edmund_ DATE: _3/1/07_

CURRENT DIV. HEAD APPROVAL:  Yes__ No__  SIGNATURE: _____  DATE: ____

## III.   To be completed by HUMAN RESOURCES

Comments: _____ _19 years 4 months_ _____

_____

HR APPROVAL: Yes ✓ No__  SIGNATURE: _Abraham_    DATE: _3/5/07_

## IV.    To be completed by RECEIVING DEPARTMENT HEAD

Comments: *(please provide specific information)* _____

_____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__  SIGNATURE: ____  DATE: ____

## V.    Final Approvals

RECEIVING DIV. HEAD APPROVAL: Yes__ No__  SIGNATURE: _____  DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__  SIGNATURE: _____  DATE: _____

Offered Position: Yes_____ No_____

    (If YES) Date Offered: _____  By Whom: _____  Start Date: _____

    (If NO)  Decision explained to candidate: Date: _____  By Whom: _____

        What planned goals were discussed with employee? _____

_____

*Current as of 2/21/2007*

**D0205**

## Internal Transfer Request

### I.    To be completed by EMPLOYEE

Name: _Roy Frankis_

Today's Date: _3-1-2007_

Hotel Hire Date: _3-1-1999_    *(must be employed in hotel minimum of 1 year)*

Amount of time in Current Position: _1 Year_    *(must be in current position minimum of 6 months)*

Current Department & Position: _Banquite waiter A List_

Department & Position Applied for: _Banquite Captain_

What qualifies you for this position? *(please provide specific information)* _Leadership Skills_

EMPLOYEE SIGNATURE: _Frankis_    DATE: _3-1-2007_

### II.    To be completed by CURRENT DEPARTMENT HEAD

| | |
|---|---|
| Has the employee been employed at The Pierre for at least one (1) year? | Yes ✓  No____ |
| Has the employee been in his/her position for a minimum of six (6) months? | Yes ✓  No____ |
| Has the employee received a disciplinary action in the last three (3) months? | Yes____  No ✓ |
| Do you consider the employee eligible for a transfer based on their current performance? | Yes ✓  No____ |

*(if employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview:    Yes ✓  No____

Comments: *(please provide specific information)* _____

CURRENT DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _C. Estrueta_ DATE: _3/1/07_

CURRENT DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

### III.    To be completed by HUMAN RESOURCES

Comments: _____

HR APPROVAL: Yes__ No__ SIGNATURE: _Alloh_ DATE: _3/5/07_

### IV.    To be completed by RECEIVING DEPARTMENT HEAD

Comments: *(please provide specific information)* _____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

### V.    Final Approvals

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

Offered Position: Yes____ No____

(If **YES**) Date Offered: _____ By Whom: _____ Start Date: _____

(If **NO**) Decision explained to candidate: Date: _____ By Whom: _____

What planned goals were discussed with employee? _____

*Current as of 2/21/2007*

## Internal Transfer Request

### I.    To be completed by EMPLOYEE

Name: *George Mackenzie*

Today's Date: *2-14-07*

Hotel Hire Date: *1-23-95*                    (must be employed in hotel minimum of 1 year)

Amount of time in Current Position: *12 yrs*    (must be in current position minimum of 6 months)

Current Department & Position: *Banquets - server*

Department & Position Applied for: *Banquets - Bar Captain*

What qualifies you for this position? *(please provide specific information)* *I'm skilled in expediting every aspect for this position such as delivering early linens for housemen & florist, bartenders supplies, coordinating times with stewarding & kitchen Depts.*

EMPLOYEE SIGNATURE: _____    DATE: *2-14-07*    *(see bottom)*

### II.    To be completed by CURRENT DEPARTMENT HEAD

Has the employee been employed at The Pierre for at least one (1) year?    Yes ✓  No ____

Has the employee been in his/her position for a minimum of six (6) months?    Yes ✓  No ____

Has the employee received a disciplinary action in the last three (3) months?    Yes ____  No ✓

Do you consider the employee eligible for a transfer based on their current performance?    Yes ✓  No ____

*(if employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview:    Yes ✓  No ____

Comments: *(please provide specific information)* _____

CURRENT DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: *C. Edmi*  DATE: *2/26/07*

CURRENT DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____    DATE: _____

### III.    To be completed by HUMAN RESOURCES

~~RECEIVED~~

Comments: *12 years, 1 disc on 5/21/06  disc in 2005 and 2006 nominated for EOM in Jan 2006*

FEB 2 1 2007

Human Resources Department

HR APPROVAL: ~~Yes~~ No  SIGNATURE: *A. Mohomed*    DATE: *2/22/07*

### IV.    To be completed by RECEIVING DEPARTMENT HEAD

Comments: *(please provide specific information)* _____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____    DATE: _____

### V.    Final Approvals

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____    DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__ SIGNATURE: _____    DATE: _____

Offered Position: Yes____ No____

(If **YES**) Date Offered: _____ By Whom: _____ Start Date: _____

(If **NO**) Decision explained to candidate: Date: _____ By Whom: _____

What planned goals were discussed with employee? _____

_____

_____

*also helping servers with immediate tasks.*

# GEORGE MACKENZIE

408 Eric Lane
Northvale, NJ 07647
(201)660-8437 Cell. (201)394-4492
geomack408@optonline.net

**Objective:** Banquet Captain position within a large hotel's banquet facility.

## HIGHLIGHTS OF QUALIFICATIONS

- Excellent organizational abilities
- Great staff motivator
- Strong management skills under deadline pressure
- Talented problem-solver
- Skilled in creating rapport with clients
- Self-starter

**Certifications:**
- Hospitality Management Diploma- Overall scope of modern hotels' operations.
- Food & Beverage Operation
- French Service Captain/Sommelier
- Culinary Arts
- Meat Cutting & Merchandising
- Stewarding
- Front Office Procedures

## RELEVANT EXPERIENCE

**Management**
- Supervise wait staff of 20 during day and evening shifts.
- Hire and train new employees.
- Coordinate schedules for all workers

**Inventory Control**
- Manage food and restaurant supply inventory
- Order supplies as needed
- Negotiate contracts and special orders with suppliers

**Customer Service**
- Assist individual and corporate clients with party and banquet planning
- Direct all activities during events
- Coordinate banquet room set-up and break-down

## EMPLOYMENT HISTORY

| 1995 - Present | Banquet Server | The Pierre Hotel |
| 1990 - 1995 | Banquet Server & | The Mark Hotel |
| | Room Service Server | |
| 1989 – 1995 | Banquet Server | The Carlyle Hotel |
| 1986 – 1990 | Banquet Server | The Westbury Hotel |
| 1983 – 1986 | Assistant Manager | Essex House-Nikko Hotels |

## EDUCATION

Career Blazers- Paramus, NJ

    Microsoft Word, Excel, Power Point Certification 12/00

New York University-Midtown Campus

    Hospitality Management Diploma 5/85

The Sommelier Society of America-New York, NY

    Wine Captain Certification 12/84

New York Hotel and Motel Trades Council and Hotel Association: Industry

Training Program Certified 5/84

**References available upon request.**

## Anisa Mohamed-Cotrina

**From:** Tim Marwitz
**Sent:** Thursday, February 22, 2007 2:03 PM
**To:** Group-NYP-Banquet; Group-NYP-Human Resources

To Whom it may concern,

I am writing this recommendation on behalf of George Mackenzie.

I have known George for 7 Years and consider him to be a very gentile man.

In the work place, he sets an example to others by providing excellent service to our customers and always tries to accommodate the guest as best he can.

More importantly, George's pleasant smile and personality are what sets him apart from the others.

I have no doubt that George would make an excellent candidate in the "Captain's" position.

Tim Marwitz
Sous Chef
Fifth Avenue at 61st Street
New York, NY 10021
Tel: (212) 838-8000
Fax: (212) 940-8444
tim.marwitz@tajhotels.com
*The Leading Hotels of the World*



### Internal Transfer Request

| I. | To be completed by EMPLOYEE |
|---|---|

Name: _JORGE OMAR GARCIA-MONTON_

Today's Date: _Feb. 15, 07_

Hotel Hire Date: _10 / 87_ _(must be employed in hotel minimum of 1 year)_

Amount of time in Current Position: _20 YRS_ _(must be in current position minimum of 6 months)_

Current Department & Position: _BANQUET WAITER_

Department & Position Applied for: _BANQUET CAPT._

What qualifies you for this position? *(please provide specific information)* _FOOD & BEV. EXPERIENCE_
_INTERPERSONAL SKILLS (COMMUNICATIONS - FOR ROLL-EMPLOYEES -_
_MANAGEMENT - CAPTAIN EMPLOYEES, etc.), as well experience in OFFICE_

EMPLOYEE SIGNATURE: _[signature]_ DATE: _2/13/07_

| II. | To be completed by CURRENT DEPARTMENT HEAD |
|---|---|

Has the employee been employed at The Pierre for at least one (1) year? Yes _✓_ No____

Has the employee been in his/her position for a minimum of six (6) months? Yes _✓_ No____

Has the employee received a disciplinary action in the last three (3) months? Yes____ No _✓_

Do you consider the employee eligible for a transfer based on their current performance? Yes _✓_ No____
*(if employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview? Yes _✓_ No____

Comments: *(please provide specific information)* _____

_____

CURRENT DEPT. HEAD APPROVAL: Yes _✓_ No__ SIGNATURE: _C. Elmood_ DATE: _2/16/07_

CURRENT DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

| III. | To be completed by HUMAN RESOURCES |
|---|---|

Comments: _19 years 4 months_

FEB 2 1 2007

HR APPROVAL: Yes _✓_ No__ SIGNATURE: _[signature]_ DATE: _2/23/07_

Human Resources Department

| IV. | To be completed by RECEIVING DEPARTMENT HEAD |
|---|---|

Comments: *(please provide specific information)* _____

_____

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

| V. | Final Approvals |
|---|---|

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

Offered Position: Yes ____ No ____

(If YES) Date Offered: _____ By Whom: _____ Start Date: _____

(If NO) Decision explained to candidate: Date: _____ By Whom: _____

What planned goals were discussed with employee? _____

_____

*Current as of 11/29/2006*

D0229

## Internal Transfer Request

| I. | To be completed by EMPLOYEE |

Name: JUAN A FERNANDEZ

Today's Date: 3/5/07

Hotel Hire Date: 9/21/92    *(must be employed in hotel minimum of 1 year)*

Amount of time in Current Position: _____    *(must be in current position minimum of 6 months)*

Current Department & Position: BANQUET WAITER

Department & Position Applied for: BANQUET CAPTAIN

What qualifies you for this position? *(please provide specific information)*
Because I HAVE EXPERIENCE ALA CARTE, BANQUET AND
I AM HARDWORKING PERSON, AND I MAKE COSTUMER FEEL GREAT.

EMPLOYEE SIGNATURE: Juan A Fernandez    DATE: 3/5/07

| II. | To be completed by CURRENT DEPARTMENT HEAD |

Has the employee been employed at The Pierre for at least one (1) year?    Yes ✓ No ____

Has the employee been in his/her position for a minimum of six (6) months?    Yes ✓ No ____ ?

Has the employee received a disciplinary action in the last three (3) months?    Yes ____ No ____

Do you consider the employee eligible for a transfer based on their current performance?    Yes ✓ No ____

*(If employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*    Yes ____ No ____

Recommended for an interview:

Comments: *(please provide specific information)* _____

CURRENT DEPT. HEAD APPROVAL: Yes ✓ No __ SIGNATURE: _____ DATE: _____

CURRENT DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

| III. | To be completed by HUMAN RESOURCES |

Comments: 14 years

MAR - 5 2007

HR APPROVAL: Yes ✓ No __ SIGNATURE: Michael    DATE: 3/5/07

Human Resources Department

| IV. | To be completed by RECEIVING DEPARTMENT HEAD |

Comments: *(please provide specific information)* _____

RECEIVING DEPT. HEAD APPROVAL: Yes __ No __ SIGNATURE: _____ DATE: _____

| V. | Final Approvals |

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

Offered Position: Yes _____ No _____

(If YES) Date Offered: _____ By Whom: _____ Start Date: _____

(If NO) Decision explained to candidate: Date: _____ By Whom: _____

What planned goals were discussed with employee? _____

**Internal Transfer Request**

**I.     To be completed by EMPLOYEE**

Name: _NUNEZ, HECTOR_

Today's Date: _01-03-07_

Hotel Hire Date: _16-08-1988_     (must be employed in hotel minimum of 1 year)

Amount of time in Current Position: _4 years_     (must be in current position minimum of 6 months)

Current Department & Position: _Banquet "A" 1st waiter_

Department & Position Applied for: _Banquet captain_

What qualifies you for this position? *(please provide specific information)* _Ability to interact with guests and willingness to go above and beyond any duties._

EMPLOYEE SIGNATURE: _[signature]_     DATE: _01-03-07_

**II.     To be completed by CURRENT DEPARTMENT HEAD**

| | Yes | No |
|---|---|---|
| Has the employee been employed at The Pierre for at least one (1) year? | ✓ | |
| Has the employee been in his/her position for a minimum of six (6) months? | ✓ | |
| Has the employee received a disciplinary action in the last three (3) months? | | ✓ |
| Do you consider the employee eligible for a transfer based on their current performance? | ✓ | |

*(If employee has received disciplinary action in the last 3 months, they are not eligible for transfer at this time)*

Recommended for an interview:     Yes ✓  No ____

Comments: *(please provide specific information)* _[illegible]_

_Part time Capt Position_     _Willl 3/26/07_

CURRENT DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _C. Edison_ DATE: _8/1/07_

CURRENT DIV. HEAD APPROVAL:  Yes__ No__ SIGNATURE: _____ DATE: _____

**III.     To be completed by HUMAN RESOURCES**

Comments: _____

HR APPROVAL: Yes / No ____ SIGNATURE: _[signature]_     DATE: _3/5/07_

**IV.     To be completed by RECEIVING DEPARTMENT HEAD**

Comments: *(please provide specific information)* _Part time position for Captain_
_Very well [illegible] and capable for the position._

RECEIVING DEPT. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

**V.     Final Approvals**     _Part Time Position on hold_

RECEIVING DIV. HEAD APPROVAL: Yes__ No__ SIGNATURE: _____ DATE: _____

HOTEL MANAGER/GM APPROVAL: Yes ✓ No__ SIGNATURE: _____ DATE: _5/3/__

Offered Position: Yes_____ No_____

(If YES) Date Offered:_____ By Whom:_____ Start Date:_____

(If NO)  Decision explained to candidate: Date:_____ By Whom:_____

What planned goals were discussed with employee? _____

*Current as of 2/21/2007*

Human Resource
Pierre Hotel

2/21/07

Mr. Ivone Mancine

All the applicants who signed bellow for the opening as Captain at the Banquet Department are very much concern and preoccupied for the manner or method of doing it.

We the group who applied for this promotion are employees for the last 21 years, very loyal, consistant, good hard workers individual with very good records; proved by the annual Survey done by the head of our Department

Our fear are that the selection for the next Captain will be done in a very particular way: Selecting an individual who is working with us for 3 years; also is a member of the Board of Director at our Union: this reflect that management is giving a preferance, creating a conflict of interest.

The reason of "being" or Raison d'etre" of our Union is to insure fair treatment to everybody and everyone to its general membership. and not to attempt to impose a member of the Board of Directors of the Union "our Union" for a prized position.

At this at the expense of a significant sized group of more
~~~~ ~~~~ 'plain Union workers.

**D0250**

*Mario Pando*

**The Pierre Hotel**
**Department Head** – *Interview Guide*
*Non-Management Candidate*    *applying for Both Positions*

| **Functional Competencies** |
| :--- |
| **Banquet Captain** |

1) Walk me through a wedding, as specific as possible.
- Include set up, service, and closing
  Timing with: courses, band, toasts, etc.

1a) If you had a 4-hour Dinner/Dance, how would you time it?

2) What is the difference between the setup of a dessert buffet vs. a dinner buffet?

3) What do you consider are the greatest differences between a Server and Captain?

4) Tell me the steps of Banquet Service, beginning with set up?
- Glassware, silverware, china
- Service style

5) Tell me about a time when you had to solve a problem between the Kitchen Chef and the waiters.
- What happened?
- What did you do?
- What was the outcome?

6) Tell me about a time when you enhanced a guest's experience during an event.
- What was the situation or request?
- How did you approach? (step by step)
- How often does this happen?

7) Describe a time when you had to deal with an angry/upset guest or coworker?
- How did you handle it?
- What did you learn from the situation?

Notes:
- First Reception is one hr, Reception is part of service.
Supervise service of food
Make sure no complaints, no complaints allowed in service.
Accidents happen, offer guest wine or champagne to make her feel happy again.

3) Capt has to help personally & know how to give orders to get the job done in a proper manner. & last Talk to the Servers in the proper way treat w/ respect but explain what has to be done.

5) First of all if problem w/ Chef & waters, Customers are first. Discuss problem after Service, No time for discussion. Serving Service is priority. In middle of service not discuss Problem, let this go, the water only

**D0158**

7. If guest is angry or upset for any reason if server was Rude. Apologise to listen Calm him down then after Service talk w/ Employee about what happend with the guest. If has to be reprimanded have to do it according to the level of the problem & discuss w/ HR on my Boss.

- Promotes service bringing guests back -
  Deliver to just what a sales person - Sales

*The Pierre Hotel*
## Department Head – *Interview Guide*
## Non-Management Candidate

| **Functional Competencies** |
| --- |
| Strengths |
| Weaknesses   ~~Not enough~~ didn't fully answer Question. No specific examples. |

### Overall Rating (circle one)

☐ Not Acceptable          ☑ Satisfactory          ☐ Strength

Griselda
Bielinski

*The Pierre Hotel*
**Department Head** - *Interview Guide*
*Non-Management Candidate* Both Full Time & Part Time

| Functional Competencies |
| --- |
| *Banquet Captain* |

1) Walk me through a wedding, as specific as possible.
   - Include set up, service, and closing
   - Timing with: courses, band, toasts, etc.

1a) If you had a 4-hour Dinner/Dance, how would you time it?

2) What is the difference between the setup of a dessert buffet vs. a dinner buffet?

3) What do you consider are the greatest differences between a Server and Captain?

4) Tell me the steps of Banquet Service, beginning with set up?
   - Glassware, silverware, china
   - Service style

5) Tell me about a time when you had to solve a problem between the Kitchen Chef and the waiters.
   - What happened?
   - What did you do?
   - What was the outcome?

6) Tell me about a time when you enhanced a guest's experience during an event.
   - What was the situation or request?
   - How did you approach? (step by step)
   - How often does this happen?

7) Describe a time when you had to deal with an angry/upset guest or coworker?
   - How did you handle it?
   - What did you learn from the situation?

**Notes**

(#1) Come 2 or 3 hours early, get all the details. First look to see how it set up. Check for notes from Boss. After program work for waiters. To more or less get them what they need to do a good job. Do the diagram, schedule all things, try to help waiters. Every function is different and need to have it perfect. After they are in A Peck w/ lady in charge & make it like your own Business. Try to solve problems. Make it easy to carry 4 hours of service.

(#3) 2 glasses — waiters have resp. of what to do well — Wait for signal & listen & take order from Capt & H.W. Interpret what is needed & convey to waiters - to help the waiters to finish & do a good job. No Confrontation ... Be a leader & not ...

D0146

respect superiors have to have respect of waterfund. Tell this SL to take orders & give help in that respect. Capt. is supervision on top of everything - His is something not there Capt be 24/7.

5) If problem is with the Chef - First talk to Chef Before service get aquentance, take time, plates, service, orders, to work. When waters be in to get on the floor & delivering on time & good condition. Kitchen is one of the Last places & very good

7) First of all the guest is always tense, insecure something will go wrong, You have to be calm & let him know the way is possible. If can't will propose 2 ways to get the problem Resulted. Increase his voice, look at him to calm him down. & with the waiter is the same thing. Calm sit & talk in a Nice way. Don't confront & confront on 1-1 Rest place loose temper, can be a little upset. Men or women, have to fuse all to calm him down to talk with him.

*The Pierre Hotel*
**Department Head** - *Interview Guide*
*Non-Management Candidate*

| Functional Competencies |
| --- |
| **Strengths** |
| **Weaknesses** _Division of texas. — Not to detailed — answer_ |

**Overall Rating (circle one)**

☐ Not Acceptable      ☑ Satisfactory      ☐ Strength

*- Scrub Captain already Bafa Jose Pérez*
*& Scrub Capt. Elias Hernandez*
*Go G*
*Mora*
*?*

*The Pierre Hotel*

*Department Head - Interview Guide*

*Non-Management Candidate*

## Functional Competencies

### Banquet Captain

1) Walk me through a wedding, as specific as possible.
   - Include set up, service, and closing
   - Timing with: courses, band, toasts, etc.

1a) If you had a 4-hour Dinner/Dance, how would you time it?

2) What is the difference between the setup of a dessert buffet vs. a dinner buffet?

3) What do you consider are the greatest differences between a Server and Captain?

4) Tell me the steps of Banquet Service, beginning with set up?
   - Glassware, silverware, china
   - Service style

5) Tell me about a time when you had to solve a problem between the Kitchen Chef and the waiters.
   - What happened?
   - What did you do?
   - What was the outcome?

6) Tell me about a time when you enhanced a guest's experience during an event.
   - What was the situation or request?
   - How did you approach? (step by step)
   - How often does this happen?

7) Describe a time when you had to deal with an angry/upset guest or coworker?
   - How did you handle it?
   - What did you learn from the situation?

Notes

(1) I would come 2 hours early as a Capt then make sure we know menu, thing w/ BEO have a meeting w/ [illegible] & mgrs to review whole night's agenda. Go to the host or party coordinator (no matter who it is, there are always last minute changes & work with the party coord to go through time then do the floor plan & deliver [illegible] throughout the night.

(2) - Servers just follow orders, Captains look @ whole menu, Review the room for uniformity. Capt. has more tasks such as supervising the event smoothly & efficiently - Diagram floor plan & in terms of Reception Room in order make sure everyone is ready for service. Responsibility of taking care of guests & servers while doing room monitor & part of host to make sure, [illegible]

D0167

14

& deliver unparalleled service.

5. Many instances when during party where Chef had requested to do differently our normal fuck up procedure or pace such as only carry 2 or 4 plates @ a time, & Because of the importance of the party or very elaborate presentation it wouldn't stuff. The waiter would say it is not what we normally do. we start telling rest of the staff to be part of team layer to execute the presentation of what the chef not men despite what we normally do. And I have also covered waitstaff we have to the same presentation from what they had @ the tasting.

We're hear to contribute to the highest standard of service of what the hotel & we & our aim is to provide exceptional fine dining experience in a Bienvenue environment. Continue delivery flawless service.

D0168

7). Many instances when guests @ the table which
will complain about the food & service.

First I apologized to the guest & then we
ask what was wrong & we listen to carefully
what took place & if anything we can solve
right away by rectify the problem and go to the
guest & Replace what was wrong see if their
satisfied & if to that or Simultaneous
stated manang or duty. See if
guests was completly satisfied & see if problem
was resolved.

I learned that anytime guest complain it is our
opportunity to get to know guests & when we fix
their problem, Build a special Rapport &
know for sure that the guest will go back knowing
we went out of our way took personal
attention to resolve the problem. They will
refer it to friends about our impeccable
service @ the Pierre Hotel & we will for sure
Build customer loyalty.

*The Pierre Hotel*
### Department Head – *Interview Guide*
### *Non-Management Candidate*

| Functional Competencies |
|---|
| **Strengths** |
| *Gave detailed answers,* |
| |
| **Weaknesses** |
| |
| |

**Overall Rating (circle one)**

☐ Not Acceptable          ☐ Satisfactory          ☑ Strength

D0170

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3             SOUTHERN DISTRICT OF NEW YORK
 4
 5   GRISELDA BIELINSKI and MARIO    )
     PARDO,                          )
 6                                   )
                 Plaintiffs,         )  Case No.
 7                                   )  07 Civ. 11636
             vs.                     )  (SS)
 8                                   )
     HOTEL PIERRE,                   )
 9                                   )
                 Defendant.          )
10                                   )
     -------------------------------)
11
12
13       DEPOSITION OF CHRISTOPHER EDMONDS
14              New York, New York
15            Tuesday, April 29, 2008
16
17
18
19
20
21                                    COPY
22
23
24   Reported by:
     TAMI H. TAKAHASHI, RPR, CSR
25   JOB NO. 202786A
```

Page 55

```
 1                    Edmonds
 2       A.   I don't know.  I don't know.
 3       Q.   The -- if we go to Exhibit 12, your
 4  strengths and weaknesses on Ms. Bielinski --
 5       A.   Um-hum.
 6       Q.   -- as a result of your interview,
 7  you didn't note any strengths?
 8       A.   Not at the time, I didn't write
 9  anything down.
10       Q.   And then weaknesses, what -- you
11  wrote "division of sexes" -- and I can't read
12  what that --
13       A.   "Not too detailed an answer."
14       Q.   Meaning what?
15       A.   That I felt that her -- her answers
16  weren't specific enough to what I asked and
17  weren't really what I was looking for.
18       Q.   And -- but you rated her
19  satisfactory?
20       A.   Yes.
21       Q.   And what did you -- on the bottom,
22  could you read that?
23       A.   It says, "Scrub captain."  She
24  mentioned that she was a scrub captain
25  before -- already before Jack Racic was
```

**Christopher Edmonds**

Page 56

```
 1                       Edmonds
 2  captain.  Said there was four scrub captains.
 3  Eddie Hernandez, herself, Moran, and she
 4  couldn't recall who the last person was.
 5            This took place years ago prior to
 6  myself working there.  There was always six
 7  captains.  I don't recall a time when there
 8  were four scrub captains.  And this was one
 9  thing that I looked into and I asked about.
10      Q.   What's a scrub captain?
11      A.   Still never got a decisive answer
12  on it.  I don't know if it was when someone
13  was out or they needed more people.  Because,
14  at the time, there was only one head waiter,
15  no assistant head waiters or assistant
16  managers.  There was only gentleman named
17  Guenther Noeth, who was the head waiter at
18  the time.  And there was no one else.
19            So, there was just the six
20  captains.  I don't know if it was -- like I
21  said, I never got a decisive answer on it.  I
22  don't know if it was because they were
23  shorthanded during the parties, because there
24  were several parties going on at one time.
25      Q.   All right.  So, you rated -- you
```

**Christopher Edmonds**

Page 57

```
 1                    Edmonds
 2 rated Ms. Bielinski satisfactory?
 3      A.    Yes.
 4      Q.    Now, if we look at Mr. Pardo's
 5 form, his evaluation --
 6      A.    Um-hum.
 7      Q.    -- you didn't note any strengths.
 8 Why was that?
 9      A.    Don't recall.  Don't recall.
10      Q.    And the weaknesses?
11      A.    He didn't give enough specific
12 examples.  There wasn't -- not enough, didn't
13 fully answer the question.  No specific
14 examples.
15      Q.    All right.  And then on Mr. Laut's
16 form, you rated him as having given
17 detailed -- his strengths, gave detailed
18 answers.
19      A.    Yes.
20      Q.    And no weaknesses?
21      A.    No.
22      Q.    And your overall rating was
23 strength?
24      A.    Yes.
25      Q.    All right.  Now, the ratings that
```

Page 58

1                              Edmonds

2 **you gave to people, did you rate anyone else**

3 **as satisfactory?**

4        A.    I'd have to look over the reviews.

5 There are a couple of others, yes.

6        Q.    **Do you know who -- did you make**

7 **recommendation in any other format?  Did you**

8 **make -- did you do a report?  Did you do a**

9 **summary?  Did you do a -- did you pass on**

10 **your feelings about these candidates to**

11 **anyone else, or did you just fill out these**

12 **forms and give them back to the Human**

13 **Resources?**

14        A.    No.   I spoke -- I spoke about it

15 with Bill Spinner and then with -- with --

16 with Mr. Kuenstle.  Also, I also spoke --

17 after each -- after each one, I -- I -- after

18 writing everything down and having

19 Ms. Mohamed there, I definitely gave my

20 opinion to what I thought for each candidates

21 who applied for it.

22        Q.    **Do you know how people moved on to**

23 **the next level of interview?**

24        A.    Yeah.   I spoke with Bill about who

25 the -- who the -- with Bill Spinner who I

**Christopher Edmonds**

Page 59

```
 1                    Edmonds
 2 would recommend as our six potential
 3 candidates as captain.
 4     Q.   So, you gave him six names?
 5     A.   I believe it was six.
 6     Q.   And did you hand him your -- did
 7 you say anything more than, here's the six I
 8 recommend?  Did you have a discussion
 9 specifically about each of the six of what
10 you thought the strengths and weaknesses
11 were?
12     A.   It did get discussed.
13     Q.   And did you say anything to him
14 about whether or not Ms. Bielinski or
15 Mr. Pardo had weaknesses or strengths --
16 excuse me.
17     A.   I --
18     Q.   You noted weaknesses on the form.
19     A.   I don't recall if I spoke
20 specifically of what I wrote down.  I
21 definitely told -- spoke with Bill about what
22 I thought -- how their answers were and who I
23 felt -- who I felt had the best answers, who
24 I felt had the best -- who I thought might
25 have been the best appropriate of the -- you
```

Page 60

1                      Edmonds

2 know, of the 12, of the 6, that I thought was

3 the most appropriate for -- that had

4 potential to be a captain, yes.

5      Q.    Well, given that your -- your --

6 the only one you rated as -- where you

7 checked the box "strength" was Mr. Laut --

8      A.    Yes.

9      Q.    -- did you tell Mr. Spinner that it

10 was your recommendation that Mr. Laut get the

11 job at the time?

12      A.    I believe so.  Well, not -- not

13 that -- not that he get the job after that,

14 no.  That he was the strongest person.  He

15 answered the questions for -- for me, he

16 answered the questions in great detail.  He

17 answered the questions exactly what I was

18 asking for in each one, was able to give

19 examples, specific examples.

20      Q.    Did you find in the course of your

21 interviews of Ms. Bielinski or Mr. Pardo that

22 there was some language difficulties in terms

23 of, like, understanding what the question

24 was?

25      A.    No.

<u>Interview:</u>

- Overview of candidate history and experience.

- Knowledge of captains position.

- Ways in which the captains can improve banquet service & guests' experience.

**Jay Laut**

- Server experience - very good
- Very knowledgeable in current position
- Well spoken; clear & precise communication skills
- Thorough knowledge with the process of booking the staff
- Thorough knowledge of the union / management issues
- Served as delegate
- Understands function of captain position and added value to the customer
- Made constructive suggestions as to new ways a captain can contribute to the improvement of the service
- Discussed specific ways we could schedule staff to increase service at cocktail receptions

Department Head recommends interview with General Manager or Hotel Manager:

___x_yes    ____no

D0164

<u>Interview:</u>

- Overview of candidate history and experience.

- Knowledge of captains position.

- Ways in which the captains can improve banquet service & guests' experience.


**Mario Pardo**
- Server experience - very good
- Very knowledgeable in current position
- Well spoken; very general statements- not detailed
- Thorough knowledge with the process of booking the staff
- Thorough knowledge of the union / management issues
- Served as delegate
- Did not suggest any ways in which he would be able to improve crew's service as a captain; was not specific
- Felt there is tension between management and current captains


Department Head recommends interview with General Manager or Hotel Manager:


____x__yes _____ no

**D0154**

Interview:

- Overview of candidate history and experience.

- Knowledge of captains position.

- Ways in which the captains can improve banquet service & guests' experience.


**Griselda Bielinski**
- Server experience - very good
- Very knowledgeable in current position
- Well spoken; communication style is not always detailed, can be difficult to follow
- Familiar with the process of booking the staff
- Little interaction with management / union issues
- Never served as delegate
- Familiar with captains interaction with customer
- Did not suggest any ways in which she would be able to improve crew's service as a captain


Department Head recommends interview with General Manager or Hotel Manager:


__x_yes    ____ no

D0140

Page 1

```
 1
 2            UNITED STATES DISTRICT COURT
 3           SOUTHERN DISTRICT OF NEW YORK
 4
 5   GRISELDA BIELINSKI and MARIO   )
     PARDO,                        )
 6                                 )
              Plaintiffs,      Case No.
 7                             07 Civ. 11636
         vs.                   (SS)
 8                                 )
     HOTEL PIERRE,                 )
 9                                 )
              Defendant.           )
10                                 )
     -------------------------------)
11
12
13       DEPOSITION OF WILLIAM SPINNER
14           New York, New York
15          Tuesday, April 29, 2008
16
17
18
19
20
21
22                    COPY
23
24  Reported by:
    TAMI H. TAKAHASHI, RPR, CSR
25  JOB NO. 202786A
```

**William Spinner**

Page 22

```
 1                    Spinner
 2 people to be interviewed by the general
 3 manager?
 4      A.   Yes.
 5      Q.   Now, what was it about
 6 Ms. Bielinski that you felt made her one of
 7 the top three candidates to be interviewed by
 8 the general manager?
 9      A.   Well, I had -- I mean, looking at
10 all -- I think I interviewed six.  So,
11 looking at all six, I felt, of the ones that
12 I picked to pass up, she had, by comparison
13 to the other people, communication skills,
14 she had history of service at the Pierre that
15 was good.  She was familiar with -- I mean,
16 it's right here.  The booking -- the booking
17 process.  Those are the three key points that
18 led me to pass her up.
19      Q.   Now, it says here, "Did not suggest
20 any ways in which she would be able to
21 improve crew's service as a captain."
22      A.   Right.
23      Q.   Did you ask her?
24      A.   Yes.
25      Q.   And she said she couldn't think of
```

**William Spinner**

Page 23

1                          Spinner

2 anything?

3      A.   No.  She came up with an answer,

4 but it didn't answer my question.

5      Q.   **What did she say?**

6      A.    I don't remember the specifics, but

7 it kind of rambled on about how she would

8 handle -- or how she would interact with

9 clients or the contact of an event.

10      Q.   **And what kind of question were you**

11 **looking for -- answer were you looking for?**

12      A.    I was looking for something very

13 specific that someone taking this job would

14 come up with that would have a direct impact

15 on improving the service.

16      Q.   **And you said she spoke about**

17 **interactions with clients?**

18      A.    With her interactions with clients.

19 It would be like, you know, that they would

20 be positive.

21      Q.   **So, she was discussing why she**

22 **would be a good candidate for the job?**

23      A.    Yes.

24      Q.   **As opposed to changes in what --**

25 **improving the crew service?**

**William Spinner**

Page 24

1                    Spinner

2      A.   Yes.

3      Q.   Did you repeat the question to --

4  did you get any sense of maybe she didn't

5  follow what you were trying to get at?

6      A.   I didn't get that sense, and I

7  don't think I repeated the question.

8      Q.   All right.  Now, but you passed her

9  on as one of the top three, anyway?

10      A.   Yes.

11      Q.   With Mr. Pardo, you asked him that

12  question?

13      A.   Yes.

14      Q.   And he also didn't suggest a way in

15  which he would be able to improve the crew's

16  service?

17      A.   No, nothing specific.  I don't

18  recall his answer.

19      Q.   Did he -- you don't recall his

20  answer?

21      A.   Not now, no.

22      Q.   Did he answer your question?

23      A.   I'm sure he did.

24      Q.   All right.  And then Mr. Laut, your

25  notes are on the third page of the exhibit.

**William Spinner**

<div align="right">Page 25</div>

```
 1                    Spinner
 2      A.    Right.
 3      Q.    Did you know how long he had been a
 4 server on the A list?
 5      A.    Yes.  Well, I knew how long he had
 6 been a server.  He became a server after --
 7 at some point after I left, but I did look at
 8 his resume.
 9      Q.    What -- you wrote here, "Made
10 constructive suggestions as to new ways a
11 captain can contribute to the improvement of
12 the service."  What suggestions did he make?
13      A.    Well, he was the only one of the
14 six that I interviewed that had a very
15 specific answer to my question, which was the
16 process and way the -- in the booking of the
17 servers during a cocktail reception before a
18 meal, like a dinner or a wedding, he
19 suggested that when there's -- you know,
20 the -- if there's a given number of people
21 that are booked for a cocktail reception and
22 they initially are assigned usually three
23 different things to do, serving beverages,
24 serving food and clearing off, that aside
25 from -- rather than those three -- you know,
```

**ESQUIRE DEPOSITION SERVICES, LLC**
**1-800-944-9454**

Page 26

1                        Spinner

2 the list of the servers to be fixed the whole

3 time through, that they would be deployed a

4 little bit more effectively in that one-hour

5 period where there would be more people

6 passing initially food and beverage and less

7 people clearing off, under the assumption

8 that there would be less dirty plates.  And

9 later we would have more people clearing off

10 and fewer people passing food and beverage.

11      **Q.    So, the last two bullet points were**

12 **really --**

13      A.    Yeah.

14      **Q.    -- related to each other?**

15      A.    That's related to the third

16 question, right.

17      **Q.    All right.  Now, you made these**

18 **notes.  And what did you do with your notes?**

19      A.    I eventually -- I gave them to

20 Human Resources.  I don't know if I e-mailed

21 them or gave them hard copies.  I don't

22 recall.

23      **Q.    And you recommended three people to**

24 **move to the next level of discussion?**

25      A.    Yes.

**William Spinner**

Page 29

```
 1                    Spinner
 2 relative positions to each other?
 3      A.   Heiko Kuenstle is the general
 4 manager.  And Christian Hommerich is the
 5 hotel manager, basically the number two.
 6      Q.   The hotel manager is number one?
 7      A.   Number one.
 8      Q.   Do you know why Hommerich
 9 interviewed Bielinski and Pardo and
10 Mr. Kuenstle interviewed Mr. Laut?
11      A.   As far as I knew, it was a
12 scheduling issue.
13      Q.   Do you -- so, you were involved in
14 the actual determination of who to hire?
15      A.   Yes.
16      Q.   Was Ms. Mancini involved?
17      A.   She was a part of one of the
18 meetings, but more from a procedural point as
19 far as -- that was my interpretation.
20      Q.   What -- can you just tell us what
21 -- sort of in summary, what reason -- what
22 the reasoning was for why Mr. Laut was chosen
23 instead of Ms. Pardo -- Mr. Pardo and
24 Ms. Bielinski?
25      A.   Sure.  Based on my assessment of
```

**William Spinner**

Page 30

1                    Spinner

2 Chris's interviews and based on my

3 interviews, I felt Jay Laut had the most

4 leadership skills.  He had -- he was the most

5 articulate.  He was able to hear my question

6 and give an answer -- specific an answer,

7 which I think is very similar to the way our

8 customers ask a question.  They don't ask it

9 twice.  They want an answer the first time.

10         So, I felt his very direct, very

11 specific, very clear answer made him by far

12 the best candidate.

13     Q.   **Did everybody have a similar**

14 **opinion?**

15     A.   Yes, definitely.

16     Q.   **When you were speaking to**

17 **Ms. Bielinski, did you feel there were any**

18 **barriers in terms of language in**

19 **understanding in terms of her grasp of**

20 **English?**

21     A.   Of the language, no.

22     Q.   **Yes.  How about Mr. Pardo?**

23     A.   No.

24     Q.   **The discussion about who to hire**

25 **that -- the four -- eventually, the final**



*The Pierre*
New York

A Taj Hotel

Griselda Bielinski                    3/30/7

@ Pierre: 21 yrs.    Banquet Waitress

schedule: flexible

kind of function: receptions, bus. lunches
     coffee breaks, social: weddings,
     christenings, private parties.

favorite: all of them: very diff.
     diff. music; weddings are
     very special; it is nice to see
     people being so happy + thanking me.

your reg. day when scheduled to work a
     wedding:
     either: reception, tables, closing
reception: make tables look pretty
     very clean + perfect.
     We are on stage & we have to
     perform: being kind; make guests
     feel that they are very important.
     then we serve: we work as a
     team: 10 covers per table:
     give rate; offer anything:
     "My name is Gigi: I will attend to
     you all night! can I offer
     any thing to drink...

D0149



**The Pierre**
*New York*

A Taj Hotel

Shift @ Captain: – Supervising waiters
make sure standards are follow,
tell waiters to make this look
nicer : for the guest.
meet guests expectation
– I will come early & be aware
of complete function
– who is the person in charge
– to brief waiters: set-up,
glasses; make sure they have all
materials they need.
– meet with rep. of party / guest:
offer drinks;
– review program for the day
– make changes if required
– be as gracious & polite as
possible
– attend to all changes that guest
is request; if I can resolve,
I will do it; if not: speak to
manager
– make sure that guests when
they leave are satisfied; thank
them for being @ T.P: best place
in NY.
– then finish paper work in office
– start review of event;
document everything.

**D0150**



The Pierre
New York

A Taj Hotel

— go back to room: ensure that
waiters did the right job
cleaning up.

An

what if guest complains about food:
— if guest does not like meat:
offer alternative dish: chicken, fish

Before the party: I speak to Chef:
what are the vegetables;
what fish do you have;
guests may have diff. wishes;
I want to be prepared & know
~~the~~ the menu;

attend to individual diet requests

Captain is link bet. guest & workers:
represent managers; find
solutions in case of a complaint

I know job from A to Z: you
can test me any time

D0151



### The Pierre
#### New York
A Taj Hotel

4/4/7

Mario Pardo

Current: Bqt waiter A list.
 schedule: flex. accordg to function
 Can be long hours.

diff function: weddg, mtg, Jar R travl's

weddg event: get here 1 hour ahead to
 prepare silverware, glasses; everythg to
 be neat, clean.
 then set up: tables, buffet,
Banquet: to show example table
Captain
 each waiter to set up 3 tables, +
 3 to clean
Captains: to check set up (8, 10 or 12
ppls)
 usually rush 1 hour reception,
 pass canepés ...

like: best: converse with people;
 make guests feel like home;
 See diff menus; taste of food

Why do you want to move on:
 I am getting old & when I separate
 I can take care better of my famly.
 I do not love to carry weight.

D0161



**The Pierre**
*New York*

A Taj Hotel

look for retirement in 6 more years.

Customer Service:
- we had weekly & room was warm; we turned AC on & black dirt came down; I helped cleaning.
- always do my best; Customer, especially hostess has to be satisfied.

Question: no

D0162

Page 1

```
 1
 2            UNITED STATES DISTRICT COURT
 3          SOUTHERN DISTRICT OF NEW YORK
 4
 5   GRISELDA BIELINSKI and MARIO    )
     PARDO,                          )
 6                                   )
              Plaintiffs,        Case No.
 7                               07 Civ. 11636
          vs.                    (SS)
 8                                   )
     HOTEL PIERRE,                   )
 9                                   )
              Defendant.             )
10                                   )
     ------------------------------)
11
12
13      DEPOSITION OF CHRISTIAN HOMMERICH
14            New York, New York
15          Tuesday, April 29, 2008
16
17
18
19
20
21                              COPY
22
23
24   Reported by:
     TAMI H. TAKAHASHI, RPR, CSR
25   JOB NO. 202786B
```

**Christian Hommerich**

1                    Hommerich

2 so --

3      A.    Um-hum.

4      Q.    **This is in your handwriting?**

5      A.    Yes.

6      Q.    **Both of these?**

7      A.    Yes.

8      Q.    **And these reflect notes you took**

9 **during an interview of Ms. Bielinski and**

10 **Mr. Pardo; is that correct?**

11      A.    That's correct.

12      Q.    **Now, how did it come to be that you**

13 **came to speak to Ms. Bielinski and Mr. Pardo?**

14      A.    Let's first talk about

15 Ms. Bielinski.  I -- this was a candidate

16 that was scheduled to meet with the general

17 manager for the interview.  And I'm not quite

18 exactly -- I'm not sure exactly about the

19 timing, I think it was in the morning when he

20 all of a sudden was called to attend a

21 meeting with our home office.  They had been

22 visiting from India.

23           And since he wasn't available and

24 Ms. Bielinski was already there.

25           THE WITNESS:  I know you had been

**Christian Hommerich**

Page 15

1                    Hommerich

2        waiting in the executive office sitting

3        there.  We couldn't reschedule for you

4        to meet with Mr. Kuenstle.  I was asked

5        to perform the interview instead.

6 BY MR. SCHWARTZ:

7        Q.    Who asked you, Ms. Mancini?  You

8 said "I was asked to," so who asked you?

9        A.    It was either her or Mr. Kuenstle.

10 I don't remember.

11       Q.    And were you aware of what had gone

12 on in the process -- the interview process

13 prior to that date?  Had you been kept

14 abreast of what was going on?

15       A.    No.

16       Q.    Did you have anything in front of

17 you, any documents in front of you?

18       A.    Nothing.

19       Q.    You didn't have any personnel

20 records in front of you?

21       A.    No.

22       Q.    Did you understand whether

23 Ms. Bielinski was the finalist or one of

24 several finalists?

25       A.    (Witness shook head.)

**Christian Hommerich**

Page 16

1                    Hommerich

2      Q.    You didn't know?

3      A.    Nothing.

4      Q.    When you -- by the time you saw

5  her, did you know?

6      A.    No.  I was called for the

7  interview, and I said okay, I'll interview

8  her.

9      Q.    And what did you try to accomplish

10  in the course of your interview?  What were

11  you trying to do?

12      A.    I just tried to get information on

13  what you do at an interview, generally asking

14  about, trying to find out if this is the

15  right person for the position, meaning is the

16  person qualified to do the job, what had she

17  been -- accomplished during her years of

18  service or with the hotel.

19              Everything we -- I usually go

20  really into customer service, because that's

21  really what differentiates the Pierre from

22  other hotels.  And I'm trying to assess if

23  this is the candidate that truly understands

24  customer service and -- and excellent --

25  providing excellent service.

**Christian Hommerich**

Page 17

1                          Hommerich

2      Q.    All right.  And what was your

3  impression of Ms. Bielinski when you

4  interviewed her?

5      A.    I read this again.  Obviously, I

6  prepared myself.  And I -- what I had said at

7  that point was that I felt that Ms. Bielinski

8  was very passionate about the job.  She --

9  she was -- from what I could see, I had never

10 met her before, I -- I thought she -- she

11 proved well or she demonstrated to me in her

12 verbal communication that she knows what

13 exactly she has to do as banquet waitress,

14 how she delivers service.

15            Customer service was very important

16 to her.  She was very eager to -- for the

17 position.  Very passionate about the job and

18 about the hotel.  Really proud of the hotel,

19 I should say.

20     Q.    Did she appear to be qualified to

21 you?

22     A.    I -- at that point, I -- after the

23 conversation -- after the interview, I said I

24 would pass her on.

25     Q.    Pass her on to Mr. Kuenstle?

**Christian Hommerich**

Page 18

1                      Hommerich

2      A.    To be considered for the position.

3      Q.    So, you would approve her hiring

4  for the position?

5      A.    I did.

6      Q.    And who did you communicate that

7  to?

8      A.    To Mr. Kuenstle and to Ms. Mancini.

9      Q.    Okay.  When you said she couldn't

10  be rescheduled to see Mr. Kuenstle, why was

11  that?  Was there a time pressure?

12      A.    There seemed to have been.  I

13  didn't know any of the details, but there

14  seemed to have been a time pressure, but I

15  didn't understand.

16            So, I -- she was there, and I -- it

17  was just communicated Mr. Kuenstle is called

18  away, Ms. Bielinski is waiting here.  I

19  didn't know if it may have been that this was

20  already scheduled and postponed.  So, maybe

21  for that reason, it was said that you have to

22  interview this candidate at this point.

23      Q.    Did you, at any time, learn what

24  the time pressure was?

25      A.    No.

Page 19

1                      Hommerich

2       Q.   Okay.  Now, the -- Exhibit 17, the

3  one that's for Mr. Pardo --

4       A.   Um-hum.

5       Q.   -- how did it come to pass that you

6  interviewed him?

7       A.   I really don't remember.  Again,

8  I -- it is -- it -- the practice of the hotel

9  was always it's either Mr. Kuenstle or myself

10 who will have to see a candidate.  He -- I

11 know specifically that this candidate,

12 Ms. Bielinski, was scheduled for

13 Mr. Kuenstle.

14           And because of unexpected

15 scheduling conflicts, he wasn't available.

16 So, therefore, I conducted the interview.

17           How this came about, I'm not -- I

18 don't remember whether I was -- I was

19 scheduled -- I think I was scheduled.

20      Q.   Okay.  And what was your impression

21 of Mr. Pardo after your interview?

22      A.   I thought that, quite frankly,

23 Mr. Pardo was -- I would have not passed him

24 on.  He did not demonstrate that he was

25 really -- what he really wanted the job for

**Christian Hommerich**

Page 20

1                         Hommerich

2 the sake of delivering great service.  I did

3 not get the sense of his feeling very proud

4 of what he did.

5               He was very -- the reason why he

6 wanted the job he told me was because he was

7 getting old and he didn't want to carry any

8 weight anymore, and he wanted to retire

9 anyway.  And it was all about more money.

10              And he did not really convince

11 me -- when I asked him, what can you do to

12 really provide customer service, he didn't

13 come up with any examples.  He said once

14 there was an air-conditioning problem and

15 black stuff came out and he helped cleaning

16 that up.  And that was his understanding of

17 delivering excellent customer service and

18 that simply was not enough.

19      Q.    Okay.  And did you also put that to

20 Mr. Kuenstle?

21      A.    Yes.

22      Q.    Now, after the -- these two

23 interviews --

24      A.    Yes.

25      Q.    -- did you have any further role in

Griselda Bialinski
60 W 57th ST
New York. NY 10019

March 16th, 2007

Mr. PETER WARD
PRESIDENT OF LOCAL 6

Dear Mr. Word:

IN regard to the application that I have made for the open position of Capitan at the Banquet Department at the Pierre Hotel which is presently being decided; I am bringing to your attention and knowlege to the comments and remarks made by captain of the Banquet Department who are themselve known as "the ruling click of the Department" (Union Insiders).

" You are too old to be named Captain"

" You are nothing more than a Coffee Shop waitress"

" GiGi will never be a Captain at the Pierre Hotel"

" Over my dead body"

" You have plenty of opportunity in 2 or 3 YEARS"

" Don't do anything "

" We are really the ones who make the decisions or promotions at this department"

" All of us, with the exemption of one, we have been Delegates and that will remain; so, GiGi you have no chances to become one"

I am also enclosing with the present note photocopies of correspondence that I have surrendered at the Department of Human Resources. All THIS is related to my application for the before mentioned posit

with thanks, I am,

Respectfully yours,
Griselda Bielinski

Griselda Bielinski
60 W 57th St.
New York, N.Y. 10019

March 17th, 2007

Mr. Peter Ward
President of Local 6 Union.

Dear Mr. Ward:

Today we have been informed from Mr Jay Laut himself, who is a
Chop Steward of your and my Union (Local 6) that he has been
promoted to Captain at the Banquet Department of the Pierre Hotel.
Position for which I and many other workers with over 21 years of
work as waiters and waitress in the same Department have also applie

This gentlemen Mr Jay Laut has only been working as a waiter in A
List for just 3 years.–

He is obviously equipped with numerous, long and very powerful
tentacles.

Is he at least as efficient for this job as most of the other
applicants with over 21 years of service in the Banquet Department.

If so, what makes him a better choise for this promotion than th
rest of applicants with over 21 years of service at the Banquet
Department? Is this what is called nepotism in America?

Mr Ward, we the group of unsuccessful applicants have been
wronged by the promotion of Mr Jay Laut.

Our Union has not been a removed or remote bystander in this
matter.

Excluding you Mr. Ward, we have lost trust and confidence in all
the Officers of our Union, this is the reason of why we are directl
appealing to you to please have the kindness of redressing this
mischivous and wrong act and decision.

At our Union you are our only hope.

Please don't allow us to seek remedy elsewhere.–

sincerely yours,    Griselda Bielinski

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   Case No. 07 CV 11636
    --------------------------------x
3   GRISELDA BIELINSKI and
    MARIO PARDO,
4
                    Plaintiffs,
5
           -against-
6
    HOTEL PIERRE,
7
                    Defendant.
8   --------------------------------x

9

10          DEPOSITION of GRISELDA BIELINSKI, taken by

11   the Defendant at the offices of Kane Kessler,

12   P.C., 1350 Avenue of the Americas, New York, New

13   York  10019, on April 28, 2008, at 10:15 o'clock

14   a.m., before Catherine M. Donahue, a Certified

15   Court Reporter and Notary Public within and for

16   the State of New York.

17

18

19

20              ROSENBERG AND ASSOCIATES

21        Certified Court Reporters & Videographers

22                  575 Madison Avenue

23              New York, New York  10022

24      Phone: (212) 868-1936   Fax: (212) 868-1967

25            www.rosenbergandassociates.com

                    Griselda Bielinski - April 28, 2008

 1

 2         A.    Right.

 3         Q.    You allege in this letter certain

 4    comments that were made to or about you.  I want

 5    to go through them.

 6              You say that these were comments

 7    made by captains in the banquet department.  The

 8    first comment is you are too old to be made a

 9    captain.  Who made that statement to you?

10         A.    Jack Racic.

11         Q.    When did he make that statement?

12         A.    All the time.

13         Q.    When did he start making that

14    comment?

15         A.    Since he knew that I make the

16    presentation for the promotion.

17         Q.    So since you made the application?

18         A.    Made the application.

19         Q.    Which would have been like late

20    February or so?

21         A.    Yes.

22         Q.    And Jack is how old, did you say he

23    was --

24         A.    Sixty-five.

25         Q.    So he's older than you?

```
 1              Griselda Bielinski - April 28, 2008
 2         A.    Right.
 3         Q.    And you're saying he told you you
 4   were too old?
 5         A.    He said a lot of things about me.
 6         Q.    What else did he say about you?
 7               By the way, did he say it directly
 8   to you?
 9         A.    Yes.
10         Q.    Okay.
11         A.    And to everybody.
12         Q.    To other servers, as well?
13         A.    Yes.
14         Q.    What else did he say?
15         A.    Well, he said I don't qualify to be
16   a captain because I'm a coffee shop waitress,
17   I'm too old, I'm not listening to him.
18         Q.    What did he mean by you're not
19   listening to him?
20         A.    Because he makes a lot of jokes,
21   very bad jokes, very bad jokes within the group
22   and I don't pay attention.  I should go and
23   report him, but I never did.
24         Q.    Are you saying he makes jokes that
25   are inappropriate?
```

Griselda Bielinski - April 28, 2008

A.    Yes.

Q.    But you never reported it to management?

A.    No.

Q.    When he said you are not paying attention to him, he was referring to listening to his jokes?

A.    Yes.

Q.    Did he ever criticize your performance on the floor as a server?

A.    He criticized everything.

Q.    With respect to you or everybody?

A.    Everybody.

Q.    Did he mean that you weren't paying attention to his directions during a banquet?

A.    No.

Q.    So he was just talking about the jokes?

A.    He tried to diminish me in any way possible.  All the time.  It is a common knowledge between us.

Q.    Did you complain to anybody about that?

A.    No, only between us.

Griselda Bielinski - April 28, 2008

1

2      Q.    Okay.

3            The next statement is, "GiGi will

4      never be a captain at the Pierre Hotel."  Who

5      made that statement?

6      A.    Jack Racic.

7      Q.    What about "Over my dead body"?

8      A.    Yes.

9      Q.    The same one?

10     A.    The same one.

11     Q.    "You have plenty of opportunity in

12     two or three years."

13     A.    Right, when I leave.

14     Q.    So he was saying you should wait a

15     few years?

16     A.    Yes.

17     Q.    But he was also saying you were too

18     old.  Does that make sense?

19     A.    No, he doesn't make sense.  It is

20     because he doesn't want me to be a captain with

21     him.  He doesn't like to work with women.

22     Q.    Did he say he didn't like to work

23     with women?

24     A.    No.  He said yes in the front.

25     Q.    I'm sorry.  Say that again.

Griselda Bielinski - April 28, 2008

     A.   In front of us he said all no, I'll
work with anybody.

     Q.   So he did not say I don't like
working with women?

     A.   No.

     Q.   But you believe he does not like
working with women?

     A.   Yes.  Sure.

     Q.   Why do you believe that?

     A.   Because it is the truth.

     Q.   Are there other women servers?

     A.   Only one more.  We have two women.

     Q.   Who is the other woman?

     A.   Linda Alfaro.

     Q.   Is she A or B list?

     A.   A list.

     Q.   She didn't apply for the captain's
position, did she?

     A.   No.

     Q.   Did Jack say these same things to
her?

     A.   In the past.

     Q.   In the past?

     A.   Yes.

Griselda Bielinski - April 28, 2008

2      A.    No.

3      Q.    So it was all the things that Jack

4 had said?

5      A.    Yes.   Another captain, Teddy

6 Fernandez, who always encouraged me to be a

7 captain.   Off the record.

8      Q.    Do you know if Teddy had any

9 influence in the decision?

10      A.    No, I don't know.

11      Q.    Do you know if Jack had more

12 influence than Teddy?

13      A.    I don't know.

14      Q.    So, as I understand, we have Jack

15 who made all these negative statements about

16 you?

17      A.    Yes.

18      Q.    And Joe said nothing?

19      A.    No.

20      Q.    And Teddy encouraged you?

21      A.    Right.

22      Q.    Do you know what the role of the

23 captains was in making this selection?

24      A.    I have to point out, too, since you

25 make that kind of question, that one day I was

Griselda Bielinski - April 28, 2008

1

2 working and I was called by Mr. Nick Koutsakos,

3 a captain, and he asked me, "GiGi, how do you

4 like to work as a captain?  You won't have to

5 set up.  You wouldn't have to close.  You

6 wouldn't work half the time for a part time with

7 me."

8           I said, "Oh, yes, of course, I like

9 that."  Very encouraging.  So I said, "Okay."

10           "Let me see what can I do."

11           He left and I never hear from him

12 again.

13     Q.    When was this?

14     A.    That was in the time when the

15 selection was going on.

16     Q.    So Nick came up to you and was

17 encouraging you?

18     A.    Yes, because he's a part time, he's

19 the only part-time captain because he had

20 problems with the heart; so he chose to have a

21 part-time job.

22     Q.    So he was suggesting to you that you

23 might have the other half of his job?

24     A.    Right, with him.  So you work with

25 me, you're going to make half the money, but

Griselda Bielinski - April 28, 2008

you're going to work with me and work less.   And
I said yes.

Q.   And was it your belief that Nick had
the authority to select you to work as the other
half?

A.   No, he didn't have the authority,
but he went to the office and I imagine that he
spoke with Chris Edmunds and the other captains.

Q.   So, as I understand, the only
captain who spoke out against you was Jack?

A.   Yes.

Q.   I think there are two more captains
we haven't talked about.   I don't know their
names.

Eddie Lezcano, did he say anything?

A.   No.

Q.   And there's one more?

A.   Teddy Fernandez.

Q.   You mentioned Teddy.   You said he
encouraged you?

A.   Yes.

Q.   Nick apparently encouraged you, as
well.   Joe didn't say anything?

A.   No.

Griselda Bielinski - April 28, 2008

1

2      Q.    Jack was very negative.

3      A.    Yes.

4      Q.    And then we're missing one person

5  and I don't know who it is.  I don't have a

6  list.  It is okay.  Don't worry about it.

7            Other than Jack telling you we make

8  the decisions, do you have any other reason to

9  understand that the captains had the authority

10  to make the choice as to who was going to be

11  captain?

12      A.    They don't have the authority to.

13  But the head waiters who chose somebody who will

14  work with them.

15      Q.    Now, I am assuming that Nick doesn't

16  have a problem working with a woman since he

17  encouraged you?

18      A.    No, to the contrary.

19      Q.    And Teddy didn't have a problem?

20      A.    No.

21      Q.    You never had a conversation with

22  Joe about any of this?

23      A.    No.

24      Q.    Or with Eddie?

25      A.    No.

Griselda Bielinski - April 28, 2008

1

2      Q.    So the only person you believe that

3  had a problem with women was Jack?

4      A.    Yes.

5      Q.    Now, do you believe that the

6  captains as a group were opposed to your being

7  selected?

8      A.    Yes, definitely.

9      Q.    Aside from Jack, do you have any

10  reason to believe that the reason for their

11  opposition was your gender?

12      A.    I think so.

13      Q.    Why do you think so?

14      A.    Because after a while, the captain

15  said that Jack said that Mr. Nick Koutsakos is

16  going to work full time now.

17      Q.    Jack said that?

18      A.    Yes.

19      Q.    Why did that lead you to believe

20  that the decision was based on gender?

21      A.    Because, I'm the only woman.  They

22  never selected any woman in my field for an

23  application that I did.

24      Q.    Are you saying that you believe that

25  their opposition to your selection was based on

Griselda Bielinski - April 28, 2008

Q.    Do those notes look accurate to you?

A.    It looks like, yes.

Q.    Now, were there any questions that Chris asked you that you thought were discriminatory in any way?

A.    No.

Q.    Were there any questions he asked you that you thought were inappropriate for selection of a banquet captain?

A.    No.

Q.    Did he say anything, has he ever said anything to you that would indicate that he was making his selection based on gender?

A.    No.

Q.    Is there anything that Chris has ever said to you that would indicate that he was making his decision based on age?

A.    No.

Q.    Now, you were interviewed by someone else after you were interviewed by Mr. Edmunds, correct?

A.    Yes.

Q.    Do you know if all 12 applicants got a second interview?

```
 1              Griselda Bielinski - April 28, 2008
 2         Q.    No?
 3         A.    No.
 4         Q.    Are you clear in your memory, you're
 5    absolutely certain that he didn't ask you how
 6    the captain could improve banquet service,
 7    you're certain about that?
 8         A.    No, not how to improve it, because I
 9    have in my mind a lot of improvement for the
10    department.
11         Q.    As you're sitting here today, you're
12    certain he did not ask you that question during
13    the interview?
14         A.    No.  Did you find anything written
15    on that?
16         Q.    How long have you known Bill
17    Spinner?  How long have you worked with Bill
18    Spinner?
19         A.    The interview?
20         Q.    No, no.
21              How long have you known him?
22         A.    Fifteen years, probably.
23         Q.    Has he ever said anything to you
24    that would indicate that he was making his
25    selection based on gender?
```

                    Griselda Bielinski - April 28, 2008

1

2          A.    No, he's very correct.

3          Q.    Do you find him to be honest?

4          A.    Yes, he is a gentleman.

5                    MS. STOLL:   Let's mark this as

6             Exhibit E.

7                            (Summary of Mr. Spinner's

8                    interview was marked as Defendant's

9                    Exhibit E for identification, as of

10                   this date.)

11   BY MS. STOLL:

12         Q.    Ms. Bielinski, I'm going to show you

13   a document that's been marked as Defendant's

14   Exhibit E, and I'll tell you that it is a

15   summary of Mr. Spinner's notes of his interview

16   with you.

17                If you look at the top, there are

18   three questions essentially, three areas of

19   inquiry.   The last one is, "Suggest ways to

20   improve banquet service."

21                You're saying he didn't ask you that

22   question?

23         A.    Well, the question here says,

24   "Improve banquet service and guest experience."

25   The question is how much experience I would have

1              Griselda Bielinski - April 28, 2008
2                          (Discussion off the record.)
3                   MS. STOLL:  Back on the record.
4                   Let's mark these notes as
5              Exhibit F and you can tell me if there's
6              anything inaccurate.
7                          (Notes was marked as
8              Defendant's Exhibit F for
9              identification, as of this date.)
10    BY MS. STOLL:
11         Q.    While we were off the record you
12    said the notes are hard to read but they're more
13    or less what you recollect, is that correct?
14         A.    Right.
15         Q.    Have you ever met Mr. Hommerich
16    before?
17         A.    No.
18               Excuse me.  Excuse me.  Yes.
19         Q.    He was fairly new at the hotel at
20    that time.  You did meet him before?
21         A.    We met at parties when he's
22    representing some guests as a high manager in
23    the hotels; so, we know him, yes.
24         Q.    During his interview, did he
25    indicate in any way that he was discriminating

```
 1              Griselda Bielinski - April 28, 2008
 2    against women?
 3         A.   No.
 4         Q.   Or older employees?
 5         A.   No.
 6         Q.   Now, do you know who participated in
 7    the final decision about who was going to be
 8    selected?
 9         A.   No.
10         Q.   By the way, I'm going to ask you
11    about Heiko Kuenstel.
12              Do you know Mr. Kuenstel?
13         A.   Yes.
14         Q.   Has he ever said anything to you
15    that was discriminatory about women?
16         A.   No.
17         Q.   Has he ever said anything to you
18    that was discriminatory about your age?
19         A.   No.
20         Q.   I think I asked you this question.
21              Do you know who made the final
22    decision?
23         A.   No.
24         Q.   Do you know if Jay was also
25    interviewed three times?
```

Griselda Bielinski - April 28, 2008

A.    Oh, Jay.  I thought you said Jack.

Q.    Jay.

A.    For two reasons, because he is -- he was a delegate and he's on the -- on the board of the union.

Q.    Those are the two reasons?

A.    I'm not a delegate.  I don't take any positions in the union and I'm just a woman trying to be a captain with the qualifications.

Q.    You believe those are the reasons that the captains, in your opinion, preferred Jay over the other candidates?

A.    Yes.

Q.    Do you think that having the experience of being a delegate is a criterion for being a captain?

A.    No.

Q.    Why not?

A.    Because there's no difference.  The job as a waiter or waitress is following orders from captains.  And if the captain is the director of the orchestra, the waitress is the composer.  They have to know everything.  So, practically, I have to know everything that a

1          Griselda Bielinski - April 28, 2008
2    selected and he has the qualification, too.
3          Q.   Did either of them say that they
4    thought they had been discriminated against?
5          A.   No, nobody used that word.
6          Q.   Including you?
7          A.   Including me.
8          Q.   You say in your complaint, and I'll
9    show it to you in paragraph 14, that
10   "Plaintiffs," and that's referring to you and
11   Mr. Pardo, "Plaintiffs were far more qualified
12   for the position than Laut."  If you want to
13   take a look, paragraph 14.
14               Do you see that?
15         A.   Yes.
16         Q.   Why do you believe that you're more
17   qualified than Mr. Laut?
18         A.   Because I'm working for 22 years and
19   I know the whole operation of the banquet
20   department.
21         Q.   Do you know how long Mr. Laut has
22   worked as a banquet server?
23         A.   At the Pierre?
24         Q.   No, altogether.  Let's start with at
25   The Pierre.

Griselda Bielinski - April 28, 2008

1

2    A.    At The Pierre he has two years or

3    three years in A list, and another two or three

4    list on the B list.

5    Q.    Actually, isn't it true that he was

6    hired in 1998?

7    A.    According to your record, yes.

8    Q.    But you don't believe that?

9    A.    Yes.

10   Q.    So he's been a banquet server at The

11   pierre for ten years?

12   A.    Yes.

13   Q.    Do you know where he worked before

14   he came to The Pierre?

15   A.    No.

16   Q.    Do you know what jobs he held before

17   he came to The Pierre?

18   A.    Yes.

19   Q.    What was that?

20   A.    He was a waiter at the Regal Hotel.

21   Q.    As a banquet waiter?

22   A.    Yes.

23   Q.    Do you know --

24   A.    He was working B list over there.

25   Q.    Do you know how long he had been a

1              Griselda Bielinski - April 28, 2008
2     banquet server over there?
3          A.   No.
4          Q.   How long has Mario been working as a
5     banquet server?
6          A.   Probably more than 25 years.
7          Q.   More than 25 years.
8               Does he have more seniority than
9     you --
10                   MS. STOLL:  Off the record for a
11              phone call.
12                        (Discussion off the record.)
13                   MS. STOLL:  Back on the record.
14                   Could you read back my last
15              question?
16                        (Record read.)
17          A.   Yes.
18          Q.   Is it your belief that seniority is
19     the only qualification for promotion to banquet
20     captain?
21          A.   I think he has acquired a lot of
22     experience working 37 years in the hotel in
23     different departments and that is a good
24     qualification for a promotion.
25          Q.   Do you think he's more qualified

```
 1            Griselda Bielinski - April 28, 2008
 2   than you are?
 3            A.    Than me?
 4            Q.    Yes.  Mario we're talking about.
 5            A.    Honestly?
 6            Q.    Yes.
 7                  What is your opinion?  I won't tell
 8   if you don't want me to.
 9            A.    Equal.
10            Q.    Equal.  That was very diplomatic.
11                  Aside from your greater number of
12   years working at the hotel, was there any other
13   reason why you thought you were more qualified
14   than Jay?
15            A.    Than what?
16            Q.    Jay.
17            A.    Yes.
18            Q.    What were or was that reason or
19   reasons?
20            A.    The way I take care of the guests.
21            Q.    You think you do it better than Jay?
22            A.    Yes.
23            Q.    And why?
24            A.    Because I like to be with people and
25   I'm very friendly.  I have good manners and I
```

```
 1              Griselda Bielinski - April 28, 2008
 2      treat them with very special in every function.
 3              Q.    Do you think that Jay does not?
 4              A.    Well, Jay is more cool.  He's more
 5      direct and probably I make more friendly
 6      thank-you notes at the moment than him, because
 7      in every function the people thanked me very,
 8      very much for the attention, for the service.
 9              Q.    Do you know if they thanked Jay?
10              A.    I don't know.  Because I don't look
11      what he's doing.  I don't check on that.
12              Q.    You know that you are good and that
13      you're friendly?
14              A.    Very good.
15              Q.    You don't really know if Jay is also
16      friendly and gets lots of thank-you notes, too?
17              A.    He is a very quiet.
18              Q.    He's quiet?
19              A.    Yes.
20              Q.    Is there any other reason why you
21      think you're more qualified than Jay?
22              A.    I'm a woman.
23              Q.    You think you're more qualified
24      because you're a woman?
25              A.    Yes.  The hotel needs a woman as a
```

Griselda Bielinski - April 28, 2008

1
2    captain.
3        Q.    Is it your belief that you should
4    have gotten the job because you are a woman?
5        A.    I believe so.
6        Q.    And why is that?  Why do you believe
7    that?
8        A.    Mrs. Stoll, since the last 15 years
9    have an opening for a promotion, Diddie Calvez,
10   the general manager, select me as a captain and
11   I didn't get it.  Jack was --
12       Q.    When was that?
13       A.    1990, when Jack became a captain.
14   That's why they put out for a scrub captain.
15       Q.    What is a scrub?
16       A.    Scrub is part-time waiters,
17   part-time captain, whatever function.
18       Q.    What is a scrap?
19       A.    Scrub.
20             MR. SCHWARTZ:  Scrub.
21       A.    Scrub captain.
22       Q.    You say Diddie Calvez selected you
23   as a captain in 1993?
24       A.    Yes.
25       Q.    What happened, why didn't you get

```
 1            Griselda Bielinski - April 28, 2008
 2    given extra consideration because you have
 3    applied four times for the position?
 4            A.   As a woman?
 5            Q.   My first question is:  Should you
 6    get extra consideration because you have applied
 7    four times?
 8            A.   As a woman, yes.
 9            Q.   But a man who applied four times
10    shouldn't be given extra consideration?
11            A.   Yes.  But, first, they have to be
12    equal --
13            Q.   Yes.
14            A.   -- to woman and man for the same
15    position with the qualification.
16            Q.   Assuming, for example, Mr. Hernandez
17    was equally qualified and let's say he has
18    applied for the same openings that you have, do
19    you think you should get the job before him
20    because you are a woman?
21            A.   Yes.
22            Q.   Do you think you were denied the job
23    because you are a woman?
24            A.   No idea why they denied me with no
25    explanation.
```

```
 1              Griselda Bielinski - April 28, 2008
 2         Q.    Do you think you were denied the job
 3    because you were, I believe you were 60 years
 4    old last year?
 5         A.    Yes.
 6         Q.    Do you believe you were denied the
 7    job because of your age?
 8         A.    I don't know.   I don't know the
 9    reason.
10         Q.    Well, in your complaint you allege
11    that you were denied the job --
12              MR. SCHWARTZ:   She wants to know
13          what you believe.
14         Q.    -- because of gender and your age.
15              Do you believe that you were denied
16    the job because of your gender?
17         A.    Yes.
18         Q.    And what's the basis of your belief?
19         A.    You asked me that already.   I'm a
20    woman.
21         Q.    Is it because you're a woman and Jay
22    isn't, is that why you believe that you were
23    discriminated against on the basis of gender?
24         A.    Yes.
25         Q.    And what's the basis of your belief
```

1             Griselda Bielinski - April 28, 2008

2    that you were denied the job because of your

3    age?

4             A.    Yes.

5             Q.    Yes, what is the basis of your

6    belief?

7                   MR. SCHWARTZ:  Describe why.

8             A.    Because I'm too old.

9             Q.    Who said you're too old?

10            A.    Jack said.

11            Q.    Anybody else?

12            A.    No.

13            Q.    Is there any other reason you

14   believe you were denied the job because of your

15   age?

16            A.    No.

17            Q.    Is there any other reason?  You gave

18   me a couple reasons why you thought you were

19   more qualified for the job than Jay and one of

20   them was the length of your experience.  One of

21   them was that you were very friendly and helpful

22   to the guests.

23                  Was there any other reason that you

24   believe you were more qualified than Jay?

25                  MR. SCHWARTZ:  Can you repeat the

1    Griselda Bielinski - April 28, 2008

2    question?

3                    (Record read.)

4             MR. SCHWARTZ:  Explain all of

5    your reasons.

6             THE WITNESS:  Okay.

7    A.    I know how to handle the captain's

8    job inside a hotel in the banquet department.  I

9    know how to handle the function on breakfast,

10    lunch or dinner.  I know how to organize the

11    help that I would need for that function.

12             That's all.

13    Q.    Do you believe that Jay does not

14    know how to handle the captain's job?

15    A.    No, he does.

16    Q.    Do you believe that he doesn't know

17    how to handle all the functions, breakfast,

18    lunch and dinner?

19    A.    He does.

20    Q.    And do you believe he doesn't know

21    how to organize the help he needs?

22    A.    No, he does.

23    Q.    Do you think you can do it better?

24    A.    Yes.

25    Q.    Why do you think you can do it

```
 1              Griselda Bielinski - April 28, 2008
 2    better?
 3         A.    Because of my personality.
 4         Q.    What is it about -- I'm sorry to be
 5    picky, but what is it about your personality
 6    that makes you think you can do it better?
 7         A.    I'm very open.  I'm very
 8    inquisitive.  I'm very curious.  I'm very
 9    detailed, in particular, the functions.  I'm
10    aware of what the function should need and the
11    guests need.
12         Q.    And you think Jay's personality is
13    not as suitable for the position of captain?
14         A.    No, it's not.  But I think that I
15    would do a little better in general.
16         Q.    Would it be fair to say, I don't
17    want to put words in your mouth, but it would be
18    fair to say that you think Jay was qualified but
19    you think you would be slightly more qualified?
20         A.    Yes.
21         Q.    Again, you don't know how he
22    answered the questions in the interviews?
23         A.    No.
24         Q.    Nobody discussed that with you?
25         A.    No.
```

Griselda Bielinski - April 28, 2008

2  qualified than him?

3       A.   Yes.

4            MR. SCHWARTZ:   I have no further

5       questions.

6

7  FURTHER EXAMINATION BY MS. STOLL:

8       Q.   Again, you believe not that Mr. Laut

9  wasn't qualified, but that your personality was

10 more suitable because you're friendlier or

11 you're friendly and you know how to handle the

12 function and the job, is that correct?

13      A.   Yes.

14      Q.   And there's nothing else specific

15 that you can tell me about why you believe

16 you're more qualified?

17      A.   I have experience.  I have age.  I

18 have the sex.  I have the skill.

19      Q.   Do you think that Mr. Laut is

20 unskilled in the job?

21      A.   I don't judge him.  I'm talking

22 about myself.

23      Q.   The only reason I'm asking you about

24 Jay is because you were comparing yourself to

25 him and you said you were more qualified.  So, I

Griselda Bielinski - April 28, 2008

1

2    wanted to know why you thought your skills

3    better qualified you for the job than Jay?

4                    MS. STOLL:  Off the record.

5                    (Discussion off the record.)

6                    MS. STOLL:  Back on the record.

7    BY MS. STOLL:

8         Q.   Why should you get the job?

9         A.   I know all the points.  I know all

10   the segments or the function of the whole

11   process of being a captain.

12        Q.   I think you also testified that, as

13   far as you know, Jay also does, is that correct,

14   that he also knows everything, he knows the

15   whole process of being a captain?

16        A.   I didn't test him; so, I don't know.

17   You said that.

18        Q.   You don't know whether he does or

19   not?

20        A.   Exactly.

21        Q.   All right.

22        A.   I know my qualifications.

23        Q.   Is there anything that you have

24   noticed about him that you think is a negative

25   about his being selected as captain, something

COPY

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   Case No. 07 CV 11636
    -------------------------------x
3   GRISELDA BIELINSKI and
    MARIO PARDO,
4
                Plaintiffs,
5
            -against-
6
    HOTEL PIERRE,
7
                Defendant.
8   -------------------------------x

9

10          DEPOSITION of MARIO PARDO, taken by the

11  Defendant at the offices of Kane Kessler, P.C.,

12  1350 Avenue of the Americas, New York, New York

13  10019, on April 28, 2008, at 2:35 o'clock p.m.,

14  before Catherine M. Donahue, a Certified Court

15  Reporter and Notary Public within and for the

16  State of New York.

17

18

19

20          ROSENBERG AND ASSOCIATES

21      Certified Court Reporters & Videographers

22              575 Madison Avenue

23          New York, New York  10022

24  Phone: (212) 868-1936    Fax: (212) 868-1967

25          www.rosenbergandassociates.com

```
 1                  Mario Pardo - April 28, 2008
 2   retire."
 3                  That's what I told him.
 4        Q.    Did you say that you can take better
 5   care of your family, that's why you wanted the
 6   job?
 7        A.    Yes, to promote that, yes, that's
 8   true.
 9        Q.    And because you didn't have to carry
10   so much weight as a captain?
11        A.    That, too.  Like supervisor, you
12   know, yes, that's true, I told him that.
13        Q.    Did you think that was the best
14   answer to that question in an interview?
15        A.    No.  I was sincere.  I was sincere.
16   I wasn't trying to like -- I was sincere.
17        Q.    Are you telling me that
18   Mr. Hommerich asked you how old you were?
19        A.    I think it was, like he said, what
20   are you planning to do.  And I told him, I said,
21   how old are you, and I told him how old I was.
22        Q.    Did he ask you how old you were?
23        A.    No, I told him.
24        Q.    Okay.
25                  By the way, when you said you would
```

1                    Mario Pardo - April 28, 2008

2    be better able to take care of your family, what

3    did you mean by that?

4            A.    I mean to be better.  You know,

5    better living, because I would make a lot more

6    money; so, it is obvious.

7            Q.    You wanted the job because it would

8    pay more?

9            A.    It would pay more.

10           Q.    During the interviews with Bill

11   Spinner and Mr. Hommerich, did either of them

12   say anything negative about your age?

13           A.    No.  No.

14           Q.    And nobody said you're too old for

15   this job?

16           A.    No.  No.

17           Q.    Did any of them ask any questions

18   that you thought were discriminatory on the

19   basis of age?

20           A.    On the basis of age?  I don't

21   remember.

22           Q.    Did anybody else in management

23   during this entire process say anything to you

24   about your age?

25           A.    No.  No.

```
 1              Mario Pardo - April 28, 2008
 2         Q.   Has anyone in management ever said
 3    anything to you about your age?
 4         A.   You're talking about management,
 5    right?
 6         Q.   Management, yes.
 7         A.   No.
 8              MR. SCHWARTZ:  I'm just going to
 9          object to the form.  The question is
10          whether banquet captains are management
11          or not.
12              MS. STOLL:  Excluding captains.
13    BY MS. STOLL:
14         Q.   Excluding captains.  Just for the
15    purpose of this question, now I'm going to ask
16    you that question about captains.
17              Did any of the captains say anything
18    negative about your age with respect to your
19    taking the captain's position?
20         A.   They would say you have many years
21    to carry dishes.  You have more years to carry
22    dishes.
23         Q.   Did you take that as a negative
24    comment about your age?
25         A.   I think the way I take it, they say
```

Mario Pardo - April 28, 2008

you have to the carry dishes all your life.
That's the way I take it.

Q.    Was that a comment about your age,
though?

A.    What could it have been?

Q.    Okay.

So, basically, they were still
saying you're still capable of carrying dishes?

A.    I'm capable until 120 years.

Q.    I don't know about that.

Do you believe that the process that
the hotel went through in the interviews that
you went through were fair?

A.    No.

Q.    Why not?

A.    Because when Mr. Laut announced
himself that he was going to become a captain,
he worked for I think one week and he
disappeared for a month.  It was more than 15
days.  They told him to take off.  I don't know
why.

Q.    Let's talk about that day.

Were you at work on March 17?

A.    March 17, that was St. Patrick's

```
 1              Mario Pardo - April 28, 2008
 2   present when he made the announcement?
 3        A.   Management, no.  He was by himself
 4   and the crew of waiters.  No management was
 5   there.
 6        Q.   Did you think it was strange that
 7   none of the management people made the
 8   announcement?
 9        A.   I was the first one to ask him, "Why
10   don't you wait until management announced?  Why,
11   you did this wrong?  It was a surprise.  You
12   have to wait for management to say it."
13             He said, "Oh, no.  It is okay."  He
14   told me like that.
15        Q.   Do you know what they were talking
16   about before they came out of that room?
17        A.   No, I don't know what they were
18   talking about.
19        Q.   In your complaint you and GiGi both
20   allege that Jay is less qualified than you, than
21   you and she.
22        A.   Okay.
23        Q.   Why do you believe that Jay is less
24   qualified?
25        A.   I believe because I have more
```

Mario Pardo - April 28, 2008

1  knowledge than him.  I have been there long

2  enough.  I know the customers by their names.

3  The customers know me.  And I have been a

4  delegate, assistant delegate.  I know how they

5  do the scheduling.  I know how to do the

6  diagrams.  I know the payroll.

7       Q.   Did you think that being a union

8  delegate was one of the criteria for --

9       A.   I think so, because for the past

10 practice, all the delegates became a captain.

11 Jack Salmeiri.  Jack Racic was a delegate.  They

12 became a captain.

13      Q.   Do you think that was an important

14 consideration for management to take into

15 consideration?

16      A.   Management, I think, is how you call

17 this, is pushed to do that.

18      Q.   You think they're pushed to do it?

19      A.   I don't know.  I don't know because

20 there is a pattern.  All the delegates that

21 became delegates became the captain.

22      Q.   You mentioned that you thought that

23 that was one of the qualifications that you had.

24 You had served as assistant delegate?

Mario Pardo - April 28, 2008

1

2    A.   Yes.

3    Q.   Did you think that was a positive in

4    your resume that you had that experience?

5    A.   Yes.  Yes, of course.  Because you

6    know how you can handle problems between

7    management and union members.  Because you have

8    experience if there is conflict, you have to

9    resolve it right there.  That's the right way to

10   do it.

11   Q.   And Jay was a delegate, wasn't he?

12   A.   For one year.

13   Q.   I think it was more than that, but

14   that's okay.

15        Did you think that was an important

16   qualification for him in his favor?

17   A.   I don't see it that way.  I don't

18   see it that way.  He could have been delegate by

19   the peers.  It is different.  I don't know, the

20   waiters are different.  They're different

21   people.  They're there for different -- it is

22   different ways.

23   Q.   Did you think that, that Jay had

24   less knowledge of the job than you did?

25   A.   Less knowledge, definitely.

                    Mario Pardo - April 28, 2008

1

2                    MR. SCHWARTZ:  We don't know.  In

3            the file, the way you gave us the file,

4            it comes before -- it comes right after

5            the first round of interviews.

6                    MS. STOLL:  Okay.

7                    MR. SCHWARTZ:  Okay.

8    BY MS. STOLL:

9            Q.    Do you think that he was interviewed

10   by Heiko before March 17 or after March 17?

11           A.    After.  It was after.  After April,

12   I think.

13           Q.    And you were interviewed by

14   Christian Hommerich after March 17?

15           A.    Yes.

16           Q.    Your second interview by Bill

17   Spinner was after March 17?

18           A.    Right.  Right.

19           Q.    Okay.

20                  Is it your belief that the union

21   itself, not the captains, but the union itself

22   influenced the hotel's decision about who to

23   select?

24           A.    I think so.

25           Q.    And why do you believe that?

```
 1                 Mario Pardo - April 28, 2008
 2          A.    Why?
 3          Q.    Yes.
 4          A.    Because every delegate is reviewed
 5   by the peers to become captain.  The waiter is
 6   not a delegate -- a waiter there is promoted as
 7   captain, it never happened.  All the ones who
 8   have been a delegate, I think the union is like,
 9   how you call it, recommends to be -- that person
10   to be the captain.
11          Q.    But you were a delegate and an
12   assistant delegate?
13          A.    Yes.
14          Q.    So that could have been helpful to
15   you?
16          A.    Yes.
17          Q.    Do you think that the union was
18   discriminating on the basis of age when it
19   recommended delegates, if it did?
20          A.    I don't know.  I don't know about
21   that.  I don't know.  I don't know if they
22   discriminate or not.  I don't know.
23                MS. STOLL:  I hate to do this.  I
24          don't have that much more, but I really
25          have to take this call.
```

```
 1                  Mario Pardo - April 28, 2008
 2                        Off the record.
 3                        (Whereupon, at 3:52 p.m., a
 4              recess was taken until 4:49 p.m.)
 5                   MS. STOLL:   Back on the record.
 6                   Would you read back the last
 7        question?
 8                        (Record read.)
 9    BY MS. STOLL:
10        Q.    Now, you allege in your complaint
11   that you were denied this promotion because of
12   your age, right?
13        A.    Yes.  Yes.
14        Q.    What is the basis of your belief
15   that you were denied the promotion because of
16   your age?
17        A.    Well, I feel like I'm 58 -- I'm
18   going to be 58.  The person that they choose was
19   38 years old.  So they prefer a younger person,
20   the other waiters that have applied.
21        Q.    But nobody said anything to you that
22   would lead you to believe that age was a factor,
23   did they?
24        A.    No.  It is just my feeling, my
25   personal feeling.
```

                    Mario Pardo - April 28, 2008

1              Q.   And the fact that the person they

2    picked was younger than you?

3              A.   Yes.

4              Q.   I'm not quite sure what his age is.

5              A.   I think, I mean, it is between 38

6    and 40; so, he wasn't born before I was there.

7              Q.   Do you know where he worked before?

8              A.   Royal Regal.

9              Q.   Do you know how long he had worked

10   there?

11             A.   No.

12             Q.   Do you know how much experience he

13   has as a banquet waiter?

14             A.   No.  Looking at the paperwork, I

15   think it says a few years.

16             Q.   Is it your belief that the length of

17   your experience should be the most important

18   factor in the decision about who would be

19   captain?

20             A.   Yes, I think so, yes, definitely.

21             Q.   Do you have more experience than

22   GiGi as a waiter, correct?

23             A.   Yes.

24             Q.   Do you think you should have been

```
 1              Mario Pardo - April 28, 2008
 2   picked before her?
 3        A.    For seniority, I think, yes.
 4        Q.    You think it should be solely by
 5   seniority, the selection?
 6        A.    Yes.
 7        Q.    In the past selections, has it been
 8   done by seniority?
 9        A.    No.
10        Q.    Is there any requirement in the
11   collective bargaining agreement that the
12   selection be by seniority?
13        A.    No.  No.
14        Q.    Do you think that there are other
15   factors that should go into the decision about
16   who was selected to be captain other than length
17   of service?
18        A.    If I think if there are other
19   factors?
20        Q.    Yes.
21        A.    Like what?
22        Q.    I don't know.  Do you think it
23   should just be seniority?
24        A.    No.  It has to be about knowledge
25   and service, the way you perform the job.
```

Mario Pardo - April 28, 2008

1

2          Q.    Did you think that Jay had knowledge

3    of banquet service?

4          A.    He knows some.  He knows.

5          Q.    And you don't know how he answered

6    the questions in the interview, of course,

7    right?

8          A.    No.  No.

9          Q.    And you also know that all the

10   current captains are in their 60s, some well

11   into their 60s, right?

12         A.    Right.

13         Q.    You said earlier, I just want to

14   explore this a second and then I'm going to wrap

15   it up.

16               You said earlier that you thought

17   that the union was pushing certain people or

18   recommending certain people?

19         A.    Recommending.

20         Q.    Because they were delegates?

21         A.    Yes.

22         Q.    Do you think that's the reason that

23   you were not selected, or was it age, which was

24   it?

25         A.    I think it was both, age and the