UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

GRISELDA BIELINSKI and MARIO PARDO,　　　　07 Civ. 11636 (SS)(JCF)

　　　　　　　　Plaintiffs,

　　　　-against-

HOTEL PIERRE,

　　　　　　　　Defendant.
_____ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S <u>MOTION FOR SUMMARY JUDGMENT</u>

~~ **TABLE OF CONTENTS** ~~

TABLE OF AUTHORITIES ........................................................................(i)

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS............................................................................2

    Background Information and Procedural History ...........................2
    Interview Process .....................................................................5
    Laut's Premature Announcement ................................................9
    Plaintiffs' Claims ....................................................................10
        Comparative Qualifications .......................................10
        Gender Discrimination .............................................11
        Age Discrimination .................................................12
        Union Influence .....................................................13

ARGUMENT.............................................................................................14

POINT I ...................................................................................................14
      Summary Judgment Should Granted When There Are No Material
Issues of Fact In Dispute and Defendant is Entitled to Judgment as a
Matter of Law

POINT II ..................................................................................................15
      Defendant is Entitled to Summary Judgment Because Plaintiffs
Fail to State a Claim of Discrimination

    A.  Legal Standard ..........................................................15

    B.  Prima Facie Case .......................................................16

    C.  The Hotel has Met its Burden of Articulating a Legitimate,
       Non-Discriminatory Reasons for its Decision...................17

    D.  Plaintiffs Cannot Establish that the Hotel's Reasons for
       Its Action Were Untrue of a Pretext for Discrimination................18

    E.  Plaintiffs Provide No Evidence of Age or Gender
       Discrimination .............................................................23

CONCLUSION ...........................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001)................................ 17

Aggarwal v. The New York City Health and Hospital Corp., 2000 U.S. Dist.
        LEXIS 1367 (S.D.N.Y., February 10, 2000) ................................................... 14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...................................................... 14

Byrnie v. Town of Cromwell Board Of Education, 243 F.3d 93 (2d Cir. 2001) .. 16, 20, 21

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .................................................................. 14

Collette v. St. Luke's Roosevelt Hospital, 2002 WL. 31159103 (S.D.N.Y.,
        September 26, 2002)........................................................................................... 19

Deines v. Texas Department of Protective and Regulatory Services, 164 F.3d 277
        (5th Cir. 1999) .................................................................................................... 20

Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988) ..................................... 22

Donahue v. Norwich Roman Catholic Diocesan Corporation, 2008 WL. 821890
        (D. Conn., March 26, 2008)........................................................... 16, 17, 21, 24

Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1995)................................................... 18

Gibson v. American Broadcasting Companies, Inc., 892 F.2d 1128 (2d Cir. 1989)......... 14

Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) ............................................................ 16

James v. New York Racing Authority, supra, 233 F.3d, 149 (2d. Cir. 2000) ................... 18

Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574
        (1986)................................................................................................................... 14

McDonnell Douglas v. Green, 4211 U.S. 792 (1973) ....................................................... 15

Meachem v. Knolls Atomic Power Laboratories, 461 F.3d 134 (2d Cir. 2006) ............... 21

Meiri v. Dacon, 759 F.2d 989 (2d Cir.), cert. denied 474 U.S. 829 (1985) ..................... 15

Norton v. Sam's Club, 145 F.3d 114 (2d Cir.), cert. denied, 525 U.S. 1001 (1998) ...22, 24

Peck v. Public Service Mutual Insurance Co., 326 F.3d 330 (2d Cir. 2003) .................... 14

Scaria v. Rubin, 117 F.3d 652 (2d Cir. 1997) ....................................................19

Simms v. Oklahoma ex. rel. Department of Mental Health and Substance Abuse Services, 165 F.3d 1321 (10th Cir. 1999)...........................................................21

St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)......................................15, 16, 18

Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981) ....................15

Tomka v. Seiler Corp., 66 F.3d 1298 (2d Cir., 1995)..........................................16

Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2d Cir. 1996) ...........................16

Weinstock v. Columbia University, supra, 234 F.3d 33 (2d Cir. 2000)..........................15

Witkowich v. Gonzales, 541 F. Supp. 2d 572 (S.D.N.Y., 2008)................................17

Witkowich v. Gonzales, supra, 541 F. Supp. 2d at 582.......................................19

Witkowich v. Gonzales, supra, 541 F. Supp. 2d at 583.......................................20

Woroski v. Nashua Corp., 31 F.3d 105 (2d Cir. 1994) .......................................16

## STATE CASES

Matter of Miller Brewing Co. v. State Division of Human Rights, 66 N.Y.2d 938, 498 N.Y.S.2d 776 (1986)........................................................................16

## FEDERAL STATUTES

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623 ...............................3

FRCP 56(c) ...............................................................................14

FRCP 56(e) ...............................................................................15

Title VII of the Civil Rights Act, 42 U.S.C., 2000e-2(a) ....................................3

## OTHER

New York City Human Rights Law ("NYCHRL"), §8-107(i)...........................................3
New York Executive Law, §296, et. seq. .....................................................3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ x

GRISELDA BIELINSKI and MARIO PARDO,                    07 Civ. 11636 (SS)(JCF)

              Plaintiffs,

       -against-

HOTEL PIERRE,

           Defendant.
_____ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

IHMS, LLC d/b/a The Pierre (the "Hotel") submits this memorandum of law in support of its motion for summary judgment. The Hotel submits that on the basis of the undisputed facts, plaintiffs can prove no set of facts which would entitle them, or either of them, to judgment on their claims of age discrimination or gender discrimination.

There are no material issues of fact in dispute in this case. It is undisputed that plaintiffs were among twelve (12) internal applicants competing for promotion to a single vacant position as Banquet Captain at the Hotel, that all the applicants went through an identical interview process and that plaintiffs were two (2) of the three (3) finalists in that process. It is also undisputed that the Hotel selected the third applicant who, in its the judgment, best exhibited during his interviews the skills required of a Banquet Captain, including leadership, organizational, communication and problem-solving skills and extensive knowledge of Union rules governing banquet operations. Plaintiffs acknowledge that no one in Hotel management ever said anything to them from which a motive of age or gender discrimination could possibly

be inferred nor do they proffer any other evidence of discrimination in the selection process. Rather, plaintiff's claims are based solely on their own self-serving and, at times, conflicting assertions that they (or one of them) were the most qualified applicants; that the successful applicant is younger and, in the case of plaintiff Bielinski, is male; that <u>one</u> of the current Banquet Captains – a Union member with no role in the selection process - told plaintiff Bielinski that she was "too old" to be Captain; and, finally, quite simply that they <u>believe</u> that age and/or gender was a motivating factor in the decision.

The Hotel submits that on the basis of the undisputed facts, no reasonable fact-finder could conclude that either plaintiff was denied the promotion to Banquet Captain because of age or gender and that the Hotel is entitled to summary judgment dismissing plaintiffs' case in its entirety.

## STATEMENT OF FACTS

### Background Information and Procedural History

The Hotel is a luxury transient hotel and cooperative apartment building located at 2 East 61st Street in New York, New York (Mancini Aff., ¶2).[1]  The Hotel is bound by the terms of a collective bargaining agreement, known as the Industry-Wide Agreement (the "IWA"), between the Hotel Association of New York City, Inc. and the New York Hotel & Motel Trades Council, AFL-CIO (the "Union") which governs the terms and conditions of employees who are members of the Union (Mancini Aff., ¶s 2, 3).

Plaintiffs commenced this action by filing a Complaint on or about December 28, 2007, alleging that they were denied a promotion to Banquet Captain at the Hotel on the basis of their

---

[1] References to the Affidavit of Yvonne Mancini annexed to the moving papers are denoted "Mancini Aff., ¶___, Ex. ___."

age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623, New

York Executive Law, (the "New York State Human Rights Law" or "NYSHRL"), §296(i) et.

seq., and the New York City Human Rights Law ("NYCHRL"), §8-107(i). Plaintiff Bielinski

also alleges that she was denied the promotion because of her gender, in violation of Title VII of

the Civil Rights Act, 42 U.S.C., 2000e-2(a), the NYSHRL and the NYCHRL  (Mancini Aff., ¶ 4,

Ex. A).  The Hotel served and filed an Answer to the Complaint on or about January 24, 2008

(Mancini Aff., ¶ 4, Ex. B).

The Hotel's Banquet Department caters and services banquet functions in the Hotel's

Ballroom, Cotillion Room and various meeting rooms (Mancini Aff., ¶ 5).  Banquet Captains, A

List Banquet Servers (steady, full-time servers) and B List Banquet Servers (steady extra servers)

are all members of the Union and the terms and conditions of their employment are governed by

the IWA (Mancini Aff., ¶ 6).

Banquet Captains assist the Banquet Headwaiter in directing and coordinating the work

of the Servers before, during and after the banquet function.  Captains also serve as a liaison

between the service staff and the guest, responding to complaints, special requests and other

matters that may arise during the function (Mancini Aff., ¶ 6).  While a Banquet Captain must

have extensive experience and knowledge of banquet service, he or she must also have

substantial leadership, organizational and problem-solving skills, must be articulate and poised in

responding to guest requests and complaints and must understand and be proficient in Union

rules and with all the protocols of banquet service, including payroll, scheduling and service

standards.  For that reason, Banquet Captains are not selected solely on the basis of their

seniority as Banquet Servers (Mancini Aff., ¶ 7).  Although they direct the work of the Banquet

Servers on the Banquet floor, Captains are not management employees and do not have the

authority to hire, fire, discipline or alter any of the terms and conditions of the Banquet Servers' employment (Mancini Aff., ¶ 8).

At the end of 2006, one of the individuals who had been working as a Banquet Captain retired from his employment (Mancini Aff., ¶ 9). Twelve (12) current A List Banquet Servers applied for the vacant position, including plaintiffs and Jay Laut (Mancini Aff., ¶ 9, Ex. C ).

Plaintiff Bielinski is currently 61 years old and has worked as an A List Banquet Server at the Pierre since 1985.   Plaintiff Pardo is currently 59 years old and has worked at the Hotel since 1969, first as a Room Service Busser, then Room Service Server and, since 1986, as an A List Server.  Mr. Laut is currently 45 years old and was hired by the Hotel in 1998 as a B List Server and promoted to the A List in 2005.  In addition to working at the Hotel, Mr. Laut worked for five (5) years as a Banquet Server/Captain at the Regent Wall Street and another five (5) years as a Banquet Server/A La Carte Server at the Rihga Royal Hotel.  From 1985 to 1992, Mr. Laut worked as a Captain and Assistant Manager at Au Mandarin Restaurant   (Mancini Aff., ¶ 10,  Ex. C).

On or about February 21, 2007, Yvonne Mancini, the Hotel's Director of Human Resources, received a letter from plaintiff Bielinski in which she expressed concerns about the selection process and her belief that "an individual who is working with us for 3 years; also is a member of the Board of Director at our Union" had already been chosen for the Captain's position, "creating a conflict of interest" with the Union.  Ms. Mancini knew she was referring to Mr. Laut[2] (Mancini Aff., ¶ 11, Ex. D).

---

[2] Mr. Laut is a member of the Union's Delegate Assembly, equivalent to its Board of Directors (Mancini Aff., ¶ 11, note 1).

**Interview Process**

The Hotel developed a three-stage interview procedure for the Banquet Captain positions (Mancini Aff., ¶ 12). For the first stage of the process, Christopher Edmonds, Banquet Headwaiter (a management employee), interviewed all twelve (12) applicants. Ms. Mancini provided Mr. Edmonds with a Functional Competencies Interview Form. This interview involves a number of pre-established questions that are designed to elicit information about how the candidate handled specific situations in the past, since a candidate's past performance is frequently the best predictor of future performance (Mancini Aff., ¶ 12).

On the Functional Competencies interview, general, vague and unspecific answers tend to indicate that the candidate has not been thoughtful about his/her past experiences and will not apply the lessons learned in the future (Mancini Aff., ¶ 12). Six (6) applicants rated "Satisfactory" or better at this stage, including both of the plaintiffs and Mr. Laut. and were passed on to interview with Mr. Spinner. Among the six (6) passing applicants (Mancini Aff., ¶ 12, Ex. E). Mr. Edmonds rated both plaintiffs as "Satisfactory." On plaintiff Bielinski's Interview Guide, he noted that she talked about the "division of sexes" and that her answers were "not too detailed." On plaintiff Pardo's Interview Guide, he noted "Not enough. Didn't fully answer questions. No specific examples." (Mancini Aff., ¶ 13, Ex. E). Mr. Edmonds rated Mr. Laut as "Strength." On Mr. Laut's Interview Guide, Mr. Edmonds noted "Gave detailed answers." (Mancini Aff., ¶ 14, Ex. E, Ex. F, Edmonds Tr., pp. 55-60).

William Spinner, Director of Catering, then interviewed each of the six (6) candidates who had passed the first stage. Mr. Spinner asked each candidate the same three sets of questions related to the candidate's work history and experience; the candidate's knowledge of the position of Banquet Captain; and the candidate's suggestions for ways in which the Banquet

Captain can improve service and the guests' experience (Mancini Aff., ¶ 15, Ex. G). At the end

of his interviews, Mr. Spinner recommended only three (3) of the candidates, both of the

plaintiffs and Mr. Laut, for further interview with the General Manager or Hotel Manager

(Mancini Aff., ¶ 16, Ex. G).

Mr. Spinner's summary of his interview with plaintiff Bielinski notes that she was very

experienced and knowledgeable as a server and well spoken, but that she had had little

interaction with management/Union issues, never served as a delegate and did not suggest any

ways in which she would be able to improve service as a Captain (Mancini Aff., ¶ 17, Ex. G).

Mr. Spinner's summary of his interview with plaintiff Pardo indicates that he was also very

experienced and knowledgeable as a server, that he was familiar with management/Union issues

and had served as a delegate, but that he did not suggest any ways in which he would be able to

improve service as a Captain (Mancini Aff., ¶ 18, Ex. G, Ex. H, Spinner Tr., pp. 22-26). Mr.

Spinner's summary of his interview with Ms. Laut indicated that he was very experienced and

knowledgeable as a server, well spoken, had thorough knowledge of management/Union issues

and had served as a delegate. In addition, Mr. Spinner noted that Mr. Laut "[m]ade constructive

suggestions as to new ways a Captain can contribute to the improvement of service; [d]iscussed

specific ways we could schedule staff to increase service at cocktail receptions." (Mancini Aff.,

¶ 19, Ex. H, Spinner Tr., pp. 22-26, 29-30).

Both plaintiffs were then interviewed by Christian Hommerich, Hotel Manager (Mancini

Aff., ¶ 20). Mr. Hommerich's notes of his interview with plaintiff Bielinski indicate that she

answered his questions thoroughly and that she was very knowledgeable about banquet service

(Mancini Aff., ¶ 20, Ex. I). His notes of his interview with plaintiff Pardo indicate that when Mr.

Hommerich asked him why he wanted to move to a Captain's position, plaintiff Pardo responded

that he was getting old and that in the Captain's position he would no longer have to carry heavy weights and would be better able to take care of his family financially (Mancini Aff., ¶ 20, Ex. I, Ex. J, Hommerich Tr., pp. 14-20).

Mr. Kuenstle interviewed Mr. Laut. His notes indicate that Mr. Laut gave specific examples of his leadership ability in a clear and concise manner and gave various suggestions on how to improve service. In summary, he concluded: "Strong candidate; provided specifics; strong qualifications." (Kuenstle Aff., ¶8, Ex. A).

After all of the interviews were concluded, there were a number of discussions among Mr. Spinner, Mr. Kuenstle, Mr. Hommerich, Mr. Edmonds and Ms. Mancini about who was the best candidate for the Banquet Captain position (Mancini Aff., ¶ 22, Kuenstle Aff., ¶ 3). [3] During these discussions, Mr. Edmonds expressed the opinion that Mr. Laut gave the most detailed and specific answers in his interview and in Mr. Edmonds' view was by far the strongest candidate (Kuenstle Aff., ¶4; see also Exs. E and F annexed to the Mancini Aff.). Mr. Spinner weighed heavily the fact that Mr. Laut was the only applicant who was able to give detailed and concrete suggestions for improving banquet service, specifically that he suggested changing the way servers are assigned at cocktail receptions to improve efficiency. Mr. Spinner also noted that Mr. Laut gave the clearest, most direct answers to his questions and that as a Union delegate, he was very familiar with Union rules and procedures and had exhibited leadership ability (Kuenstle Aff., ¶¶ 5, 6; see also Exs. G and H annexed to the Mancini Aff.). Mr. Hommerich reported that when he interviewed plaintiff Pardo, Pardo had stated that he wanted the promotion so that he would not have to carry heavy trays and could make more money. It was agreed among the managers that this response was unacceptable, that it indicated a lack of passion and

---

[3] References to the Affidavit of Heiko Kuenstle annexed to the moving papers are denoted "Kuenstle Aff., ¶__."

commitment to the job and that plaintiff Pardo should be eliminated from consideration (Kuenstle Aff., ¶ 7; see also Exs. I and J annexed to the Mancini Aff.). Mr. Kuenstle was extremely impressed by Mr. Laut's service knowledge, communication skills, commitment to the job and to the Hotel and his understanding of the responsibilities inherent in the position of Banquet Captain. Mr. Kuenstle was impressed with the fact that Mr. Laut had given careful thought to how he would make a valuable contribution to the Hotel as a Banquet Captain (Kuenstle Aff., ¶ 8). Mr. Kuenstle knew plaintiff Bielinski to be a skilled and knowledgeable server, but also knew that she had never served as a delegate, was not knowledgeable about Union rules and had never shown the leadership skills the Hotel was looking for (Kuenstle Aff., ¶ 9). On the other hand, Mr. Laut had been chosen by the Banquet Servers to serve as their delegate, which meant that he commanded their respect and they recognized him as leader whose direction they would follow as Banquet Captain. Mr. Laut had articulated in detail during his interview how he had solved conflicts and reached compromise in his role as delegate and had exhibited to Mr. Kuenstle that he possessed and had exercised the leadership and problem-solving skills that are so critical to a successful Banquet Captain (Kuenstle Aff., ¶ 10).

Following these discussions, it was the unanimous opinion of these managers that Mr. Laut was the only applicant who possessed all of the skills and qualifications to be a Banquet Captain and was clearly the best candidate for the position. Mr. Kuenstle made the ultimate decision, through consensus with the Banquet managers, and informed Ms. Mancini that Mr. Laut had been selected and she should proceed with his promotion (Kuenstle Aff., ¶¶ 11, 12). The current Banquet Captains played no role whatsoever in the selection process and none of them expressed an opinion to Mr. Kuenstle about who was the best candidate (Kuenstle Aff., ¶ 13). Mr. Laut's promotion was officially announced on April 17, 2007 (Mancini Aff., ¶ 22).

**Laut's Premature Announcement**

On Saturday, March 17, 2007 – St. Patrick's Day – Mr. Laut announced to the assembled Banquet Servers that he was resigning his position as Union delegate and that he had been selected as Banquet Captain (Mancini Aff., ¶ 23). Ms. Mancini was not in the Hotel at the time, nor was Mr. Spinner, Mr. Kuenstle or Mr. Edmonds. On Monday, March 19, 2007, several of the applicants, including both of the plaintiffs, went to Ms. Mancini's office and told her what had occurred over the weekend (Mancini Aff., ¶ 24). Ms. Mancini assured these employees that Mr. Laut had <u>not</u> been selected and that the interview process had not been completed. She promised that she would look into the situation and find out what happened (Mancini Aff., ¶ 24).

Ms. Mancini met with Mr. Laut on March 21, 2007, the first day he was at work after St. Patrick's Day. She told him that he had not, in fact, been selected as Captain and asked him how he came to believe he had been. Mr. Laut said that he had been told by Mr. Edmonds that he had been selected (Mancini Aff., ¶ 25).

Ms. Mancini was not able to speak to Mr. Edmonds until he returned from leave about 10 days later. Mr. Edmonds denied that he had told Mr. Laut that he had been selected for the Captain position. He said that he had specifically told Mr. Laut that the interview process had not been completed and that no decision had been made. However, he acknowledged telling Mr. Laut that he was impressed with his interview and that he was a strong candidate (Mancini Aff., ¶ 26).

Sometime during the week of March 19, 2007, Ms. Mancini received copies of two (2) letters plaintiff Bielinski had written to Peter Ward, President of the Union, complaining about the perceived unfairness of the selection process, complaining about comments allegedly made

9

to her by one of the Captains and complaining that the Union was "not a remote or removed bystander" in the selection (Mancini Aff., ¶ 27, Ex. K). Plaintiff Bielinski never mentioned these alleged comments by the Banquet Captain to Ms. Mancini or anyone else in Hotel management (Mancini Aff., ¶ 27)..

## Plaintiff's Claims

### Comparative Qualifications

Plaintiffs' principal claim in their Complaint is that they are both more qualified than Mr. Laut and therefore one of them should have been selected for the position instead of him (Mancini Aff., ¶ 28, Ex. A, ¶ 14). Plaintiff Bielinski testified that she believes she is more qualified than Mr. Laut because she has worked as a Banquet Captain at the Hotel for 22 years and that Mr. Laut had been an A List Banquet Server for only three (3) years. She also testified that she believes she is more qualified because of "the way I take care of guests." She also testified that she is more qualified than Mr. Laut because she is a woman, since "the hotel needs a woman as captain." (Mancini Aff., ¶ 29, Ex. L, Bielinski Tr., pp. 80-85). Finally, she testified that she does not believe that experience as a delegate should have been a criterion for the Captain position (Mancini Aff., ¶ 29, Ex. L, Bielinski Tr., p. 65).

Plaintiff Bielinski conceded, however, that she does not knows Mr. Laut's skills, only her own. When asked if she believed that Laut had knowledge of the Captain's position, she responded: "I didn't test him, I don't know .... I know my qualifications." Mancini Aff., ¶ 30, Ex. L, Bielinski Tr., pp. 106-107)  (emphasis added). On further questioning, plaintiff Bielinski acknowledged that Mr. Laut knows how to handle the Captain's job and that he is qualified for the position, but that she believes she "would do a little better in general." She further

acknowledged that she did not know how Mr. Laut had answered questions during his interviews

for the Banquet Captain position (Mancini Aff., ¶ 31, Ex. L, Bielinski Tr., p. 98-99).

When plaintiff Pardo was asked why he believed he was more qualified than Mr. Laut, he

also referred only to his own knowledge and his relationship with long-term guests (Mancini

Aff., ¶ 32, Ex. M, Pardo Tr., pp. 57-58. He pointed out that he had served as a Union delegate

and that he believes service as a delegate is a criterion for selection as Banquet Captain

"[b]ecause you know how to handle problems between management and union members.

Because you have experience if there is a conflict, you have to resolve it right there." (Mancini

Aff., ¶ 32, Ex. M, Pardo Tr., pp. 58–59).

Plaintiff Pardo testified that he believes length of employment at the Hotel should be the

most important criterion in selecting a Banquet Captain and for that reason, should have been

selected before plaintiff Bielinski (Mancini Aff., ¶ 33, Ex. M, Pardo Tr., p. 67). After conceding

that knowledge of banquet service is also a criterion for selection as a Banquet Captain, plaintiff

Pardo agreed that Mr. Laut has such knowledge. He also conceded that he does not know how

Mr. Laut answered questions during the interview process (Mancini Aff., ¶ 34, Ex. M, Pardo Tr.,

pp. 67-68).

Gender Discrimination

Plaintiff Bielinski admits that no one in management at the Hotel ever made any negative

comments about her gender (Mancini Aff., ¶ 35, Ex. L, Bielinski Tr., pp. 53, 56-57, 60-61). She

bases her belief that she was subjected to gender discrimination primarily on negative comments

allegedly made by one of the Banquet Captains, Jack Racic, who she accused of not liking to

work with women. She testified that she believes Mr. Racic does not like working with women

"[b]ecause it is the truth." (Mancini Aff., ¶ 36, Ex. L, Bielinski Tr., p. 40-41). However,

plaintiff Bielinski admitted that <u>none of the other Captains</u> have a problem working with women, only Mr. Racic.  In fact, plaintiff Bielinski testified that several of the Captains <u>encouraged</u> her to apply for the position (Mancini Aff., ¶ 36, Ex. L, Bielinski Tr., pp. 45-49).

Plaintiff Bielinski  also testified that she believes she was discriminated against on the basis of gender because she is a woman and Mr. Laut is not, and he got the job.  Finally, when asked whether she believed she was denied the job because of her gender, plaintiff Bielinski responded: "No idea why they denied me without an explanation."  (Mancini Aff., ¶ 37, Ex. L, Bielinski Tr., p. 95).

Age Discrimination

Both plaintiffs acknowledge that no one in Hotel management ever said anything about her or his age (Mancini Aff., ¶ 38, Ex. L, Bielinski Tr., pp. 53, 60-61;  Ex. M, Pardo Tr., pp. 43-44).  When asked the basis of her claim that she was denied the position because of her age, plaintiff Bielinski points to a comment she alleges was made by Mr. Racic (who is currently 65 years old) that she is too old to be a Captain.  (Mancini Aff. ¶ 39,  Ex. L, Bielinski Tr. pp. 37-39).  In fact, plaintiff Bielinski testified that Mr. Racic is the only person who ever made any negative comments about her and his comments are the <u>only</u> reason she believes she was discriminated against on the basis of age  (Mancini Aff., ¶ 2 , Ex. L, Bielinski Tr., p. 97).   When asked if any of the Captains made any comments about his age, plaintiff Pardo replied only that the Captains told him he had many more years to carry a tray (Mancini Aff., ¶ 40, Ex. M, Pardo Tr., pp. 44-45).  Plaintiff Pardo admitted that he responded to Mr. Hommerich's inquiry about why he wanted the Banquet Captain position by saying that he was getting old and that as a Banquet Captain he would not have to carry so much weight and that he would be able to better take care of his family by making more money.  (Mancini Aff., ¶ 40, Ex. M, Pardo Tr., pp. 42-

43). When asked if he thought that was the best answer to give in an interview, he said: "No. I was sincere...." (Mancini Aff., ¶ 40, Ex. M, Pardo Tr., p. 42-43).

When asked why he believed that his age was a factor in the decision not to select him for the Banquet Captain position, plaintiff Pardo answered:

> A: Well, I feel like I'm 58 – I'm going on 58. The person that they choose was 38 years old.[4] So they prefer a younger person, the other waiters that have applied.
>
> Q: But nobody said anything to you that would lead you to believe that age was a factor, did they?
>
> A: No. It was just my feeling, my personal feeling.

(Mancini Aff., ¶ 41, Ex. M, Pardo Tr., p. 65).

Union Influence

Finally, in her deposition, plaintiff Bielinski asserted that the Banquet Captains allegedly preferred Mr. Laut not because he is younger and male but because he is a delegate and he is on the Board of the Union. (Mancini Aff., ¶  , Ex. P, Bielinski Tr., p. 65).   In his deposition, plaintiff Pardo speculated that the Union itself had somehow influenced the decision to select Mr. Laut not because Mr. Laut is younger but because Mr. Laut was a delegate and that every Captain that has been selected has been a delegate.  Plaintiff Pardo acknowledged, however, that since he had been a delegate, this would have been a factor in his favor as well  (Mancini Aff., ¶ 43, Ex. M, Pardo Tr., pp. 63-64).

---

[4] At the time of his selection for Banquet Captain, Mr. Laut was 44 years old, not 38  (Mancini Aff., ¶ 41, n.3).

## ARGUMENT

## POINT I

## SUMMARY JUDGMENT SHOULD BE GRANTED WHEN THERE ARE NO MATERIAL ISSUES OF FACT IN DISPUTE AND DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment if, when viewing the facts in a light most favorable to the nonmoving party, there are no genuine issues of material fact requiring a trial.  FRCP 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986);  Matsushita Electric Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

To defeat summary judgment, the nonmoving party must establish through either direct, statistical or circumstantial evidence that there is a genuine issue of fact with respect to an element of the nonmovant's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);  Peck v. Public Service Mutual Insurance Co., 326 F. 3d 330, 337 (2d Cir. 2003).  Furthermore, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts."  Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., supra, 475 U.S. at 486.  The party opposing the motion must allege facts to indicate that "a genuine issue – not merely one that is colorable – of material fact is present."  Gibson v. American Broadcasting Companies, Inc., 892 F.2d 1128, 1132 (2d Cir. 1989)(emphasis added).  To defeat summary judgment, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial, and cannot rest on the 'mere allegations or denials of his pleadings.'"  Aggarwal v. The New York City Health and Hospital Corp., 2000 U.S. Dist. LEXIS 1367 at *7 (S.D.N.Y., February 10, 2000), quoting FRCP 56(e).

The nonmovant's burden is no different in an employment discrimination case. "[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied 474 U.S. 829 (1985). Even where defendant's intent or state of mind is at issue, "the mere incantation of intent or state of mind [does not] … operate as a talisman to defeat an otherwise valid motion." Id.

As will be explained below, plaintiffs' claims of age and gender discrimination are based on self-serving assertions, speculation, metaphysical doubt and mere possibilities. Absent competent and concrete evidence that the reason for the Hotel's selection of Mr. Laut is untrue or that the real reason is discrimination on the basis of either age or gender, the Hotel's motion for summary judgment must be granted.

## POINT II

### DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM OF DISCRIMINATION

### A. Legal Standard

Pursuant to the standards established by the United States Supreme Court in McDonnell Douglas v. Green, 4211 U.S. 792 (1973), a plaintiff in a discrimination case brought under Title VII must first establish a prima facie case of discrimination. Once a prima facie case is established, the defendant must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Once the defendant meets its burden of production, the presumption of discrimination "drops from the picture." Weinstock v. Columbia University, supra, 234 F.3d 33, 42 (2d Cir. 2000). Plaintiff then has the burden of establishing by a preponderance of the evidence that the proffered reason is untrue and is merely a pretext for discrimination. St. Mary's Honor Center v.

Hicks, 509 U.S. 502, 510 (1993).    See also Donahue v. Norwich Roman Catholic Diocesan

Corporation, 2008 WL 821890 at *2 (D. Conn., March 26, 2008).  The McDonnell burden

shifting analysis established for cases arising under Title VII also applies to cases arising under

the ADEA as well as cases arising under the NYSHRL and the NYCHRL.  Hazen Paper Co. v.

Biggins, 507 U.S. 604, 612 (1993);  Tomka v. Seiler Corp., 66 F.3d 1298, 1308, n. 4 (2d Cir.,

1995);  Matter of Miller Brewing Co. v. State Division of Human Rights, 66 N.Y.2d 938, 498

N.Y.S.2d 776 (1986).

Evidence that the defendant's articulated reason for its actions is false or unworthy of

belief does not necessarily compel the conclusion that the real reason was discrimination.  "[I]t is

not enough … to disbelieve the employer; the fact-finder must believe the plaintiff's explanation

of intentional discrimination."  St. Mary's Honor Center, supra, 509 U.S. at 519.

In other words, to survive summary judgment in an employment discrimination case, a

plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence' to support a

rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were

false, and that more likely than not discrimination was the real reason" for the employment

action.  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996), quoting

Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994)(internal brackets omitted).

### B.  Prima Facie Case

In a case involving a failure to hire or promote, the four (4) elements of a prima facie case

are:  (1) the plaintiff is in a protected class; (2) the plaintiff applied for a position or promotion

for which he or she was qualified; (3) the plaintiff was not selected for the position or promotion

and (4) the adverse employment decision was made under circumstances giving rise to an

inference of unlawful discrimination.  Byrnie v. Town of Cromwell Bd. Of Educ., 243 F.3d 93,

101 (2d Cir. 2001); Donahue v. Norwich Roman Catholic Diocesan Corporation, supra, 2008

WL 821890 at *2; Witkowich v. Gonzales, 541 F. Supp.2d 572, 579 (S.D.N.Y., 2008).

In the instant case, it is undisputed that both plaintiffs are over the age of 40 and

plaintiff Bielinski is female.  The Hotel does not dispute that they both possess the basic

qualifications for the position of Banquet Captain.  It is also undisputed that neither plaintiff was

selected for the position and that the successful applicant, Jay Laut, is younger than both

plaintiffs and is male.

Although plaintiffs can establish the four (4) elements of a prima facie case, it is well

settled that the showing a plaintiff must make to establish a prima facie case is minimal.  Abdu-

Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).


### C. The Hotel Has Met Its Burden of Articulating a Legitimate, Nondiscriminatory Reason for Its Decision

The Hotel has clearly met its burden of producing a legitimate, nondiscriminatory

reason for its decision to select Mr. Laut for the Banquet Captain position instead of either

plaintiff Bielinski or plaintiff Pardo.  As set forth in detail in the Affidavit of Yvonne Mancini

and the documents annexed thereto and the Affidavit of Heiko Kuenstle, the Hotel conducted a

series of carefully structured interviews to determine who among the twelve (12) applicants – all

of whom were experienced Banquet Servers at the Hotel – was most qualified for the position.  It

was their unanimous opinion, based on the answers to interview questions, that Mr. Laut was the

clear leader in exhibiting the skills they were looking for in a Banquet Captain -  not only

profound knowledge of banquet service, but also leadership and organizational skills, a passion

for and commitment to the job and a thorough knowledge of Union rules and Union-management

relations that are critical to the smooth running of a Banquet Department. He was the <u>only</u> applicant who responded concretely and in detail to the question of how he would improve banquet service if he were selected as a Captain.

By contrast, plaintiff Pardo demonstrated a lack of commitment to the position by conceding that he was seeking the promotion in order to avoid strenuous physical effort and to make more money for his family. Plaintiff Bielinski had never worked in a leadership or problem-solving position and was unfamiliar with Union rules and procedures and Union-management issues.

The Hotel has clearly met its burden of production at this stage of the burden-shifting analysis. "Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case." <u>Fisher v. Vassar College</u>, 114 F.3d 1332, 1335-6 (2d Cir. 1995).

### D. Plaintiffs Cannot Establish That the Hotel's Reasons for Its Action Were Untrue or a Pretext for Discrimination

In the face of the Hotel's articulated reason for its decision to select Mr. Laut as Banquet Captain, the presumption of discrimination arising from plaintiffs' prima facie case "drops from the picture" and plaintiffs now have the burden of establishing that the Hotel's proffered reason for its decision is <u>false</u> and that the <u>real</u> reason is discrimination on the basis of age or gender or both. <u>St. Mary's Honor Center v. Hicks</u>, <u>supra</u>, 509 U.S. at 516; <u>James v. New York Racing Auth.</u>, 233 F.3d 149, 156-57 (2d Cir. 2000).

Plaintiffs challenge the veracity and wisdom of selecting Mr. Laut because they believe – each for different reasons – that they are more qualified for the position than Mr. Laut. The only basis for their claim of better qualifications is that they have each worked at the Hotel longer than Mr. Laut and have more years of experience as <u>Banquet Servers</u>. But length of service as a

Banquet Server is not the sole or even primary qualification for Banquet Captain.  Although the position does require extensive knowledge of and experience in banquet service, it <u>also</u> requires <u>additional</u> skills such as the ability to lead and direct the Banquet Servers, to organize the flow of work in a banquet, to initiate creative ideas for improving service, to resolve disputes and solve problems quickly and amicably and to have a fluency with Union rules governing the operations of banquets at the Hotel.  The Hotel had a legal right to determine that these were the qualifications it was looking for in a Banquet Captain and to select the individual it believed best exhibited all of these qualifications.  <u>Scaria v. Rubin</u>, 117 F.3d 652, 654-55 (2d Cir. 1997).  <u>See also</u> <u>Collette v. St. Luke's Roosevelt Hosp.</u>, 2002 WL 31159103, *11 (S.D.N.Y., September 26, 2002 (a Court must not "second guess the employer's assessment of the importance of various qualifications, absent some evidence that the asserted weighing was pretextual"); <u>Witkowich v. Gonzales</u>, <u>supra</u>, 541 F. Supp.2d at 582 ("An employer has the right to decide how it will value the various qualifications different candidates bring to the table").

    While plaintiffs have challenged the criteria used by the Hotel in selecting Mr. Laut, plaintiffs do not even agree with <u>each other</u> as to what criteria the Hotel should have used in selecting a Banquet Captain.  Plaintiff Bielinski asserts that the Hotel should have selected her based on her greater length of service <u>as a Banquet Server</u> at the Hotel and <u>because</u> she is a woman, a clearly unlawful basis for the decision.   Since she has never served as delegate, it is her belief that experience as a delegate is not a valid qualification for Banquet Captain and should not have been a consideration in Mr. Laut's selection.  Plaintiff Pardo, on the other hand, believes that the Hotel should have selected him based on his greater length of service <u>in the Hotel</u> and also believes that his experience serving as a delegate validly demonstrated his qualifications for the position.  Especially in light of plaintiffs' conflicting beliefs about the

qualifications for the single position for which they were competing (not only with Mr. Laut but also with each other), it would clearly be inappropriate for the Court or a jury to second-guess the Hotel's decision.

It is well settled that a plaintiff may not defeat summary judgment by claiming to have superior qualifications unless "the plaintiff's credentials ... [are] so superior ... that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate over the plaintiff for the job in questions.'" Byrnie v. Town of Cromwell Bd. Of Ed., 243 F.3d 93, 103 (2d Cir. 2001), quoting Deines v. Texas Dept. of Protective and Regulatory Servs., 164 F.3d 277, 280 -281 (5th Cir. 1999). See also, Witkowich v. Gonzales, supra, 541 F. Supp. 2d at 583. In the instant case, neither plaintiff claims that Mr. Laut was unqualified to be Captain or that he was so significantly less qualified that his selection was irrational. Both plaintiffs, in fact, deny knowledge of Mr. Laut's skills or how he performed in the interviews. Plaintiff Bielinski even concedes that Mr. Laut is qualified for the Captain position but believes – without specifying a reason – that she "would do a little better in general." Plaintiffs both concede that seniority, either as an employee of the Hotel or as a Banquet Captain, has never been used in the past to determine promotion to Banquet Captain. Furthermore, even if the length of an applicant's experience were a criterion, it is also undisputed that Mr. Laut has almost as many years of experience as a food server as plaintiffs – nine (9) years as a Banquet Server at the Hotel, ten (10) years as a Banquet and A La Carte Server at other Hotels and seven (7) years as a Server, Captain and Assistant Manager at another fine dining establishment. Clearly, Mr. Laut is not exactly the inexperienced novice that plaintiffs would have the Court believe.

It is also well settled that an employer may use subjective criteria, such as an employer's impressions of job applicants during an interview, in making hiring decisions. Byrnie v. Town

of Cromwell Bd. Of Ed., supra, 243 F.3d at 104;   Donahue v. Norwich Roman Catholic Diocesan

Corp., supra, 2008 WL at *3.  In the instant case, Hotel management weighed heavily the fact

that Mr. Laut was the only candidate who was able to offer concrete suggestions for improving

service.  In contrast, neither plaintiff could make any suggestions for improving service,

indicating that they had not given the matter thoughtful consideration while working as servers.

Plaintiff Pardo exhibited a lack of passion for and commitment to the position by acknowledging

– however sincerely – that he wanted the job because it would be physically less demanding and

more lucrative.  Plaintiff Bielinski failed to demonstrate leadership experience or problem-

solving skills or familiarity with Union rules and procedures, while Mr. Laut had extensive

leadership experience and was intimately familiar with Union rules and procedures.

   In the absence of evidence that an employment decision is based on impermissible

factors, a "court must respect the unfettered discretion to choose between qualified candidates."

Byrnie v. Town of Cromwell Bd. Of Ed., supra, 243 F.3d at 104.  A Court cannot act as a "super

personnel" department and second guess the merits of an employer's legitimate business

decisions.  Meachem v. Knolls Atomic Power Lab., 461 F.3d 134, 144 (2d Cir. 2006);  Byrnie v.

Town of Cromwell Bd. Of Ed., supra, 243 F.3d at 104;  Simms v. Oklahoma ex. rel. Dept. of

Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999).  By

questioning the criteria used by the Hotel and the judgment of Hotel management in selecting

another undisputedly qualified candidate, plaintiffs are asking this Court to do precisely what the

law prohibits – to substitute its judgment for the judgment of the Hotel.

   Plaintiffs place great weight on Mr. Laut's premature announcement that he had been

selected as Captain and his assertion that he was told so by Mr. Edmonds before the interview

process was completed.  Assuming for the purposes of this motion that this was not simply a

misunderstanding between Mr. Edmonds and Mr. Laut, it is undisputed that neither the Director of Catering, the General Manager, the Hotel Manager or the Director of Human Resources had even considered the final selection at that time and Mr. Laut was told immediately and in no uncertain terms that the Hotel had <u>not</u> completed the interview process, that <u>no</u> decision had been made and that he had <u>not</u> been selected.   Furthermore, as will be discussed below, even if Mr. Edmonds had made up his mind prematurely and conveyed his decision to Mr. Laut, there is no evidence whatsoever that his preference for Mr. Laut was based on either age or gender.   The fact remains that interviews continued after March 21, 2007 and the final selection was not made until Mr. Spinner had interviewed all six (6) semi-finalists, Mr. Kuenstle or Mr. Hommerich had interviewed all three (3) finalists and the ultimate selection was discussed among these management employees.

No matter how strongly plaintiffs may disagree with the Hotel's selection of Mr. Laut, "[e]vidence that an employer made a poor business judgment ... generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons." <u>Dister v. Continental Group, Inc.</u>, 859 F.2d 1108, 1116 (2d Cir. 1988).  The law against discrimination "does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating, for firing [or failing to promote] people on account of their [membership in a protected class]." <u>Norton v. Sam's Club</u>,  145 F.3d 114, 119-120 (2d Cir.), <u>cert. denied</u>, 525 U.S. 1001 (1998).

### E. Plaintiffs Provide No Evidence of Age or Gender Discrimination

Most significantly, even if plaintiffs had raised any triable issues of fact concerning the accuracy, wisdom or even fairness of the selection process, they have failed to raise any triable issues of fact that the Hotel's decision was motivated by age or, in plaintiff Bielinksi's case, gender.

Both plaintiffs acknowledge that no one in Hotel management – including Mr. Edmonds – ever made any derogatory comments about their age and plaintiff Bielinski further acknowledges that no one in management ever said anything derogatory about her gender. Neither plaintiff alleges that there was anything about the interview process or the interview questions themselves that were discriminatory.

According to plaintiff Bielinski, it was only Mr. Racic, age 65, who ever made any derogatory remarks to her, allegedly saying she was "too old" to be a Captain.[5]  Plaintiff Bielinksi also speculates that Mr. Racic does not like working with women.  She alleges no specific derogatory comments that Mr. Racic made to support that speculation and supports her conclusory assertion as follows: "Because it is the truth."  However, plaintiff Bielinski admits that Mr. Racic is the only person at the Hotel who ever made any disparaging comments or who has any gender-based animus and acknowledges that other Captains actually encouraged her to apply for the Captain position.  In any event, even if Mr. Racic (and Mr. Racic alone), who is four years plaintiff Bielinski's senior, expressed hostility to plaintiff Bielinksi based on age, Mr. Racic is a Union member, is not a management employee and had no role in the selection of Banquet Captain.

---

[5] Plaintiff Pardo's claim that the Captains told him he could carry a tray for many more years is hardly a negative comment about his age.  He makes no other claims that anyone at the hotel – management or otherwise – ever made a derogatory comment about his age.

In short, the <u>only</u> evidence of age or gender discrimination that plaintiffs can assert is that Mr. Laut is younger and, with respect to plaintiff Bielinski, is male. While this may be sufficient to meet plaintiffs' minimal burden at the prima facie stage, it is not sufficient to establish that age or gender motivated the Hotel's decision.  In <u>Donahue v. Norwich Roman Catholic Diocesan Corporation</u>, <u>supra</u>, 2008 WL 821890 at *3, referring to the age difference between plaintiff and the successful candidate, the Court concluded: "Despite creating an initial inference of discrimination, this evidence, without more, does not contradict the evidence of [plaintiff's] poor interview performance or show that this lawful excuse concealed a hiring decision motivated by unlawful discrimination." As the Second Circuit reasoned in <u>Norton v. Sam's Club</u>, <u>supra</u>, 145 F.3d at 119: "[Plaintiff's] weak prima facie case, combined with an at best highly dubious showing of pretext, that in itself does not implicate discrimination, is simply not enough to support a jury's conclusion."

Finally, there is ample evidence in the record that plaintiffs really believe that Mr. Laut was favored not because of his age or gender but because of undue influence by the Union. Plaintiff Bielinski's letters to Ms. Mancini and Union President Peter Ward do not mention age or gender, but focus on Mr. Laut's status as a delegate and membership on the Union's Delegate Assembly and accuses the Union of "not [being] a removed or remote bystander in this matter …."

Plaintiff Pardo, when asked for the basis of his belief that age was a factor in the Hotel's decision, responded: "It was just my feeling, my personal feeling…." Thus, all plaintiffs can offer as evidence of age or gender discrimination is speculation, surmise and conclusory assertions. But '[a p]laintiff cannot satisfy his burden of proof by offers of speculative beliefs and gut feelings." <u>Burrell v. Buntsen</u>, 1993 U.S. Dist. LEXIS 18005, *36 (S.D.N.Y, December 21, 1993). In <u>Norton v. Sam's Club</u>, <u>supra</u>, 145 F.3d at 119, the Second Circuit held that while a

24

plaintiff may rely on circumstantial evidence to prove discrimination, "a jury cannot infer discrimination from thin air. And thin air is all the plaintiff has produced…."

In this case, with only plaintiffs' unsupported, speculative and conflicting assertions that they are somewhat "more qualified" than Mr. Laut and with no evidence of any discriminatory words or conduct at any time by any of the decision-makers, plaintiffs claims rest only on their weak prima facie case – Mr. Laut's age and gender - and conclusory (and conflicting) assertions of discrimination, gut feelings and "thin air," which is not sufficient to defeat summary judgment.

## CONCLUSION

For all of the foregoing reasons, the Hotel submits that it is entitled to summary judgment, dismissing the Complaint in its entirety and granting the Hotel the costs and disbursements of this action, together with such other and different relief as to the Court may seem just and reasonable.

**Dated:  New York, N.Y.
        July 18, 2008**

                                   Respectfully submitted,

                                   **KANE KESSLER, P.C.**
                                   **Attorneys for Defendant**


                                   By:
                                   Judith A. Stoll (JS-9896)
                                   **1350 Avenue of the Americas**
                                   **New York, N.Y. 10019**
                                   **Tel.  (212)519-5165**
                                   **Fax:  (212)541-9799**
                                   **jstoll@kanekessler.com**

## AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS MAIL

STATE OF NEW YORK   )
                         ) ss.:
COUNTY OF NEW YORK  )

I, Cara M. Brownell, being duly sworn, say:

I am not a party to the within action, am over 18 years of age, and reside in Brooklyn, New York.

On July 18, 2008, I served the within:

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

by delivering a true copy thereof by Federal Express Mail, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of Fedex to the following:

Arthur Schwartz, Esq.
Schwartz, Lichten & Bright
275 Seventh Avenue
New York, New York 10001

_____
**Cara M. Brownell**

Sworn to before me this
18th day of July, 2008

_____
Notary Public

JUDITH A. STOLL
NOTARY PUBLIC, State of New York
No. 01ST4655884
Qualified in New York County
Commission Expires Dec. 31, 2009

#294298.1            2