UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

GRISELDA BIELINSKI and MARIO PARDO,   07 Civ. 11636 (SS)(JCF)

                                  Plaintiffs,   PLAINTIFFS' RULE 56.1(A)
                                                        STATEMENT OF MATERIAL
              - against -   FACTS IN DISPUTE

HOTEL PIERRE,

                                  Defendant.

------------------------------------------------------------------ x

       Plaintiffs, pursuant to Local Civil Rule 56.1(a) of the United States District Court for the Southern District of New York, either admit or dispute the Statement of Material Facts submitted by defendant in support of its summary judgment motion.

       1.     The Hotel is a luxury transient hotel and cooperative apartment building located at 2 East 61st Street in New York, New York (Mancini Aff., ¶2).

       RESPONSE:

       Admitted.

       2.     The Hotel is bound by the terms of a collective bargaining agreement, known as the Industry- Wide Agreement (the "IWA"), between the Hotel Association of New York City, Inc. and the New York Hotel & Motel Trades Council, AFL-CIO (the "Union") which governs the terms and conditions of employees who are members of the Union (Mancini Aff., ¶3).

       RESPONSE:

       Admitted.

       3.     Plaintiffs commenced this action by filing a Complaint on or about December 28, 2007, alleging that they were denied a promotion to Banquet Captain at the Hotel on the basis of their age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623, New York Executive Law, (the "New York State Human Rights Law" or 'NYSHRL"), §296(i) et seq., and the New York City Human Rights Law ("NYCHRL"), §8-107(i). Plaintiff Bielinski also alleges that she was denied the promotion because of her gender, in violation of Title VII of

the Civil Rights Act, 42 U.S.C., 2000e-2(a), the NYSHRL and the NYCHRL (Mancini Aff., ¶4, Ex. A).

RESPONSE:

Admitted.

4. The Hotel served and filed an Answer to the Complaint on or about January 24, 2008. (Mancini Aff., ¶4, Ex. B).

RESPONSE:

Admitted.

5. The Hotel's Banquet Department caters and services banquet functions in the Hotel's Ballroom, Cotillion Room and various meeting rooms (Mancini Aff., ¶5).

RESPONSE:

Admitted.

6. Banquet Servers (steady extra servers) are all members of the Union and the terms and conditions of their employment are governed by the IWA (Mancini Aff., ¶6).

RESPONSE:

Admitted.

7. Banquet Captains assist the Banquet Headwaiter in directing and coordinating the work of the Servers before, during and after the banquet function (Mancini Aff., ¶6).

RESPONSE:

Admitted.

8. Captains also serve as a liaison between the service staff and the guest, responding to complaints, special requests and other matters that may arise during the function (Mancini Aff., ¶76).

RESPONSE:

Admitted.

9. While a Banquet Captain must have extensive experience and knowledge of banquet service, he or she must also have substantial leadership, organizational and problem-solving skills, must be articulate and poised in responding to guest requests and complaints and must understand and be proficient in Union rules and with all the protocols of banquet service, including payroll, scheduling and service standards.

RESPONSE:

Admitted.

10. Banquet Captains are not selected solely on the basis of their seniority as Banquet Servers (Mancini Aff., ¶7).

RESPONSE:

Admitted.

11. Captains are not management employees and do not have the authority to hire, fire, discipline or alter any of the terms and conditions of the Banquet Servers' employment (Mancini Aff., ¶8).

RESPONSE:

Disputed. Captains are management employees and agents of the hotel. See Bielinsky Declaration at ¶1; Pardo Declaration at ¶1; Racic deposition at pages 6-8 (annexed as Exhibit A).

12. At the end of 2006, one of the individuals who had been working as a Banquet Captain retired from his employment (Mancini Aff., ¶9).

RESPONSE:

Admitted.

13. Twelve (1 2) current A List Banquet Servers applied for the vacant position, including plaintiffs and Jay Laut (Mancini Aff., ¶9, Ex. C ).

RESPONSE:

Admitted.

14. Plaintiff Bielinski is currently 61 years old and has worked as an A List Banquet Server at the Pierre since 1985.

RESPONSE:

Admitted.

15.     Plaintiff Pardo is currently 59 years old and has worked at the Hotel since 1969, first as a Room Service Busser, then Room Service Server and, since 1986, as an A List Server.

RESPONSE:

Admitted.

16.     Mr. Laut is currently 45 years old and was hired by the Hotel in 1998 as a B List Server and promoted to the A List in 2005.

RESPONSE:

Admitted, although plaintiffs wish to note that a B List Server is a part-time position, and that Mr. Laut was working elsewhere full time while working at the Pierre part-time. He only became a full-time server at the Pierre in 2005. Bielinsky Declaration at ¶2; Pardo Declaration at ¶2; Laut deposition at p. 8 (annexed to the Schwartz Declaration as Exhibit B).

17.     According to his resume, Ms. Laut also worked for five (5) years as a Banquet Server/Captain at the Regent Wall Street and another five (5) years as a Banquet ServerIA La Carte Server at the Rihga Royal Hotel. From 1985 to 1992, Mr. Laut worked as a Captain and Assistant Manager at Au Mandarin Restaurant (Mancini Aff., ¶0, Ex. C).

RESPONSE:

Admitted.

18.     On or about February 2 1, 2007, Yvonne Mancini, the Hotel's Director of Human Resources, received a letter from plaintiff Bielinski in which she expressed concerns about the selection process and her belief that "an individual who is working with us for 3 years; also is a member of the Board of Director at our Union" had already been chosen for the Captain's position, "creating a conflict of interest" with the Union. (Mancini Aff., ¶1, Ex. D).

RESPONSE:

Admitted.

19. Mr. Laut is a member of the Union's Delegate Assembly (Mancini Aff., ¶2).

RESPONSE:

Admitted.

20. The Hotel developed a three-stage interview procedure for the Banquet Captain position. (Mancini Aff., ¶2).

RESPONSE:

Denied. Ms. Mancini developed a three-stage interview procedure for the position.

21. For the first stage of the process, Christopher Edmonds, Banquet Headwaiter (a management employee), interviewed all twelve (12) applicants (Mancini Aff., ¶2).

RESPONSE:

Admitted.

22. Ms. Mancini provided Mr. Edmonds with a Functional Competencies Interview Form (Mancini Aff., ¶2).

RESPONSE:

Admitted.

23. The Functional Competencies Interview involves a number of pre-established questions that are designed to elicit information about how the candidate handled specific situations in the past as a predictor of future behavior (Mancini Aff., ¶2).

RESPONSE:

Admitted.

24. Six (6) applicants rated "Satisfactory" or better at this stage, including both of the plaintiffs and Mr. Laut (Mancini Aff., ¶3, Ex. E).

RESPONSE:

Admitted.

25. On plaintiff Bielinski's Interview Guide, Mr. Edmonds noted that she talked about the "division of sexes" and that her answers were "not too detailed" (Mancini Aff., ¶3, Ex. E).

RESPONSE:

Admitted.

26. On plaintiff Pardo's Interview Guide, Mr. Edmonds noted "Not enough. Didn't fully answer questions. No specific examples." (Mancini Aff., ¶3, Ex. E).

RESPONSE:

Admitted.

27. Mr. Edmonds rated Mr. Laut as "Strength" (Mancini Aff., ¶4, Ex. E).

RESPONSE:

Admitted.

28. On Mr. Laut's Interview Guide, Mr. Edmonds noted "Gave detailed answers." (Mancini Aff., ¶14, Ex. E).

RESPONSE:

Admitted.

29. William Spinner, Director of Catering, then interviewed each of the six (6) candidates who had passed the first stage (Mancini Aff., ¶5).

RESPONSE:

Disputed. Spinner interviewed Laut first, and before any others were interviewed, Edmonds told Laut that he had the job. Laut announced his appointment on around March 12, 2007, and suited up and worked as a Captain on March 21, 2007. After plaintiffs complained, Laut was asked to step back and additional interviews followed. Bielinsky Declaration at ¶4; Pardo Declaration at ¶4; Laut deposition, Exhibit B, at pages 12-23.

6

30. Mr. Spinner asked each candidate the same three sets of questions related to the candidate's work history and experience; the candidate's knowledge of the position of Banquet Captain; and the candidate's suggestions for ways in which the Banquet Captain can improve service and the guests' experience (Mancini Aff., ¶5, Ex. G).

RESPONSE:

Admitted.

31. At the end of his interviews, Mr. Spinner recommended only three (3) of the candidates, both of the plaintiffs and Mr. Laut, for further interview with the General Manager or Hotel Manager (Mancini Aff., ¶6).

RESPONSE:

Admitted.

32. Mr. Spinner's summary of his interview with plaintiff Bielinski noted that she was very experienced and knowledgeable as a server and well spoken, but that she had had little interaction with management/union issues, never served as a delegate and did not suggest any ways in which she would be able to improve service as a Captain (Mancini Aff., ¶6).

RESPONSE:

Admitted.

33. Mr. Spinner's summary of his interview with plaintiff Pardo indicated that he was also very experienced and knowledgeable as a server, that he was familiar with management/union issues and had served as a delegate, but that he did not suggest any ways in which he would be able to improve service as a Captain (Mancini Aff., ¶8, Ex. G).

RESPONSE:

Admitted.

34. Mr. Spinner's summary of his interview with Laut indicated that he was very experienced and knowledgeable as a server, well spoken, had thorough knowledge of management/union issues and had served as a delegate and that he "[m]ade constructive suggestions as to new ways a Captain can contribute to the improvement of service; [d]iscussed specific ways we could schedule staff to increase service at cocktail receptions." (Mancini Aff., ¶19).

RESPONSE:

Admitted.

35. Both plaintiffs were then interviewed by Christian Hommerich, Hotel Manager (Mancini Aff., ¶20).

RESPONSE:

Admitted.

36. Mr. Hommerich's notes of his interview with plaintiff Bielinski indicate that she answered his questions thoroughly and that she was very knowledgeable about banquet service (Mancini Aff., ¶20, Ex. I).

RESPONSE:

Disputed, in part. Mr. Hommerich's notes, annexed to the Schwartz Declaration as Exhibit C, indicate that Ms. Bielinski also had numerous suggestions of ways to improve service.

37. Mr. Hommerich's notes of his interview with plaintiff Pardo indicate that when Mr. Hommerich asked him why he wanted to move to a Captain's position, plaintiff Pardo responded that he was getting old and that in the Captain's position he would no longer have to carry heavy weights and would be better able to take care of his family financially (Mancini Aff., ¶20, Ex. I).

RESPONSE:

Admitted.

38. Mr. Kuenstle interviewed Mr. Laut (Mancini Aff., ¶21).

RESPONSE:

Admitted.

39. Mr. Kuenstle's notes indicate that Mr. Laut gave specific examples of his leadership ability in a clear and concise manner and gave various suggestions on how to improve service. In summary, he concluded: "Strong candidate; provided specifics; strong qualifications." (Kuenstle Aff., ¶8, Ex. A).

RESPONSE:

Admitted.

40.    After all of the interviews were concluded, there were a number of discussions among Mr. Spinner, Mr. Kuenstle, Mr. Hommerich, Mr. Edmonds and Ms. Mancini about who was the best candidate for the Banquet Captain position (Mancini Aff, 7 22, Kuenstle Aff., ¶3).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

41.    During these discussions, Mr. Edmonds expressed the opinion that Mr. Laut gave the most detailed and specific answers in his interview and in Mr. Edmonds' view was by far the strongest candidate (Kuenstle Aff., ¶4; see also Exs. E and F annexed to the Mancini Aff.).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

42.    Mr. Spinner weighed heavily the fact that Mr. Laut was the only applicant who was able to give detailed and concrete suggestions for improving banquet service, specifically that he suggested changing the way servers are assigned at cocktail receptions to improve efficiency (Kuenstle Aff., ¶5; see also Exs.G and H annexed to the Mancini Aff.).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

43.    Mr. Spinner also noted that Mr. Laut gave the clearest, most direct answers to his questions and that as a Union delegate, he was very familiar with Union rules and procedures and had exhibited leadership ability (Kuenstle Aff., ¶6; see also Exs. G and H annexed to the Mancini Aff.).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

44.    Mr. Hommerich reported that when he interviewed plaintiff Pardo, he stated that he wanted the promotion so that he would not have to carry heavy trays and could make more money (Kuenstle Aff., ¶7; see also Exs. I and J annexed to the Mancini Aff.).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

45. It was agreed among the managers that this response was unacceptable, that it indicated a lack of passion and commitment to the job and that plaintiff Pardo should be eliminated from consideration (Kuenstle Aff., ¶7; see also Exs. I and J annexed to the Mancini Aff.).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

46. Mr. Kuenstle was extremely impressed by Mr. Laut's service knowledge, communication skills, commitment to the job and to the Hotel and his understanding of the responsibilities inherent in the position of Banquet Captain (Kuenstle Aff., ¶8).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

47. Mr. Kuenstle was also impressed with the fact that Mr. Laut had given careful thought to how he would make a valuable contribution to the Hotel as a Banquet Captain (Kuenstle Aff., ¶8).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

48. Mr. Kuenstle knew plaintiff Bielinski to be a skilled and knowledgeable server, but also knew that she had never served as a delegate, was not knowledgeable about Union rules and had never shown the leadership skills the Hotel was looking for (Kuenstle Aff., ¶9).

RESPONSE:

Disputed. In his deposition (Schwartz Declaration at Exhibit D), Kuenstle testified that Christian Hommerich reported to him that Ms. Bielinski was dedicated and service oriented. He may have also said she was passionate and said that she was either excellent or superb. (Exhibit D at page 18.)

49. Mr. Kuenstle took into consideration that Mr. Laut had been chosen by the Banquet Servers to serve as their delegate (Kuenstle Aff., ¶10).

RESPONSE:

Plaintiffs have no knowledge about what Mr. Kuenstle considered.

50. Mr. Kuenstle believes that his selection as a delegate meant that Mr. Laut commanded the respect of the Banquet Servers and that they recognized him as leader whose direction they would follow as Banquet Captain (Kuenstle Aff., ¶10).

RESPONSE:

Plaintiffs have no knowledge about what Mr. Kuenstle believes.

51. Mr. Kuenstle also believes Mr. Laut had articulated in detail during his interview how he had solved conflicts and reached compromise in his role as delegate and had exhibited to Mr. Kuenstle that he possessed and had exercised the leadership and problem-solving skills that are so critical to success as a Banquet Captain (Kuenstle Aff., ¶10).

RESPONSE:

Plaintiffs have no knowledge about what Mr. Kuenstle believes.

52. Following these discussions, it was the unanimous opinion of these managers that Mr. Laut was the best qualified candidate for the position (Kuenstle Aff., ¶1).

RESPONSE:

Plaintiffs have no knowledge about what was stated during these meetings.

53. The current Banquet Captains played no role in the selection process (Kuenstle Aff., ¶13).

RESPONSE:

Disputed. Each of the Captains approached Mr. Edmonds to advise him who they thought was the best candidate. Edmonds deposition at Page 28; Schwartz Declaration, Exhibit E.

54. Mr. Laut's promotion was officially announced on April 17, 2007 (Mancini Aff., ¶22).

RESPONSE:

Admitted.

55. On Saturday, March 17, 2007 -St. Patrick's Day -Mr. Laut announced to the assembled Banquet Servers that he was resigning his position as Union delegate and that he had been selected as Banquet Captain (Mancini Aff., ¶23).

RESPONSE:

Admitted.

56. Ms. Mancini was not in the Hotel at the time, nor was Mr. Spinner, Mr. Kuenstle or Mr. Edmonds (Mancini Aff., ¶24).

RESPONSE:

Denied. Laut testified that he checked with Edmonds before making the announcement. Laut deposition (Schwartz Declaration, Exhibit C) at page 16.

57. On Monday, March 19, 2007, several of the applicants, including both of the plaintiffs, went to Ms. Mancini's office and told her what had occurred over the weekend (Mancini Aff., ¶42).

RESPONSE:

Admitted.

58. Ms. Mancini assured these employees that Mr. Laut had not been selected and that the interview process had not been completed. She promised that she would look into the situation and find out what happened (Mancini Aff., ¶24).

RESPONSE:

Admitted.

59. Ms. Mancini met with Mr. Laut on March 21, 2007, the first day he was at work after St. Patrick's Day (Mancini Aff., ¶25).

RESPONSE:

Denied. Mr. Laut arranged for a Captain's tuxedo to be ready for him on March 20, 2007, after being told by Captain Eddie Lezcano that he was on the schedule for March 21, 2007. On March 21, Laut suited up and worked as a captain. Laut deposition at pages 16-19.

60. She told him that he had not, in fact, been selected as Captain and asked him how he came to believe he had been (Mancini Aff., ¶25).

RESPONSE:

Admitted.

61. Mr. Laut said that he had been told by Mr. Edmonds that he had been selected (Mancini Aff., ¶25).

RESPONSE:

Admitted.

62. Ms. Mancini was not able to speak to Mr. Edmonds until he returned from a leave of absence about 10 days later (Mancini Aff., ¶26).

RESPONSE:

Admitted.

63. Mr. Edmonds denied that he had told Mr. Laut that he had been selected for the Captain position (Mancini Aff., ¶26).

RESPONSE:

Plaintiffs do not know what Mr. Edmonds told Ms. Mancini.

64. Mr. Edmonds said that he had specifically told Mr. Laut that the interview process had not been completed and that no decision had been made but acknowledged telling Mr. Laut that he was impressed with his interview and that he was a strong candidate (Mancini Aff., ¶26).

RESPONSE:

Disputed. See Laut deposition at pages 13-15.

13

65. Sometime during the week of March 19, 2007, Ms. Mancini received copies of two (2) letters plaintiff Bielinski had written to Peter Ward, President of the Union, complaining about the perceived unfairness of the selection process, complaining about comments allegedly made to her by one of the Captains and complaining that the Union was "not a remote or removed bystander" in the selection (Mancini Aff., ¶27, Ex. K).

RESPONSE:

Admitted.

66. Plaintiff Bielinski never mentioned these alleged comments by the Banquet Captain to Ms. Mancini or anyone else in Hotel management (Mancini Aff., ¶27).

RESPONSE:

Denied. See Bielinsky Declaration at ¶5.

67. Plaintiff Bielinski testified at her deposition that she believes she is more qualified than Mr. Laut because she has worked as a Banquet Captain at the Hotel for 22 years and that Mr. Laut had been an A List Banquet Server for only three (3) years (Mancini Aff., ¶29, Es. L, Bielinski Tr., p. 80-83).

RESPONSE:

Admitted.

68. She also testified that she believes she is more qualified because of "the way I take care of guests." She also testified that she does not believe that experience as a delegate should have been a criterion for the Captain position (Mancini Aff., ¶29, Ex. L, Bielinski Tr., p. 82-85).

RESPONSE:

Admitted.

69. Finally, plaintiff Bielinski testified that she is more qualified than Mr. Laut because she is a woman, since "the hotel needs a woman as captain." (Mancini Aff., ¶29, Ex. L, Bielinski Tr., p. 84-85).

RESPONSE:

Admitted.

70.     Plaintiff Bielinski testified that she does not knows Mr. Laut's skills, only her own (Mancini Aff., ¶30, Ex. L, Bielinski Tr., p. 106). When asked if she believed that Laut had knowledge of the Captain's position, she responded: "I didn't test him, I don't know .... I know my qualifications." Mancini Aff., ¶30, Ex. L, Bielinski Tr., p. 107) (emphasis added).

RESPONSE:

Admitted.

71.     Plaintiff Bielinski testified that Mr. Laut knows how to handle the Captain's job and that he is qualified for the position, but that she believes she "would do a little better in general" (Mancini Aff., ¶31, Bielinski Tr., pp. 98-99).

RESPONSE:

Admitted.

72.     She also testified that she did not know how Mr. Laut had answered questions during his interviews for the Banquet Captain position (Mancini Aff., ¶31, Ex. L, Bielinski Tr., p. 99).

RESPONSE:

Admitted.

73.     When plaintiff Pardo was asked why he believed he was more qualified than Mr. Laut, he also referred only to his own knowledge and his relationship with long-term guests (Mancini Aff., ¶32, Ex. M, Pardo Tr., pp. 57-58).

RESPONSE:

Admitted.

74.     Plaintiff Pardo testified that he had served as a Union delegate and that he believes service as a delegate is a criterion for selection as Banquet Captain "[b]ecause you know how to handle problems between management and union members. Because you have experience if there is a conflict, you have to resolve it right there." (Mancini Aff., ¶32, Ex. M, Pardo Tr., pp. 58-59).

RESPONSE:

Admitted.

75. Plaintiff Pardo testified that he believes length of employment at the Hotel should be the most important criterion in selecting a Banquet Captain and for that reason, should have been selected before plaintiff Bielinski (Mancini Aff., ¶33, Ex. M, Pardo Tr., pp. 66-67).

RESPONSE:

Admitted.

76. Plaintiff Pardo testified that Mr. Laut has knowledge of banquet service (Mancini Aff., ¶34, Ex. M, Pardo Tr., p. 68).

RESPONSE:

Admitted.

77. He also conceded that he does not know how Mr. Laut answered questions during the interview process (Mancini Aff., ¶34, Ex. M, Pardo Tr., p. 68).

RESPONSE:

Admitted.

78. Plaintiff Bielinski admits that no one in management at the Hotel ever made any negative comments about her gender (Mancini Aff., ¶35, Ex. L, Bielinski Tr., pp. 53, 56-57, 60-61).

RESPONSE:

Admitted, in part. Ms. Bielinski heard gender and age negative comments from Banquet Captains, who are part of management. See Bielinski Declaration at ¶¶1 and 5.

79. She bases her belief that she was subjected to gender discrimination primarily on negative comments allegedly made by one of the Banquet Captains, Jack Racic, who she accused of not liking to work with women "[b]ecause it is the truth." (Mancini Aff., ¶36, Ex. L, Bielinski Tr., pp. 40-41).

RESPONSE:

Admitted.

80. Plaintiff Bielinski also testified that <u>none of the other Captains</u> have a problem working with women, only Mr. Racic (Mancini Aff., ¶36, Ex. L, Bielinski Tr., pp. 48-49).

RESPONSE:

Admitted.

81.    Plaintiff Bielinski testified that several of the Captains <u>encouraged</u> her to apply for the position (Mancini Aff., ¶36, Ex. L, Bielinski Tr., pp. 45-49).

RESPONSE:

Admitted.

82.    Plaintiff Bielinski also testified that she believes she was discriminated against on the basis of gender because she is a woman and Mr. Laut is not, and he got the job (Mancini Aff., ¶37, Ex. L, Bielinski Tr., p. 96).

RESPONSE:

Admitted.

83.    Finally, when asked whether she believed she was denied the job because of her gender, plaintiff Bielinski responded: "No idea why they denied me without an explanation." (Mancini Aff, ¶37, Ex. L, Bielinski Tr., p. 95).

RESPONSE:

Admitted.

84.    Both plaintiffs acknowledge that no one in Hotel management ever said anything about her or his age (Mancini Aff., ¶38, Ex. L, Bielinski Tr., pp. 53, 60-61; Ex. M, Pardo Tr., pp. 43-44).

RESPONSE:

Admitted.

85.    Plaintiff Bielinski testified that the only reason she believes she was discriminated against on, the basis of age is that Banquet Captain Jack. Racic (who is currently 65 years old) said that she is too old to be a Captain. (Mancini Aff. ¶39, Ex. L, Bielinski Tr. pp. 37-39, 97).

RESPONSE:

Admitted.

86. Plaintiff Bielinski testified that Mr. Racic is the only person who ever made any negative comments about her (Mancini Aff., ¶2, Es. L, Bielinski Tr., p. 97).

RESPONSE:

Admitted.

87. When asked if any of the Captains made any comments about his age, plaintiff Pardo replied that the Captains told him he had many more years to carry a tray (Mancini Aff., ¶40, Ex. M, Pardo Tr., pp. 44-45).

RESPONSE:

Admitted.

88. Plaintiff Pardo testified that he responded to Mr. Hommerich's inquiry about why he wanted the Banquet Captain position by saying that he was getting old and that as a Banquet Captain he would not have to carry so much weight and that he would be able to better take care of his family by making more money. (Mancini Aff., ¶40, Ex. M, Pardo Tr., pp. 42-43).

RESPONSE:

Admitted.

89. Plaintiff Pardo also testified as follows about why he believes he was discriminated against on the basis of age:

> A:   Well, I feel like I'm 58 -I'm going on 58. The person that they choose was 38 years old. So they prefer a younger person, the other waiters that have applied.
>
> Q:   But nobody said anything to you that would lead you to believe that age was a factor, did they?
>
> A:   No. It was just my feeling, my personal feeling.

(Mancini Aff., ¶41, Ex. M, Pardo Tr., p. 65).

RESPONSE:

Admitted.

90. Plaintiff Bielinski testified that the Banquet Captains allegedly preferred Mr. Laut because he is a delegate and he is on the Board of the Union. (Mancini Aff., ¶43, Ex. P, Bielinski Tr., p. 65).

RESPONSE:

Admitted.

91.     Plaintiff Pardo testified that he believes that the Union itself had influenced the decision to select Mr. Laut not because Mr. Laut was a delegate and that every Captain that has been selected has been a delegate (Mancini Aff., ¶43, Ex. M, Pardo Tr., pp. 63-64).

RESPONSE:

Admitted.

Dated:  New York, New York
        September 8, 2008

                                        SCHWARTZ, LICHTEN & BRIGHT, P.C.
                                        Attorneys for Plaintiffs

                                        By: _____
                                            Arthur Z. Schwartz (AZS 2683)
                                            275 Seventh Avenue, 17th Floor
                                            New York, New York 10001
                                            (212) 228-6320