UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

GRISELDA BIELINSKI and MARIO PARDO,

                              Plaintiffs,        07 Civ 11636 (SS)

      - against -

THE HOTEL PIERRE,

                              Defendant.

------------------------------------------------------------- X

PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

This Memorandum of Law is submitted in opposition to defendant's Motion for Summary Judgment on the Complaint and its Counterclaims.

STATEMENT OF FACTS

Most of the facts underlying this litigation are not in dispute. The following are pertinent facts which are in dispute or which were not discussed by defendant.

    1.    Plaintiffs assert, based on their more than 20 years of work as Banquet Servers at the Hotel Pierre, that Banquet Captains are part of management. They supervise servers, set the hours of servers, determine the work assignments of servers, and critique the work of servers. Bielinski and Pardo Declarations at ¶1.

2.      Jay Laut did not become a full-time employee of the Pierre until 2005, when he became an "A List" waiter. All of his previous work was part-time, sporadic work as a relief, or part-time waiter, working off of what is known as the "B List." Laut deposition at pages 6-8.

3.      Plaintiff Bielinski, right after the posting for the Banquet Captain position occurred, had conversations with Captains about her desire to be promoted into the job. Jack Racic, one of the most senior Captains, told her, "You are too old to be named Captain," and "you are nothing more than a coffee shop waitress." Racic told her "we are really the ones who make the decisions on promotions at this department." Ms. Bielinski reported these comments to her union on March 16, 2007, and to Ms. Mancini of the Pierre Human Resources Department on March 19, 2007. (See Bielinski Declaration at ¶5 and Exhibit G.)

4.      Ms. Bielinski and Mr. Pardo complained as early as February 21, 2007 that Mr. Laut had been promised the Banquet Captain job. Bielinski Declaration at ¶6 and Exhibit H.

5.      At the March 19, 2007 meeting with Ms. Mancini, Ms. Bielinski referenced the fact that she had been denigrated by one of the Captains because of her age.

6.      Jay Laut, after being told by Chris Edmonds that he had the job, announced his appointment to the Banquet Captain position on March 17, 2007, before Bielinski or Pardo received their second interview for the position. Bielinski and Pardo complained around March 19, 2007 in writing (Bielinski and Pardo Declarations, Exhibit F), and in person. Nevertheless, on March 21, Mr. Laut was given a Captain's tuxedo, put on the Captains' schedule, and worked as a Captain. Bielinski and Pardo Declarations at ¶2, Laut deposition at pages 13-21.

7.      Mr. Laut had only been a full-time employee for two years when the application process occurred. Ms. Bielinski and Mr. Pardo had been A List servers for more than 20 years.

2

8. In February 2007, just prior to the job posting, the Pierre management prepared "Employee Development Reviews" for all of the Servers. Ms. Bielinski's was the only one whose "Career Planning" section stated that she would be "a strong candidate" for the position of Banquet Captain. Mr. Pardo's ratings were, overall, higher than Mr. Laut's. See Bielinski and Pardo Declarations, Exhibits J, K, and L.

## ARGUMENT

### SUMMARY JUDGMENT IN THIS MATTER IS INAPPROPRIATE.

Summary judgment is proper only "if the pleadings, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Upon consideration of a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court is required to view the evidence presented by the movant in the light most favorable to the non-moving party. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). Accordingly, "summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." Leon v. Murphy, 988 F.2d 303, 308 (2d Cir. 1993).

# POINT I

## SUMMARY JUDGMENT IS NORMALLY INAPPROPRIATE IN EMPLOYMENT DISCRIMINATION CASES WHERE THE EMPLOYER'S INTENT IS A MATERIAL ISSUE IN DISPUTE.

Time after time, in cases involving motive, the Second Circuit has had to reverse grants of summary judgment in employment discrimination actions. E.g., Kerzer v. Kingly Mfg., 156 F.3d 396 (2d Cir. 1998); Danzer v. Norden Systems, Inc., 151 F.3d 50 (2d Cir. 1998); Stern v. Trustees of Columbia Univ., 131 F.3d 305 (2d Cir. 1997); Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81 (2d Cir. 1996); Quaratino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995); Sutera v. Schering Corp., 73 F.3d 13 (2d Cir. 1995); Cronin v. Aetna Life Ins. Co., 46 F.3d 196 (2d Cir. 1995); Chambers v. TRM Copy Centers Corp., 43 F.3d 29 (2d Cir. 1994). The Court of Appeals has gone so far as to write, evidently in some measure of frustration, "Considering how often we must reverse a grant of summary judgment, the rules for when this provisional remedy may be used apparently need to be repeated." Gallo v. Prudential Residential Services, 22 F.3d 1219, 1223 (2d Cir. 1994)(reversing summary judgment in age discrimination case involving corporate reorganization).

Those rules, of course, are exceedingly stringent:

> Such relief may be granted only when the movant carries its burden of demonstrating there is no genuine issue of material fact for trial . . .. No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor.

Chertkova, 92 F.3d, at 86 (citing Fed.R.Civ.P. 56(c); Celetex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo, 22 F.3d, at 1224).

> Moreover, the Court has also emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue. Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant . . . materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination.

Chertkova, 92 F.3d, at 87 (citations omitted). See also, Gallo, 22 F.3d, at 1224 ("when deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations should be taken into account").

Even in cases involving layoffs in the context of corporate restructurings, these restrictive standards apply. In reversing a grant of summary judgment in an age discrimination action, the Second Circuit has simply stated, "'[E]ven during a legitimate reorganization . . ., an employer may not [take adverse action against] employees for unlawful discriminatory reasons.'" Maresco v. Evans Chemetics, 964 F.2d 106, 111 (2d Cir. 1992)(quoting Hagelthorn v. Kennecott Corp., 710 F.2d 76, 81 (2d Cir. 1983); other citations omitted); see, Danzer, 151 F.3d, at 55 (valid ADEA claim where plaintiff's position eliminated). In one case similar to the instant matter, the Second Circuit, reversing a grant of summary judgment, held,

> A plaintiff . . . may prevail notwithstanding the fact that his . . . job was eliminated as part of a corporate reorganization . . . . A finder of fact is permitted to draw an inference of age discrimination from evidence that, in implementing such a reorganization . . ., the employer has located new positions for younger, but not older, employees.

Cronin, 46 F.3d, at 204 (citations omitted). In this case, where a 40-year-old employee, with two years of experience at the Pierre, was promoted into a management position over two employees with over 20 years of experience, who were around 60, a singular inference can be drawn.

Similarly, the fact that one of the plaintiffs was touted as ready for promotion and then was passed over for a male employee, for a position which the defendant has never filled with a man, provides sufficient evidence from which sex discrimination may be inferred.

### POINT II

### A REASONABLE JUROR COULD CONCLUDE THAT PLAINTIFF HAS MET HIS DE MINIMIS BURDEN OF ESTABLISHING A PRIMA FACIE CASE.

The standard method of analyzing discrimination cases is the familiar McDonnell Douglas test. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973). Under this framework, plaintiff's initial burden is limited to demonstrating a prima facie case. In an age discrimination action involving a reorganization, the Second Circuit has described the prima facie case as follows: (1) the employee belongs to the protected age group; (2) he "was qualified to assume [the] position had it been available;" (3) the employer did not select the employee; and (4) the action "occurred under circumstances suggesting that age was a factor." Gallo, 22 F.3d, at 1224 (citing Maresco, 964 F.2d, at 110-11).

The plaintiffs' burden of proof at the prima facie stage has been described as "de minimis," id., at 1225, "light," Chertkova, 92 F.3d, at 87 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)), and "not onerous." Burdine, 450 U.S., at 253.

> Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances "giv[e] rise to an inference" of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn.

Chambers, 43 F.3d, at 38.

The parties do not dispute the establishment of these prima facie elements. They concede that plaintiffs were qualified to be Banquet Captains, that they were 20 years older than the successful candidate, and that they were not chosen, and that, in Ms. Bielinski's case (involving sex discrimination), a male was chosen instead of her. Def. Mem., at 17.

### POINT III

### A REASONABLE JUROR COULD FIND THAT DEFENDANT'S PROFFERED EXPLANATIONS ARE NOT THE SOLE REASONS FOR ITS DECISIONS.

Once plaintiff presents a prima facie case, "a presumption of unlawful discrimination arises." Chertkova, 92 F.3d, at 87 (citations omitted). The employer must then articulate a legitimate reason for the adverse action. Burdine, 450 U.S., at 254. At that point, summary judgment can only be granted if "no rational trier of fact could find the articulated basis for the [adverse action] to be a pretext for discrimination." Sutera, 73 F.3d, at 16.

> However, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the "motivating" factors. . . . [U]nless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial.

Cronin, 46 F.3d, at 203 (citations omitted).

Defendant here has offered nondiscriminatory rationales for its choice of Laut, which essentially boil down to the idea that he performed better in the three-step interview process

created by the hotel's Human Resource Department. This contention is sharply disputed by plaintiffs, and genuine issues of material fact predominate.

      a.      Plaintiffs contend that they were far more qualified than Laut for the position. Each had over 20 years at the hotel as servers; in face, Mr. Pardo had nearly 30 years. Mr. Laud had been a full-time employee for only two years.

      b.      In evaluations issued by management just prior to the job posting, Ms. Bielinski had been the only one of the three whose "Career Planning" section of the evaluation that she was a "strong candidate for the position of Banquet Captain." Mr. Pardo's evaluation had more categories checked "exceeds expectations" than Mr. Laut's did.

      c.      Defendants base their entire case on the three-step interview process which they claim determined who was the better candidate. This process itself was wholly subjective and the reasons stated in Mr. Kuenstle's declaration were wholly based on a discussion of what his subordinates told him abut their interview sessions with the plaintiffs. However, there is a dispute about whether the three-step process was even genuine. Mr. Laut testified that after being interviewed by Mr. Edmonds and Mr. Spinner, he was told that he had the job, was put on a schedule, and worked. Spinner hadn't even interviewed plaintiffs. Only after plaintiffs complained, alleged age and sex discrimination, and revealed derogatory comments from Banquet Captains about Ms. Bielinski's age and sex, was the Laut promotion pulled back and the interview process renewed. The cat, however, was out of the bag, and, in fact, Mr. Kuenstle, the alleged ultimate decision-maker, did not even interview the plaintiffs. He left that to a subordinate. Furthermore, in his deposition, he was unclear about whether he knew how long the employees had worked for the Pierre.

      d.      Plaintiffs have asserted that the existing Banquet Captains are part of management, they all weighed in on the appointment process before the interviews began, and that at least one made disparaging remarks about Ms. Bielinski's age and sex. Many of these factual assertions are in dispute, but, in the context of a summary judgment motion, must be credited by the court.

      These facts and/or factual disputes undermine the defendant's assertion that its selection process was objective and bias-free. Such a material dispute is the essence of trials, not summary judgment.

      A rational juror would have more than enough evidence to conclude that both plaintiffs' qualifications and experience dwarfed those of Laut, and that therefore the Pierre's stated reasons for Laut's selection were not the only reasons. A genuine issue of fact therefore exists concerning the Pierre's true state of mind. Plaintiffs' above-mentioned evidence, including the direct evidence of biased remarks, is to be considered in determining whether defendant has proven that no reasonable juror could find that age or sex was even a factor in the promotion of Laut. Viewing the record as a whole, defendant has not even come close to providing "a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject." Cronin, 46 F.3d, at 203. Defendant's motion must fail.

## **CONCLUSION**

For the above-stated reasons, defendant's Motion for Summary Judgment should be denied.

Dated: New York, New York
      September 8, 2008

                                                  SCHWARTZ, LICHTEN & BRIGHT, P.C.
                                                  Attorneys for Plaintiffs

                                          By: _____
                                                  Arthur Z. Schwartz (AZS 2683)
                                                  275 Seventh Avenue, 17th Floor
                                                  New York, New York 10001
                                                  (212) 228-6320