**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

GRISELDA BIELINSKI and MARIO
PARDO,

                      **Plaintiffs,**

    - against -

HOTEL PIERRE,

                      **Defendant.**

-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/27/08

**OPINION AND ORDER**

**07 Civ. 11636 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

This employment discrimination action is brought by Griselda

Bielinski and Mario Pardo ("plaintiffs") against Hotel Pierre ("defendant").

Plaintiffs allege that defendant denied them a promotion on the basis of their age

in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§623; New York Executive Law ("NYEL"), §296 (i); and New York City Human

Rights Law ("NYCHRL"), §8-107(i). Additionally, Bielinski contends that she

was also discriminated against on the basis of her gender in violation of Title VII

of the Civil Rights Act, NYEL, and NYCHRL. Defendant moves for summary

judgment and seeks dismissal of the Complaint. For the reasons stated below,

defendant's motion is granted in its entirety.

## II.  FACTUAL BACKGROUND

### A.  Facts

Hotel Pierre (the "Hotel") is a luxury hotel and cooperative apartment building in New York City.[1]  The Hotel's Banquet Department caters and services banquet functions within the Hotel.[2]  The Banquet Department employs: Banquet Captains, who coordinate various functions and serve as liaisons between the guests and the service staff;[3] A-List Banquet Servers, who are steady full-time wait staff; and B-List Banquet Servers, who are steady reserve wait staff.[4]  Both A-List and B-List Banquet Servers are members of the AFL-CIO (hereafter the "Union"), which has a collective bargaining agreement with the Hotel.[5]

At the end of 2006, a Banquet Captain retired, leaving a vacancy.[6] Banquet Server seniority is not the sole consideration for filling the Banquet

---

[1]  *See* Plaintiffs' Rule 56.1 Statement ("Pl. 56.1") ¶ 1.

[2]  *See id.* ¶ 5.

[3]  *See id.* ¶¶ 7-8.

[4]  *See* Plaintiffs' Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.") at ¶ 8.

[5]  *See* Pl. 56.1 ¶ 6.

[6]  *See id.* ¶ 12.

Captain position.[7] The necessary qualifications include: "extensive experience and knowledge of banquet service;" "substantial leadership, organizational and problem-solving skills;" the ability to be "articulate and poised in responding to guest requests and complaints;" and proficiency in Union rules and banquet service protocol.[8]

Twelve current A-List Banquet Servers sought to fill the Banquet Captain position, including plaintiffs and Jay Laut.[9] At the time the instant motion was filed, Bielinski was sixty-one years old.[10] She had worked as an A-List Banquet Server at the Hotel since 1985.[11] Pardo was fifty-nine years old and had worked at the Hotel since 1969, first as a Room Service Busser, then Room Service Server, and, since 1986, as an A-List Server.[12] Laut was forty-five years old and had worked at the Hotel in a part-time B-List Server capacity since 1998 and as a full-time A-List Server since 2005.[13] According to Laut's resume, he had

[7]    *See id.* ¶ 10.

[8]    *Id.* ¶ 9.

[9]    *See id.* ¶ 13.

[10]   *See id.* ¶ 14.

[11]   *See id.*

[12]   *See id.* ¶ 15.

[13]   *See id.* ¶16.

3

seventeen years aggregate experience working for other hotels in various positions, including Banquet Server, Banquet Captain, and Assistant Manager.[14]

Before the selection process for the vacant position began, Bielinski sent a letter to Yvonne Mancini, the Hotel's Director of Human Resources.[15] Bielinski was worried that "an individual who is working with us for 3 years; also is a member of the Board of Director [sic] at our Union" had already been chosen as the new Banquet Captain, "creating a conflict of interest" with the Union.[16] Laut is a member of the Union Delegate's Assembly,[17] which is equivalent to its Board of Directors.[18] Mancini understood that Bielinski was referring to Laut in her letter.[19]

The Hotel implemented a three-stage interview process for the Banquet Captain position.[20] For the first round of interviews, the Banquet

---

[14] *See id.* ¶ 17.

[15] *See id.* ¶ 18.

[16] *Id.*

[17] *See id.* ¶ 19.

[18] *See* Yvonne Mancini's Affidavit in Support of Defendant's Motion for Summary Judgment ("Mancini Aff."), ¶ 11 n.1.

[19] *See id.* ¶ 11.

[20] *See* Pl. 56.1 ¶ 20.

4

Headwaiter, Christopher Edmonds, met with all twelve applicants and asked them a series of questions designed to elicit specific information on how they handled various situations in the past as a forecast of future behavior.[21] Based on their answers, applicants were rated as "Not Acceptable," "Satisfactory," or "Strength."[22] Only six applicants, including plaintiffs and Laut, progressed to the second round of interviews.[23] Although plaintiffs each earned a "Satisfactory" rating, according to Edmonds' notes, they failed to give sufficiently detailed answers or examples.[24] Laut was rated as "Strength," and Edmonds opined that he "gave detailed answers."[25]

The second round of interviews was conducted by the Director of Catering, William Spinner.[26] Each of the six remaining candidates was asked the same set of questions about their work history and experience, knowledge of the

---

[21]   *See id.* ¶¶ 21, 23.

[22]   Defendant's Notice of Motion for Summary Judgment ("Def. Mot."), Ex. E.

[23]   Pl. 56.1 ¶ 24.

[24]   *Id.* ¶¶ 25-26.

[25]   *Id.* ¶ 28.

[26]   *See id.* ¶ 29.

5

Banquet Captain position, and suggestions for improving service.[27] In his individual summaries of his interviews with plaintiffs and Laut, Spinner described each of them as very experienced and knowledgeable servers, but noted that only Laut had suggested possible ways to improve service.[28] Spinner also indicated that Bielinski, unlike Pardo or Laut, had never served as a Union delegate and had little prior interaction with management or Union issues.[29]

      Following the second stage of interviews, only plaintiffs and Laut were chosen to move on to the final round.[30] Plaintiffs each met with Christian Hommerich, the Hotel Manager, while Laut met with Heiko Kuenstle, the General Manager.[31] Hommerich's notes of his interview with Bielinski state that she answered his questions thoroughly and was very knowledgeable about the banquet service.[32] Plaintiffs attest that Hommerich's notes "indicate that Ms. Bielinski also had numerous suggestions of ways to improve service."[33] Hommerich's summary

---

[27]    *See id.* ¶ 30.

[28]    *See id.* ¶¶ 32-34.

[29]    *See id.*

[30]    *See id.* ¶ 31.

[31]    *See id.* ¶¶ 35, 38.

[32]    *See id.* ¶ 36.

[33]    *Id.*

6

of Pardo's interview indicates that when asked why he wanted to move to a

Captain's position, he replied that he was getting old and would not have to carry

heavy weights as Captain, and could better care for his family financially.[34]

Kuenstle's notes of Laut's interview indicate that Laut was a "strong candidate"

who provided specific examples of his leadership ability and gave constructive

suggestions on how to improve service.[35]

When the third stage of interviews were completed, Mancini and the

interviewers from each of the rounds– Kuenstle, Hommerich, Edmonds, and

Spinner– met several times to discuss the candidates.[36] Defendant reports that

Pardo was quickly eliminated from consideration because his reply to why he

wanted the promotion indicate d "a lack of passion and commitment to the job."[37]

Accordingly, the choice for the position was between Bielinski and Laut.

Defendant reports that Laut received the most positive reviews during

the discussions. Based on his answers to the interview questions, defendant

claims that Laut "was the clear leader in exhibiting the skills they were looking for

---

[34]    *See id.* ¶ 37.

[35]    *Id.* ¶ 39.

[36]    *See id.* ¶ 40.

[37]    *Id.* ¶ 45.

7

in a Banquet Captain."[38] Defendant states that it was the unanimous opinion of all the interviewers that Laut performed the best in his interviews and should receive the Banquet Captain position.[39]

According to defendant, Edmonds reported that Laut "gave the most detailed and specific answers in his interview" and was, in his opinion, "by far the strongest candidate."[40] Defendant also states that Spinner noted that Laut "gave the clearest, most direct answers to his questions and that as a Union delegate, he was very familiar with Union rules and procedures and had exhibited leadership ability."[41] Defendant further claims that Spinner considered it significant that Laut was the only applicant who provided "detailed and concrete suggestions for improving banquet service."[42] Defendant also states that Kuenstle was impressed by Laut's "service knowledge, communication skills, commitment to the job and to the Hotel and his understanding of the responsibilities inherent in the position

---

[38] *See* Defendant's Memorandum of Law In Support of Defendant's Motion for Summary Judgment ("Def. Mem.") at 17.

[39] *See id.*

[40] *See* Defendant's Rule 56.1 Statement ("Def. 56.1") ¶ 41.

[41] *Id.* ¶ 43.

[42] *Id.* ¶ 42.

8

of Banquet Captain,"[43] as well as the fact that he "had given careful thought to how he would make a valuable contribution to the Hotel as a Banquet Captain."[44]

Defendant states that Kuenstle weighed Laut's selection as a Union delegate by the Banquet servers, and took it as a sign that "Laut commanded the respect of the Banquet Servers and that they recognized him as leader [sic] whose direction they would follow as Banquet Captain."[45] In contrast, Kuenstle testified that he "knew plaintiff Bielinski to be a skilled and knowledgeable server, but also knew that she had never served as a delegate, was not knowledgeable about Union rules and had never shown the leadership skills the Hotel was looking for."[46]

It is disputed whether any of the Banquet Captains played a part in the selection process.[47] Plaintiffs allege that each of the current Banquet Captains approached Edmonds to advise him of their preferred candidate while defendant contends that they played no role in the selection process.[48] Bielinski testified that

---

[43]    *Id.* ¶ 46.

[44]    *Id.* ¶ 47.

[45]    *Id.* ¶ 50.

[46]    Heiko Kuenstle's Affidavit in Support of Defendant's Motion for Summary Judgment ("Kuenstle Aff."), ¶ 9.

[47]    *See* Pl. 56.1 ¶ 23.

[48]    *See id.*

9

the Banquet Captains preferred Laut because he is a delegate and on the Board of the Union.[49] Laut was formally announced as the new Banquet Captain on April 17, 2007.[50]

Plaintiffs allege that the hiring process was discriminatory and did not comport with the three-step interview procedure described by defendant. Plaintiffs believe that in the first round of interviews, Spinner "interviewed Laut first, and before any others were interviewed, Edmonds told Laut he had the job."[51] Defendant denies that Laut was selected for the position at that point in the interview process and that Edmonds told Laut he had been selected.[52] Plaintiffs claim that after they complained, "Laut was asked to step back and additional interviews followed."[53]

Nonetheless, it is undisputed that Laut thought he had received the promotion after the first round of interviews. On St. Patrick's Day, Saturday, March 17, 2007, Laut announced to all the assembled Banquet Servers that he had

---

[49]    See id. ¶ 90.

[50]    See id. ¶ 54.

[51]    Id. ¶ 29.

[52]    See Def. 56.1 ¶ 63.

[53]    Id. ¶ 29.

10

been selected as Banquet Captain and would resign his position as Union delegate.[54] Neither Manicini nor any of the Banquet managers were present in the Hotel at the time of the announcement.[55] According to plaintiffs, however, Laut testified that he had checked with Edmonds before making the announcement.[56]

On Monday, March 19, 2007, plaintiffs and several other applicants went to Mancini's office and informed her of the events that transpired over the weekend.[57] Mancini assured them that the interview process had not been completed, that Laut had not been chosen, and that she would investigate the situation.[58] When Mancini spoke to Laut thereafter, she told him he had not been selected and asked him why he thought he had been.[59] Laut said that Edmonds had told him he had been selected.[60] Mancini testified that when she questioned Edmonds, he denied telling Laut he had the job, although he did acknowledge telling Laut that he was a strong candidate and had performed well in the

[54]    *See id.* ¶ 55.

[55]    *See* Mancini Aff. ¶ 23.

[56]    *See* Pl. 56.1 ¶ 56.

[57]    *See id.* ¶ 57.

[58]    *See id.* ¶ 58.

[59]    *See id.* ¶ 60.

[60]    *See id.* ¶ 61.

11

interview.[61]

Sometime during the week of March 19, 2007, Mancini received
copies of two grievance letters Bielinski had written to the president of the Union,
in which she complained that the selection process was unfair and that the Union
was "not a remote or removed bystander" in the process.[62] Bielinski's letter also
alleged that another Banquet Captain, Jack Racic, had made negative comments
about her age and gender, although Mancini testified that she was unaware of
these comments.[63]

Plaintiffs allege that defendant discriminated against them in the
selection process on the basis of age and, in Bielinski's case, gender as well. No
one in Hotel management ever commented on either plaintiff's age.[64] Bielinski
testified that the only reason she believes she was discriminated against on the
basis of age is because of comments made by Racic.[65] Bielinski further believes
she was subject to gender discrimination based on other comments made by

---

[61]    *See id.* ¶ 64.

[62]    *Id.* ¶ 65.

[63]    *See id.* ¶¶ 65-66.

[64]    *Id.* ¶ 84.

[65]    *See id.* ¶ 85.

12

Racic[66] and the fact that she did not get the job.[67] Bielinski testified that Racic is the only person who had ever made negative comments about her.[68] She also testified that none of the other Banquet Captains have a problem working with women, and that several of the other Banquet Captains actually encouraged her to apply for the position.[69] Pardo testified that he believes he was discriminated against based on age because a younger person was chosen, although nothing anyone ever said to him led him to believe that age was a factor in the selection process.[70]

Plaintiffs allege that they were each more qualified than Laut, although they concede that they do not know how Laut answered questions during the interview process.[71] Bielinski testified that she is more qualified because she has worked at the Hotel for twenty-two years, because "of the way [she] take[s] care of guests, and because she is a woman "since the hotel needs a woman as a

---

[66]    *See id.* ¶ 84.

[67]    *See id.* ¶¶ 82.

[68]    *See id.* ¶ 86.

[69]    *See id.* ¶¶ 80-81.

[70]    *See id.* ¶ 89.

[71]    *See id.* ¶¶ 72, 77.

13

captain."[72] She also stated that Union delegate experience should not have been considered in the selection process.[73] Bielinski admits that Laut is qualified but believes she "would do a little better in general."[74] Pardo believes he is more qualified than Laut because of his own relationship with long-term guests,[75] his experience as a Union delegate, and his ability to "handle problems between management and [U]nion members."[76] Indeed, Pardo testified that he thought the Union itself had influenced the decision to promote Laut because every previous Banquet Captain had been a delegate.[77] Pardo also believes that length of employment at the Hotel should have been the most important consideration for promotion to Banquet Captain, and that this is why he should have received the position ahead of Bielinski.[78] Pardo admits that Laut has knowledge of banquet service.[79]

------

[72]    *Id.* ¶¶ 67-69.

[73]    *See id.* ¶ 68.

[74]    *Id.* ¶ 71.

[75]    *See id.* ¶ 73.

[76]    *Id.* ¶ 74.

[77]    *See id.* ¶ 91.

[78]    *See id.* ¶ 75.

[79]    *See id.* ¶ 76.

## III. APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[80] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[81] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[82] "It is the movant's burden to show that no genuine factual dispute exists."[83]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "'some metaphysical doubt as to the material facts,'"[84] and it

---

[80]     Fed. R. Civ. P. 56(c).

[81]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[82]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

[83]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[84]     *Higazy*, 505 F.3d at 169 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"'may not rely on conclusory allegations or unsubstantiated speculation.'"[85]

However, "'all that is required [from a non-moving party] is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or

judge to resolve the parties' differing versions of the truth at trial.'"[86]

        In determining whether a genuine issue of material fact exists, the

court must construe the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in that party's favor.[87] However, "[i]t is a

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[88] Summary judgment is therefore

inappropriate "'if there is any evidence in the record that could reasonably support

---

[85]    *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[86]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[87]    *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

[88]    *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

a jury's verdict for the non-moving party.'"[89]

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation."[90] Courts within "'the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little to no evidence of discrimination.'"[91] Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'"[92]

"However, greater caution must be exercised in granting summary judgment in employment discrimination cases where the employer's intent is genuinely at issue and circumstantial evidence may reveal an inference of

---

[89] *American Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

[90] *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

[91] *Big Apple Tire, Inc. v. Telesector Res. Group, Inc.*, 476 F. Supp. 2d 314, 324 (S.D.N.Y. 2007) (quoting *Alphonse v. State of Connecticut Dep't of Admin. Servs.*, No. Civ.3:02CV1195, 2004 WL 904076, at *7 (D. Conn. Apr. 21, 2004)).

[92] *Cooper v. State of Connecticut Pub. Defenders Office*, No. 07–1867-cv, 2008 WL 2228624, at *1 (2d Cir. May 28, 2008) (quoting *Abdu-Brisson*, 239 F.3d at 466).

17

discrimination."[93] This is so because "'[e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law.'"[94] As a result, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."[95] But even where an employer's intent is at issue, "'a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.'"[96] "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'"[97]

## B. Wrongful Discrimination

Under the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such

---

[93]   *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999).

[94]   *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008) (quoting *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464-65 (2d Cir. 1989)).

[95]   *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

[96]   *Id.*

[97]   *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) (quoting *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11-12 (2d Cir. 1986)).

18

individual's age."[98] The statute protects the class of people who are forty years-old or older.[99] Title VII of the Civil Rights Act of 1964 declares in relevant part that it is "an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex."[100] The same evidentiary framework is used to demonstrate both age and sex discrimination claims.[101] "To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*."[102] "[T]he initial burden rests with the plaintiff to

---

[98]     29 U.S.C. § 623(a)(1).

[99]     *See id.* § 631.

[100]    42 U.S.C. § 2000e-2(a)(1).

[101]    *See Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir. 2001). In addition to Title VII and ADEA claims, the *McDonnell Douglas* burden shifting analysis applies to discrimination claims arising under the NYSHRL and the NYCHRL. *See Tomka v. Seiler Corp.*, 66 F.3d 1298, 1308 n.4 (2d Cir. 1995); *Douglas v. District Council 37 Municpal Employees' Educ. Fund*, 207 F. Supp. 2d 282, 288 n.6 (2d Cir. 2002). Because New York law requires the same standard of proof, plaintiffs' state law claims will be addressed along with their Title VII and ADEA claims.

[102]    *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Woodman v. WWOR-TV*, 411 F.3d 69, 76 (2d Cir. 2005) (applying *McDonnell Douglas* framework to age discrimination claim)).

establish a prima facie case of discrimination."[103] A plaintiff meets this burden by

showing "(i) that plaintiff falls within the protected group; (ii) that plaintiff

applied for a position for which he was qualified; (iii) that plaintiff was subject to

an adverse employment decision; and (iv) that the adverse employment decision

was made under circumstances giving rise to an inference of unlawful

discrimination."[104] The Second Circuit has "characterized the evidence necessary

to satisfy this initial burden as 'minimal' and 'de minimis.'"[105]

"A plaintiff's establishment of a prima facie case gives rise to a

presumption of unlawful discrimination that shifts the burden of production to the

defendant, who must proffer a 'legitimate, nondiscriminatory reason' for the

challenged employment action."[106] "If the defendant articulates such a reason, 'the

presumption of discrimination drops out,' and the plaintiff must 'prove that the

legitimate reasons offered by the defendant were not its true reasons, but were a

---

[103]    *Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir.
2005).

[104]    *Byrnie,* 243 F.3d at 101.

[105]    *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381
(2d Cir. 2001) (citations omitted). *Accord Woodman*, 411 F.3d at 76.

[106]    *Woodman*, 411 F.3d at 76 (quoting *Slattery v. Swiss Reinsurance Am.
Corp.*, 248 F.3d 87, 91 (2d Cir. 2001)) (citations omitted).

20

pretext for discrimination.'"[107] At this final stage of analysis, courts must

"examin[e] the entire record to determine whether the plaintiff could satisfy [his or

her] 'ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff.'"[108] In other words, plaintiff is left with the

final burden of proving that his or her age or sex "' was the real reason' for any

adverse employment action."[109] Direct evidence is not required; circumstantial

evidence will suffice.[110]

## IV. DISCUSSION

### A. Plaintiffs' Prima Facie Case

The record demonstrates, and defendant concedes, that both plaintiffs

have established a prima facie case of age discrimination. It is also undisputed

that Bielinski has established a prima facie case of sex discrimination. Being over

the age of forty, and in Bielinski's case, a female, plaintiffs are in protected

classes. They applied and were qualified for a position for which there was a

---

[107]   *Id.* (quoting *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001)).

[108]   *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)).

[109]   *Cross*, 417 F.3d at 248 (quoting *Schnabel*, 232 F.3d at 87).

[110]   *See Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998).

21

vacancy. Neither was promoted, thereby suffering an adverse employment action.

The successful applicant, a male, is younger than both plaintiffs. Plaintiffs have

"satisfied the de minimis requirements of a prima facie case."[111]

## B. Defendant's Non-Discriminatory Reasons

Defendant explains that Laut received the Banquet Captain position

because of his superior performance in the interview process.[112] According to

defendant, Laut most clearly exhibited the skills the Hotel was looking for in a

Banquet Captain. In contrast, defendant claims that Pardo demonstrated

insufficient commitment to the position whereas Bielinski lacked the requisite

leadership and procedural experience.[113]

Defendant's articulated reason for its decision not to promote

plaintiffs – because Laut was a better qualified candidate based upon subjective

criteria – constitutes a legitimate, non-discriminatory reason. "[T]here is nothing

unlawful about an employer's basing its hiring decision on subjective criteria, such

as the impression an individual makes during an interview."[114] Accordingly, the

---

[111]    *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 114 (2d Cir.
2007).

[112]    *See* Def. Mem. at 17.

[113]    *See id.* at 17-18.

[114]    *Byrnie*, 243 F.3d at 104.

initial presumption of unlawful discrimination is rebutted.

## C. A Reasonable Jury Could Not Find the Defendant's Failure to Promote Plaintiffs Was Motivated by Age or Sex Discrimination

To rebut defendant's non-discriminatory reason for failing to promote them, plaintiffs proffer evidence that Laut was actually chosen after the first round of interviews. Plaintiffs imply that the three-stage interview process through which defendant justifies Laut's hiring was a pretext for a discriminatory motive. Taking the facts in the light most favorable to the non-moving party, I must assume the truth of Laut's announcement that he had been promoted following his first interview. Accordingly, defendant did not conform to the three-step interview procedure and promoted Laut before plaintiffs had been interviewed. Even assuming, however, that plaintiffs have produced sufficient evidence to rebut defendant's legitimate, non-discriminatory reason, plaintiffs still have not met their burden of showing "'that more likely than not [discrimination] was the real reason for the [employment action].'"[115] "Rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff . . . and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff[s'] proffered

---

[115]     *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1994)).

reason is correct."[116] "In other words, '[i]t is not enough ... to *dis* believe the employer; the factfinder must believe the plaintiff[s'] explanation of intentional discrimination.'"[117]

Plaintiffs do not offer any direct evidence of an improper discriminatory bias. Both plaintiffs concede that no one in management ever said anything detrimental or otherwise about their age. Bielinski also testified that no one in management ever made any negative comments about her gender. Pardo's stated reason for why he believes he was discriminated against on the basis of age is that "it was just [his] feeling, [his] personal feeling."[118] Bielinski testified that the primary reason she believes she was the subject of age and gender discrimination is that a single employee, Banquet Captain Racic, allegedly made negative comments about her age and gender. While it is disputed whether the Banquet Captains had any input in the hiring process, Bielinski testified that all of the other Banquet Captains actually encouraged her to apply for the position. Therefore, the allegedly negative statements of a single Banquet Captain are not indicative of any systemic discrimination by the Hotel. Moreover, Bielinski does

---

[116]     *Reeves*, 530 U.S. at 146 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 524, 511 (1993)).

[117]     *Id.* (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 511).

[118]     *See* Pl. 56.1 ¶ 89.

24

not provide any evidence to support her allegation that Banquet Captains are authorized to represent the Hotel.[119]

Plaintiffs have also offered no viable circumstantial evidence to prove that defendant acted in a discriminatory manner. Plaintiffs allege that the promotion of a younger (and in Bielinski's case, male) employee, coupled with the possibility that defendant's proffered reason for its decision is not credible, is circumstantial evidence of wrongdoing. However, the Second Circuit has noted that even if defendant's explanation for the adverse employment action is "absurd," this would add "little significance" to an employment discrimination case in which the main showing of discrimination was the selection of a candidate outside the protected class.[120] "It is not infrequent that people who are dismissed

---

[119]    Bielinski also concedes that she did not directly inform Hotel management about Racic's remarks. Accordingly, even if she were able to establish discrimination, the Hotel may have an affirmative defense under the *Farragher/Ellerth* framework developed by the Supreme Court. To take advantage of such a defense, the Hotel would have to show: 1) that it exercised reasonable care to prevent and correct promptly any discriminatory behavior by having an anti-discrimination policy in place, for example; and 2) that the plaintiff-employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *See Leopold v. Baccarat, Inc,* 239 F.3d 243, 245 (2d Cir. 2001); *see also Faragher v. Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742 (1998).

[120]    *Norton*, 145 F.3d at 119.

25

are fired by managers who differ from them in some respect – managers who are younger or older, or of a different race or gender."[121] Accordingly, the selection of an employee above others who are members of protected classes, "combined with . . . an at best highly dubious showing of pretext, [which] in itself does not implicate discrimination" is insufficient to support a finding of discrimination.[122]

Plaintiffs also challenge Laut's selection on the basis that they are each more qualified. Nonetheless, the discrepancy between plaintiffs' and Laut's credentials, if any, is not sufficient to presume a pretext of discrimination. "In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."[123] Here, neither plaintiff claims that Laut was either unqualified to be Banquet Captain or so less qualified that his promotion was irrational. Plaintiffs concede that Laut performed his job well to the best of their knowledge, that they can fully comment only on their own credentials, and that they do not know how Laut answered questions during the interview process.

---

[121]    *Id.*

[122]    *Id.*

[123]    *Byrnie*, 243 F.3d at 103 (quoting *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).

26

Further, plaintiffs do not even agree amongst themselves as to which qualifications are the most preferable in a candidate. For example, Bielinski, who has never served as a Union delegate, does not believe that delegate experience is an important consideration for the Banquet Captain position and believes that she should have been chosen based on her seniority as a Banquet Server. Pardo, who has served as a Union delegate, believes that such experience is very important and that he should have been selected as Banquet Captain because he has been employed at the Hotel the longest. Because plaintiffs do not belittle Laut's qualifications, but only extol their own, and do not themselves agree as to the proper criteria for the Banquet Position candidacy, the weighty burden of proving discrepancy in qualifications as a pretext for discrimination is not met.

Even assuming, arguendo, that plaintiffs were better qualified *and* that defendant's proffered explanation for promoting Laut was false, plaintiffs would still not meet their burden of proving discriminatory motive. A reasonable fact-finder would have no basis to conclude that defendant promoted Laut on the basis of his age or gender, on the one hand, or his affiliation with the Union, on the other.

The record reflects plaintiffs' repeated concern before, during, and after the interview process that Laut received special treatment because he is a

delegate and thus on the Board of the Union. Before selection had begun,

Bielinski sent a letter to Mancini discussing Laut's affiliation with the Union and

her fear that he had already been chosen. During the interview process, Bielinski

sent two letters to the president of the Union complaining of the Union's

involvement in the selection process. Following Laut's promotion, Pardo testified

that he thought the Union had influenced the selection process because Laut is a

delegate. While according Laut preferential treatment for his Union affiliation

may be inappropriate, neither Title VII nor the ADEA "make employers liable for

doing stupid or even wicked things; it makes them liable for *discriminating*."[124]

   Plaintiffs have not shown that defendant's stated reasons were a

pretext for discrimination. The Supreme Court has noted that "there will be

instances where, although the plaintiff has established a prima facie case *and* set

forth sufficient evidence to reject the defendant's explanation, no rational

factfinder could conclude that the action was discriminatory," and summary

judgment for defendant is appropriate."[125] This is one of those cases.

## V.   CONCLUSION[126]

   [124]   *Norton*, 145 F.3d at 120.

   [125]   *Reeves,* 530 U.S. at 148.

   [126]   Because there is no evidence in support of plaintiffs' ADEA and Title
VII claims, their state law claims are also without merit and must be dismissed.

28

For the foregoing reasons, defendant's motion is granted in its entirety. The Clerk of the Court is directed to close this motion [Docket No – 11] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         October 25, 2008

**- Appearances -**

**For Plaintiffs:**

Arthur Z. Schwartz, Esq.
Schwartz Lichten & Bright, P.C.
275 Seventh Avenue, 17th Fl.
New York, New York 10001
(212) 228-6320

**For Defendant:**

Judith A. Stoll, Esq.
Kane Kessler, P.C.
1350 Avenue of the Americas, 26th Fl.
New York, New York 10019
(212) 519-5165